ORIGINAL
FILED
NOV 3 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JOSEPH P. RUSSONIELLO (SBN 44332)
United States Attorney
JOANN M. SWANSON (SBN 135879)
Chief, Civil Division
CHARLES M. O'CONNOR (SBN 56320)
JONATHAN U. LEE (SBN 148792)
Assistant United States Attorneys

450 Golden Gate Avenue, 9th Floor
San Francisco, California 94102
Telephone: 415-436-6909
Facsimile: 415-436-6748

ATTORNEYS FOR UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MEJ

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ZURICH INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY and STEADFAST INSURANCE COMPANY,<br>Defendants. | No. CV 08 5005<br>**COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

The United States of America, by the authority of the Attorney General of the United States, acting at the request of the Presidio Trust through the undersigned attorneys, alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action brought against Zurich Insurance Company, Zurich American Insurance Company and Steadfast Insurance Company (collectively "Defendants") to obtain damages and declaratory relief for breach of insurance agreements. Defendants issued Real Estate Environmental Liability Insurance Policy, Policy Number ERC 2872442-00 (the "REEL Policy," attached as Exhibit A to this Complaint) to the Presidio Trust ("Trust") as the first named insured. The REEL Policy is executed by the President and Corporate Secretary of Defendant Zurich

Insurance Company. Defendant Steadfast Insurance Company is identified at the top of the declarations page and the first page of the REEL Policy. The REEL Policy provides coverage for cleanup costs resulting from contaminated soil, surface water, groundwater and other contamination at the Presidio of San Francisco ("Presidio"), California. At the time it obtained the REEL Policy, the Presidio Trust obtained a Remediation Stop Loss Policy, Policy Number ERC 2872443-00 (the "RSL Policy"). Like the REEL Policy, the RSL Policy was executed by the President and Corporate Secretary of Defendant Zurich Insurance Company; Defendant Steadfast is identified on the declarations page and the first page of the RSL Policy. The RSL Policy is attached as Exhibit B to this Complaint.

2. The Trust made claims under the REEL Policy for cleanup costs associated with contamination at two sites in the Presidio of San Francisco: sediment contamination at Mountain Lake and soil gas at or near Buildings 937 and 933 ("Building 937 site"). In a letter dated November 7, 2006 and signed on behalf of Steadfast (but on "Zurich North America" letterhead), Defendants denied the Trust's Mountain Lake sediment claim. Similarly, in a letter dated November 13, 2007 and signed on behalf of Steadfast (but also on "Zurich North America" letterhead) the Trust's Building 937 site claim was denied.

3. Defendants acted in bad faith with respect to their handling of the Trust's claims, as set forth herein.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1345.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events and omissions giving rise to this Complaint occurred in this District, and because the Mountain Lake and Building 937 sites on the Presidio are located in this District.

6. Intra-district Assignment: The events giving rise to the United States' claims occurred in substantial part in San Francisco County.

7. Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519.

8. On information and belief, Defendant Zurich Insurance Company is a wholly owned Swiss subsidiary of Zurich Financial Services Group, which is an entity of unknown corporate form. Zurich Insurance Company was not authorized to transact insurance in the state of California at the time of the placement of the REEL and RSL policies described above. Nevertheless, representatives of Zurich Insurance Company signed the REEL and RSL policies as insurer-signatories to the policies.

9. On information and belief, Defendant Zurich American Insurance Company is a wholly owned United States subsidiary of Zurich Financial Services Group and an entity of unknown corporate form, authorized to transact insurance in the state of California since 1999. Plaintiff alleges that representatives of Zurich American Insurance Company signed the REEL and RSL policies as insurer-signatories to the policies.

10. On information and belief, Defendant Steadfast Insurance Company is a wholly owned subsidiary of Zurich American Insurance Company which is an entity of unknown corporate form, authorized to transact insurance in the state of California as a surplus lines provider since 1995. Plaintiff alleges that Steadfast Insurance Company issued at least a portion of the REEL and RSL policies to plaintiff.

11. At all times herein mentioned, each Defendant was an agent of each remaining Defendant, and acted within the scope of said agency when committing the acts and omissions described in this complaint.

**THE PRESIDIO, MOUNTAIN LAKE AND BUILDING 937**

12. The Presidio is part of the Golden Gate National Recreation Area, 16 U.S.C. §§ 460bb–460bb-5, and features significant natural, historic, scenic, cultural and recreational resources.

13. The Army assumed control of the Presidio in 1846, and maintained it as a functional Army installation until 1994, when jurisdiction over the Presidio was transferred to the United States National Park Service ("National Park Service").

14. In 1997, the Presidio Trust Act, 16 U.S.C. § 460bb appendix, created the Presidio Trust, a wholly-owned government corporation. The Presidio Trust assumed jurisdiction over a majority of the Presidio, and the National Park Service retained jurisdiction over the remainder.

15. Included within the Presidio Trust's area of jurisdiction is Mountain Lake. Mountain Lake is located on the southern edge of the Presidio, and is one of the few natural lakes in San Francisco and the only lake within the Presidio. It is a popular visitor destination with a variety of natural, cultural and recreational resources.

16. Also included within the Presidio Trust's area of jurisdiction is the Building 937 site. Buildings 937 and 933 were constructed in 1921 and used for aircraft maintenance and later vehicle maintenance. Buildings 937 and 933 are part of a series of seven buildings that form the "Hangar Complex" at the western end of Crissy Field along Mason Street. Both buildings are contributing structures to the Presidio National Historic Landmark District.

17. In 1999, the U.S. Army, the Presidio Trust and the National Park Service signed a Memorandum of Agreement Regarding Environmental Remediation at the Presidio of San Francisco (the "Presidio MOA").

18. Pursuant to the Presidio MOA, as between the Army, the Presidio Trust and the National Park Service, the Presidio Trust assumed the Army's responsibility for remediation of "Enumerated Sites." The Army retained responsibility for remediation of any unknown contamination at the Presidio.

19. In 1999, the Presidio Trust obtained two insurance policies from Defendants: the REEL Policy and the RSL Policy. As noted above, the policies are attached as Exhibits A and B.

20. The RSL Policy covers cleanup costs arising from cost overruns for environmental remediation activities that were known to be required at the time the policy was issued. These activities are listed in an endorsement to the RSL Policy. To the extent these activities cumulatively cost more than $100 million, the RSL Policy covers the cost overrun.

21. The REEL Policy covers cleanup costs for remediation of environmental conditions that are discovered after the policy was issued. The REEL Policy states that if coverage is provided under the RSL Policy, coverage is then excluded under the REEL Policy. The two policies provide coverage for the universe of "pollution events" at the Presidio.

22. The Trust submitted claims to Defendants seeking coverage under the REEL Policy for cleanup costs at the Mountain Lake sediment and Building 937 sites.

23. Defendants denied coverage under the REEL Policy for both claims.

24. At all times mentioned herein, the defendants, and each of them, were the agent of the other defendants, and each of them.

25. The Trust has incurred approximately $807,271 in clean up costs at the Mountain Lake sediment site and approximately $158,748 in clean up costs at the Building 937 site. The Trust anticipates incurring additional costs in the future.

**FIRST CLAIM FOR RELIEF**
**(Breach of Insurance Contracts)**

26. Paragraphs 1 through 25 are incorporated herein as though fully set forth.

27. The Presidio Trust is the First Named Insured on the REEL Policy and the RSL Policy.

28. The Presidio Trust has performed all of its duties and satisfied all applicable conditions under the REEL Policy and under the RSL Policy.

29. Defendants breached their obligations to the Presidio Trust under the REEL Policy and/or the RSL Policy by, among other things, denying coverage under the REEL Policy and failing to pay for the Presidio Trust's cleanup costs at the Mountain Lake sediment and Building 937 sites.

30. As a direct and proximate cause of Defendants' breaches of the insurance contracts, the Presidio Trust has incurred and will continue to incur damages in amounts to be proved at trial.

**SECOND CLAIM FOR RELIEF**
**(Insurance Bad Faith)**

31. Paragraphs 1 through 30 are incorporated herein as though fully set forth.

32. Both the REEL Policy and the RSL policy contain an implied covenant of good faith and fair dealing.

33. Defendants have tortiously breached the implied covenant of good faith and fair dealing by, among other things:

a. Falsely asserting that exclusions and other provisions of the RSL and REEL policies applied and operated to bar coverage of the underlying claims;

b. Unreasonably interpreting the RSL and REEL policies;

c. Not attempting in good faith to effectuate a prompt, fair and equitable payment of the Trust's claim; and

d. Compelling the Trust to institute litigation in order to recover amounts due under the REEL policy by denying coverage and not making any payments.

34. As a direct and proximate result of such actions or failures to act on the part of Defendants, the Trust has incurred damages in amounts to be proved at trial.

35. Defendants' actions have been a broader pattern and practice of misconduct in the handling of the Trust's claims for insurance that goes beyond the handling of the Mountain Lake remediation claim.

36. Defendants have acted with malice, fraud and oppression in taking the foregoing actions and in failing and refusing to act as alleged herein. Accordingly, the Presidio Trust is entitled to punitive damages in an amount to be proved at trial.

**THIRD CLAIM FOR RELIEF**
**(Declaratory Relief)**

37. Paragraphs 1 through 36 are incorporated herein.

38. Defendants are obligated by issuance of the REEL Policy to provide the Presidio Trust with full coverage with respect to the environmental conditions at the Mountain Lake sediment and Building 937 sites in accordance with the terms of the REEL Policy.

39. An actual controversy has arisen between the parties as to whether Defendants are required, under the REEL Policy, to provide such coverage.

40. A judicial declaration is necessary and appropriate at this time in order that the Presidio Trust may ascertain the obligations of Defendants under the REEL Policy.

**PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations set forth above, the United States of America requests that this Court:

1. Enter judgment against Defendants for all damages incurred by the United States as a result of Defendants' breach of the REEL Policy, as well as attorneys' fees and other litigation expenses incurred by the Trust in this litigation and punitive damages due to Defendants' tortious breach of the implied covenant of good faith and fair dealing;

2. Enter a declaratory judgment that the Presidio Trust's Mountain Lake sediment and Building 937 site claims are covered under the REEL Policy;

3. Award costs of suit; and

4. Grant such other and further relief as the Court deems appropriate.

Dated: November 3, 2008

JOSEPH P. RUSSONIELLO
United States Attorney

By: ______________________
CHARLES M. O'CONNOR
JONATHAN U. LEE
Assistant U.S. Attorneys

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Dated: November 3, 2008

JOSEPH P. RUSSONIELLO
United States Attorney

By: ______________________
CHARLES M. O'CONNOR
JONATHAN U. LEE
Assistant U.S. Attorneys

# Exhibit A

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

# STEADFAST INSURANCE COMPANY

**Dover, Delaware**
**Administrative Offices - 1400 American Lane**
**Schaumburg, Illinois 60196-1056**

# REAL ESTATE ENVIRONMENTAL LIABILITY INSURANCE

## CLAIMS-MADE AND REPORTED COVERAGE

**This is a Claims-Made and reported Policy. Notice of a Potential Claim is not a Claim and does not trigger coverage under the Policy. This Policy has certain provisions and requirements unique to it and may be different from other policies an Insured may have purchased. Claim(s) must first be made by or against the Insured during the Policy Period, and Claim(s) must be reported, in writing, to the Company during the Policy Period, any renewal thereof, the Automatic Extended Reporting Period or an Extended Reporting Period, if applicable. The payment of Claim Expenses, including defense costs, reduces the limits of insurance. If the Policy limit is exhausted, the Company shall not be liable for Claim Expenses or for the amount of any judgment or settlement.**

**Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.**

**Words and phrases that appear in bold print have special meaning. Refer to Section II -- DEFINITIONS.**

**In consideration of the payment of the premium and the undertaking of the Insured to pay the deductible as described herein, in reliance upon the statements in the Application made a part hereof, and subject to the Limits of Liability of this insurance as set forth in the Declarations, and the exclusions, conditions and other terms of this Policy, the Company agrees with the Named Insured as follows:**

### I. INSURING AGREEMENTS

#### COVERAGE A: FIRST PARTY CLEAN UP

To pay on behalf of an **Insured** any **Cleanup Costs** required by **Governmental Authority** as a result of a **Pollution Event** on, at or under a **Covered Location(s)** discovered by the **Insured** during the **Policy Period** provided that the **Claim** is reported to the Company during the **Policy Period** or any renewal thereof, or any applicable Extended Reporting Period. Coverage for **Claims** due to changes in **Governmental Authority** during any applicable Extended Reporting Period is set out in Section V.

#### COVERAGE B: THIRD PARTY LIABILITY

To pay on behalf of an **Insured** any **Loss** caused by a **Pollution Event** on, at, under or coming from a **Covered Location(s)** that an **Insured** is legally obligated to pay as a result of **Claim(s)** first made against the **Insured** during the **Policy Period** provided that the **Claim** is reported to the Company during the **Policy Period**, any renewal thereof, or any applicable Extended Reporting Period.

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

DEFENSE

Subject to the provisions of Section VII, the Company shall have the right and duty to assume the adjustment, defense and settlement of any **Claim** brought by or on behalf of any federal, state or local environmental regulatory agency, or by or on behalf of a third party seeking payment for **Cleanup Costs** and/or **Loss** to which this insurance applies. **Claim Expense** reduces the applicable Limit of Liability set out in the Declarations as described in Section VI., Limit of Liability and Deductible. The Company's duty to adjust, defend and settle all **Claim(s)** to which this insurance applies, pending and future, ends when the applicable Limit of Liability has been tendered into court or exhausted by payment of **Claim Expense, Cleanup Costs** or **Loss**.

## II. DEFINITIONS

A. **Area A MOA** means Memorandum of Agreement For Environmental Remediation at Presidio of San Francisco "Area A" Property entered into between the first **Named Insured** and the United States Department of the Interior, National Park Service on May 24, 1999.

B. **Bodily Injury** means physical injury, sickness, or disease sustained by any person including the death resulting therefrom and including mental anguish or emotional distress.

C. **Claim(s)** means:

1. Under Coverage A, the discovery of a **Pollution Event** by the **Insured,** followed by notice in writing, or if oral followed up in writing, as soon as practicable by the **Insured** during the **Policy Period** or any renewal thereof or any applicable Extended Reporting Period, to the Company which confirms a **Pollution Event** and which seeks the payment of **Cleanup Costs** required by **Governmental Authority**; or
2. Under Coverage B, any demand received by the **Insured** during the **Policy Period** or any renewal thereof or any applicable Extended Reporting Period, alleging liability or responsibility on the part of the **Insured** for **Loss(es)**.

C. **Claim Expense** means:

1. fees charged by an attorney designated by the:
   a. Company; or
   b. **Insured** with the prior written consent of the Company or pursuant to the procedures in Section VII, below; and
2. all other fees, costs and expenses resulting from the defense, settlement and appeal of a **Claim,** if incurred by the Company or the **Insured** with the Company's consent including interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay, or deposited in court the amount available for the judgment under the Policy.

However, **Claim Expense** does not include the salaries of regular employees or officials of the Company or the **Insured** except as set forth in Section VII.G.4.a. The **Insured** shall be allowed $250 per day but no more than $5,000 in total as allowable expenses for the compensation to its principals, partners, executives, officers, directors, or employees for personally attending any legal proceeding at the request of the Company. These allowable expenses shall not reduce the applicable Deductible or Limit of Liability set out in the Declarations.

D. **Cleanup Costs** means:

1. the necessary expenses incurred in the investigation, removal, remediation, neutralization or immobilization of contaminated soil, surface water, groundwater, or other contamination; and/or

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

2. for a **Claim** under Coverage A, the legal fees and costs to represent the **Insured** before any federal, state or local environmental regulatory agency provided such fees and costs are reasonable and necessary and incurred with the written consent of the Company;

however, any costs, charges or expenses incurred by the **Insured** to confirm the existence of a **Pollution Event** under Coverage A shall not be considered **Cleanup Costs.**

E. **Closure Plan** or **Post Closure Plan** means the written documents required by the Code of Federal Regulations, 40 CFR Parts 260 - 299 (revised as of July 1, 1992), including any amendments, or by similar state laws and regulations which require the partial and/or final Closure or Post Closure of a unit, facility or **Underground Storage Tank;**

F. **Covered Location(s)** means the property(ies) shown in the Declarations or applicable Endorsements and described in the Application.

G. **Emergency Action** means the reasonable and necessary costs incurred to avoid an imminent and substantial endangerment to the public health or welfare or the environment.

H. **Governmental Authority** means applicable federal, state, or local statutes and regulations, orders or ordinances, including, but not limited to, remedial action plans which (i) meet the requirements of a **Voluntary Cleanup Program,** (ii) are validly executed with all necessary regulatory entities and (iii) are negotiated with requirements no stricter than those necessary for the actual or intended use set forth in the **Insured's** Application.

I. **Insured** means:

1. the **Named Insured;**

2. any current or former trustee, principal, partner, executive, officer, director, employee, contract employee or leased personnel of the

**Insured** while acting within the scope of their employment or written agreement with the **Insured;**

3. the heirs, executors, administrators, assigns and legal representatives of each of the **Insureds** in the event of death, incapacity, or bankruptcy.

J. **Loss(es)** means:

1. compensatory damages or legal obligations arising from:

   a. **Bodily Injury;**

   b. **Property Damage;**

2. and related **Claim Expense.**

K. **Mediation** means any non-binding intervention by a neutral third party.

L. **MOA** means Memorandum of Agreement Regarding Environmental Remediation at the Presidio of San Francisco entered into among the **Named Insured,** the United States Department of Defense, Department of the Army and the United States Department of the Interior, National Park Service on May 24, 1999.

M. **Named Insured** means the person(s) or entity(ies) designated in the Declarations.

N. **Natural Resource Damage** means (i) the compensable value of injury to or destruction of natural resources, including the land, surface water, groundwater, subsurface, strata, air, fish, wildlife, or biota between the time of a **Pollution Event** and completion of restoration of the natural resources injured by the **Pollution Event;** provided that compensable value shall not include any nonuse or passive use value (including but not limited to option, existence, bequest or similar values) of the injured resources; and (ii) reasonable direct costs, including costs of assessment, associated with action necessary to restore,

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

including replacement of, the natural resource to its baseline condition prior to the **Pollution Event.**

O. **Policy Period** means the period set forth in the Declarations, or any shorter period arising:

1. from cancellation or termination of this Policy by the Company or the **Named Insured**; or
2. with respect to a specific **Covered Location** designated in the Declarations, or portion thereof:
   a. the deletion of such **Covered Location**, or portion thereof, from this Policy by the Company upon the request of the **Named Insured**; or
   b. once such **Covered Location**, or portion thereof, meets any of the conditions stated in Section IV.E. (i), (ii) or (iii) of this Policy.

P. **Pollution Event** means (a) the discharge, dispersal, release, or escape of any solid, liquid, gaseous or thermal irritant, contaminant or pollutant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, and (b) the abandonment or discarding of barrels, containers, and other receptacles containing any hazardous substances or pollutant or contaminant but only to the extent that such receptacles are found in a manner and location demonstrating placement of such receptacles was for a disposal purpose and not for storage or use.

Q. **Property Damage** means:

1. physical injury to or destruction of tangible property, including the resulting loss of use thereof;
2. **Cleanup Costs**;
3. loss of use of tangible property that has not been physically injured or destroyed; and
4. **Natural Resource Damage.**

R. **Underground Storage Tank** means any tank, including associated underground piping connected thereto, that has at least ten (10) percent of its volume below the ground.

S. **Voluntary Cleanup Program** means a program of a State of the United States which provides (i) mechanisms for the written approval of voluntary remedial action plans protective of human health or the environment and (ii) a certification or similar documentation indicating that such actions are complete.

## III. TERRITORY

The insurance afforded by this Policy applies worldwide, provided that the **Claim** is made within the United States of America (including its territories and possessions), Puerto Rico or Canada.

The Company, however, may elect at any time to investigate, settle, or defend such **Claim(s)** or suits that are brought anywhere other than the United States of America (including its territories and possessions), Puerto Rico or Canada.

If the Company does not make such an election then the **Insured** agrees, under the supervision of the Company, to make or cause to be made such investigation and defense as is reasonably necessary, and subject to proper authorization by the Company, the **Insured** may effect settlement. The Company in such event shall also reimburse the **Insured** for reasonable costs of such investigation, defense and settlement.

## IV. EXCLUSIONS

This insurance does not apply to **Claim(s)**, **Cleanup Costs** or **Loss(es)** based upon or arising out of:

A. any **Pollution Event** known to any **Insured's** principal, partner, director, officer, or employee with responsibility for environmental affairs, legal affairs or risk management unless prior to the

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

effective date of coverage for a **Covered Location(s)** such **Pollution Event** was disclosed to the Company and endorsed onto the Policy;

B. any dishonest, fraudulent, intentional or malicious act or those of a knowingly wrongful nature, or the intentional, willful or deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body by or at the direction of the **Insured** except that this exclusion will not apply to an **Insured** who did not commit, participate in, or have knowledge of any of the acts described;

C. any **Claim** made:

1. by any **Insured** against any other **Insured**; however, this exclusion does not preclude correspondence or communication between **Insureds**, including but not limited to any notice provisions required under this Policy or under Section 6 or 11 of the **MOA**, or Section 8.7 or 16 of the **Area A MOA**, based solely on costs incurred after the effective dates of those Agreements;

2. by the Department of Defense, Department of the Army, however, this exclusion does not apply to the Army Corps of Engineers; however, this exclusion does not preclude correspondence or communication among the **Insureds** and the Department of Defense, Department of the Army, including but not limited to any notice provisions required under this Policy or under Section 6 or 11 of the **MOA**, or Section 8.7 or 16 of the **Area A MOA**, based solely on costs incurred after the effective dates of those Agreements; or

3. against any **Insured** by any entity or individual:

   a. that controls, owns, operates or manages an **Insured**; or

   b. which an **Insured** controls, owns, operates or manages;

Nothing in this exclusion shall alter, affect or modify the provisions of Section IV. F., below.

Notwithstanding the provisions of this Section IV. C., this insurance does not apply to **Claim Expenses** incurred in connection with any dispute in any forum between **Insureds** or between either **Insured** or both **Insureds** and the United States Department of Defense, Department of the Army;

D. any obligation of the **Insured** which could have been brought under a workers compensation, disability benefits, unemployment compensation or any similar law;

E. any **Pollution Event** on, at, under or from a **Covered Location(s)**, or portion thereof once (i) it is sold or given away to a non-federal entity by the United States, or (ii) the **Insured** ceases to manage and control the **Covered Location** with respect to environmental contamination, or (iii) the **Insured** ceases to have contractual, legal, or administrative authority to require, consistent with applicable law, a standard of environmental protection for the **Covered Location** or portion thereof;

F. the liability of others assumed by an **Insured** under any contract or agreement, however this exclusion does not apply to liability for **Loss** or **Cleanup Costs** that the **Insured** would have by operation of law in the absence of the contract or agreement or to liabilities assumed under the **MOA** or the **Area A MOA**, excluding any liabilities under Sections 7.1, 8.3, 8.4, 9.6, and 9.14 of the **Area A MOA**; and provided that, for purposes of this Policy, the second sentence of Section 18 of the **Area A MOA** shall apply only to resolution of disputes under the **Area A MOA** itself between the Presidio Trust and the Department of the Interior related to whether the Trust has assumed a liability for purposes of this exclusion.

Notwithstanding the provisions of this Section IV.

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

F., this insurance does not apply to **Claim Expenses** incurred in connection with any dispute in any forum between **Insureds** or between either **Insured** or both **Insureds** and the United States Department of Defense, Department of the Army;

G. fines, penalties, and treble damages;

H. closure of any hazardous waste or solid waste management unit, facility or **Underground Storage Tank** operated by the **Insured** in the normal course of operations or business; however, this exclusion does not apply to **Pollution Event(s)** discovered during the removal or decommissioning of such a unit, facility, or **Underground Storage Tank** so long as:

1. the **Pollution Event(s)** were unexpected and unintended by the **Insured**, and

2. financial responsibility for such **Pollution Event(s)** was not required in a **Closure Plan** or **Post Closure Plan**;

I. goods or products designed, manufactured, sold, handled, distributed, or supplied by the **Insured** or by others trading under its name or under license from an **Insured** once the goods or products are removed away from the **Covered Location**;

J. injury to any employee, contract employee or leased personnel of an **Insured** if such injury occurs during and in the course of said employment; or to the spouse, child, brother or sister of any employee as a consequence of said employment; or to any obligation of an **Insured** for indemnity or contribution to another because of **Loss** arising out of such injury in the course of employment;

K. any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot or civil commotion;

L. any **Pollution Event** on, at, under or from any location to which the **Insured** sends or has sent materials for treatment, recycling, reclamation, storage or disposal;

M. any naturally occurring substance, on, within, or under the **Covered Location(s)**, in its unaltered form, or altered solely through naturally occurring processes or phenomena;

N. any products, including but not limited to asbestos containing material and lead based paint, and heating, ventilating, air conditioning or cooling, and humidification ("HVAC") systems, which are part of the structure of the **Covered Location(s)**;

O. the normal maintenance or operation, or failure to properly maintain or operate HVAC systems;

P. any **Underground Storage Tank** known to any **Insured's** principal, partner, director, officer, or employee with responsibility for environmental affairs, legal affairs or risk management, whether active, abandoned or removed, unless endorsed onto the Policy;

Q. radiologic materials, chemical warfare agents, biologic warfare agents, or unexploded ordnance as referenced in Section 4.4 of the **MOA**;

R. the known environmental conditions at the Golden Gate Bridge Highway and Transportation District Area as referenced in the Known Pollution Conditions Endorsement to this Policy, provided that coverage is not provided for any **Pollution Event**, known or unknown, emanating from the Golden Gate Bridge Highway and Transportation District Area, which is located in, on, or under the soil, waters, fish or wildlife of the San Francisco Bay or the Pacific Ocean at any point bayward or seaward of the Presidio's Mean Lower Low Water (MLLW) elevation line at zero (0.00) feet, equal to the National Geodetic Vertical Datum of 1929 (NGVD29) at minus two point eight four (-2.84) feet;

S. any Substance or Condition derived from ordnance

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

or ammunition, or skeet located in, on, or under the soil, waters, fish or wildlife of the San Francisco Bay or the Pacific Ocean at any point bayward or seaward of the Presidio's Mean Lower Low Water (MLLW) elevation line at zero (0.00) feet, equal to the National Geodetic Vertical Datum of 1929 (NGVD29) at minus two point eight four (-2.84) feet;

## V. EXTENDED REPORTING PERIODS

A. The **Named Insured** shall be entitled to an Automatic Extended Reporting Period without additional charge upon termination of coverage as defined in this section. This period starts at the end of the **Policy Period** and lasts for thirty (30) days.

B. In addition to the Automatic Extended Reporting Period the **Named Insured** shall be entitled to purchase an Extended Reporting Period for up to three (3) years in duration, except in the event of non-payment of premium. The charge for an Extended Reporting Period of up to three years in duration shall not be more than twenty-five percent (25%) of the premium as set forth in Item 6 of the Declarations. The Extended Reporting Period for up to three years in duration starts when the Automatic Extended Reporting Period, set forth in the above paragraph, ends.

C. Upon payment of the additional premium the Company shall issue an endorsement providing for an Extended Reporting Period for up to three years in duration provided that the **Named Insured**:

1. makes a written request for such endorsement which the Company receives within thirty (30) days after termination of coverage as defined herein; and

2. pays the additional premium when due. If such additional premium is paid when due, the Extended Reporting Period may not be canceled by the Company provided that all other terms and conditions of the Policy are met.

D. The **Claim** first made and reported within the Automatic Extended Reporting Period and the Extended Reporting Period for up to three years in duration, if purchased in accordance with this section, shall be deemed to have been made on the last day of the **Policy Period**, and coverage shall apply under this Policy provided that:

1. under Coverage A, the **Insured** first discovered the **Pollution Event** and provided notice to the Company during the **Policy Period** pursuant to Section VII. and the **Claim** arises due to changes in **Governmental Authority**; or

2. under Coverage B, the **Pollution Event** was first discovered or occurred during the **Policy Period**;

and the **Claim** is otherwise covered under the terms and conditions of this Policy.

E. For the purpose of the Automatic Extended Reporting Period and Extended Reporting Period for up to three years in duration, termination of coverage means:

1. At the time of cancellation or nonrenewal of this Policy except for fraud or material misrepresentation, material change in the nature or extent of the risk, or non-payment of premium; or

2. with respect to a specific **Covered Location** or portion thereof:

   a. the deletion of a **Covered Location** or portion thereof from this Policy by the Company upon the request of the **Named Insured**; or

   b. once such **Covered Location** or portion thereof meets any of the conditions stated in Section IV.E.(i), (ii) or (iii) of this Policy.

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

F. If the Automatic Extended Reporting Period or an Extended Reporting Period endorsement is in effect, the Company will provide the "Each Claim" Limit of Liability and that which is remaining in the "Total for all Claims" Limit of Liability shown in the Declarations to this Policy, but only for **Claims** first received and noticed to the Company pursuant to the Policy during the Automatic Extended Reporting Period or Extended Reporting Period endorsement. The purchase of an Extended Reporting Period does not reinstate or increase the Limit of Liability shown in the Declarations as applicable to the "Total for all Claims".

G. The insurance afforded for **Claims** first received during the Automatic Extended Reporting Period and the Extended Reporting Period endorsement is primary.

## VI. LIMIT OF LIABILITY AND DEDUCTIBLE

### A. EACH CLAIM LIMIT OF LIABILITY

1. The Company's liability for each **Claim**, including, **Cleanup Costs, Loss(es)** and **Claim Expenses**, shall not exceed the amount set out in the Declarations as the "Each Claim" Limit of Liability.

2. The Company's liability for each **Claim**, including fees, costs, and expenses resulting only from the defense of a **Claim**, shall not exceed the amount set out in the Declarations as "Each Claim" Limit of Liability.

### B. TOTAL LIMIT OF LIABILITY

1. Subject to paragraph A.1. above, the Company's total liability for all **Claims**, including **Cleanup Costs, Loss(es)** and **Claim Expenses**, shall not exceed the amount set out in the Declarations as the "Total for all **Claims**" Limit of Liability.

2. Subject to paragraph A.2. above, the Company's total liability for all **Claims**, including fees, costs, and expenses resulting only from the defense of a **Claim**, shall not exceed the amount set out in the Declarations as the "Total for all **Claims**" Limit of Liability.

3. The Company shall not be obligated to pay any **Cleanup Costs, Loss(es)** and **Claim Expenses** or undertake or continue the defense of any **Claim**, pending or future, after the Limit of Liability set out in the Declarations has been tendered into court or exhausted by payments for **Claims, Cleanup Costs, Loss(es)** and **Claim Expenses**.

### C. DEDUCTIBLE

The Deductible amount set out in the Declarations is the obligation of the **Insured** and applies to each **Claim** and shall include all **Cleanup Costs, Loss(es)** and **Claim Expenses** within the Deductible. The Company may advance payment for **Cleanup Costs, Loss(es)** and **Claim Expenses** within the Deductible. The **Insured** shall promptly reimburse the Company for advancing any element of **Cleanup Costs, Loss(es)**, and **Claim Expenses** paid by the Company within an **Insured's** Deductible.

If the Company and the **Insured** agree to use **Mediation** to resolve a **Claim** for which a defense has been provided and a **Claim** is resolved thereby, the Deductible set out in the Declarations shall be reduced by 50% for the **Claim** only, subject to a maximum reduction of $25,000.

### D. MULTIPLE INSUREDS, CLAIMS, LOSS(ES), CLAIMANTS, POLLUTION EVENTS AND POLICY PERIODS

#### 1. MULTIPLE INSUREDS OR CLAIMANTS

The inclusion of more than one **Insured** in the making of a single **Claim** or the bringing of a single suit regarding the same **Pollution Event** shall not increase the Limit of Liability stated in

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

the Declarations, neither shall the making of **Claims** or the bringing of suits by more than one person or organization increase the Limit of Liability stated in the Declarations.

2. MULTIPLE CLAIMS

Two or more **Claim(s)** arising out of the same, interrelated, associated, repeated or continuous **Pollution Events** or a series of related **Pollution Events** shall be considered a single **Claim**, and shall be subject to one Limit of Liability and only one Deductible as stated in the Declarations regardless of the number of **Insureds** or claimants involved or the number or amount of **Cleanup Costs**, **Loss** or **Policy Periods** in which **Pollution Events**, **Cleanup Costs** or **Loss** occurred and regardless of the number of **Pollution Events** alleged to have occurred.

3. MULTIPLE POLICY PERIODS

Any **Claim** which takes place over two or more **Policy Period(s)** shall be subject to one Limit of Liability and one Deductible as stated in the Declarations. All such **Claims**, whenever made, shall be considered first made on the date on which the earliest **Claim** was first made and reported to Company and the Limit of Liability applicable to that **Policy Period** shall apply.

4. CLAIMS ARISING FROM POTENTIAL CLAIMS

Any Potential Claim which results in a **Claim** in a subsequent uninterrupted renewal **Policy Period** shall be subject to the "Each Claim" and "Total for All Claims" Limit of Liability applicable to the **Policy Period** in effect when the potential **Claim** was reported to the Company.

5. CLAIMS MADE IN THE EXTENDED REPORTING PERIODS

The Automatic Extended Reporting Period and the Extended Reporting Period for up to three years in duration, if purchased by the **Named Insured**, shall not serve to increase or reinstate the Limit of Liability set out in the Declarations to the Policy. The Limit of Liability shall be that which remains at the end of the **Policy Period**.

E. EXHAUSTION OF LIMITS AND TRANSFER OF DUTIES

When the "Each Claim" or "Total for all Claims" Limit of Liability described above has actually been exhausted in the payment of **Cleanup Costs**, **Loss(es)** and **Claim Expenses**, the Company will:

1. notify the **Insured**, in writing, as soon as practicable, that such limits have been exhausted and the Company's duty to defend **Claim(s)** under Section I., Insuring Agreement has also ended; and
2. commence and cooperate in the transfer of control to any appropriate **Insured** of all **Claim(s)** which are subject to that limit and which are reported to the Company before that limit is exhausted.

VII. CLAIMS PROVISIONS

For the purposes of this Section VII, the Presidio Trust (the first **Named Insured**), the United States Department of the Interior and the United States of America (collectively, the "**Named Insured**"), and the United States Department of Defense, Department of the Army will be collectively referred to as the "**U.S. parties**" and individually each as a "**U.S. party**".

As a condition precedent to the Company's obligation to pay **Claims** under the Policy, the **Named Insured**, the **U.S. parties**, and each **U.S. party**, agree that they will strictly observe the following provisions with respect to notice and management of all **Claims** or **Potential Claims** under the Policy:

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

A. DEFINITIONS

For purposes of Section VII. only, in addition to the Definitions contained in Section II. of this Policy, the terms below are defined as follows:

1. **"Discover"** or **"Discovery"** means knowledge, or reason to know, by an employee of one of the U.S. parties who had or has responsibility for environmental affairs, legal affairs, or risk management at the **Covered Location** of a **Claim** or **Potential Claim**;

2. **Potential Claim** means the discovery of a **Pollution Event** by the **Insured** that may reasonably be expected to result in a **Claim** or **Judicial Claim** for **Cleanup Costs** or a **Loss.**

3. **Judicial Claim** means any **Claim** regarding a matter covered by this Policy (i) as to which a complaint (or equivalent court pleading initiating litigation or judicially sanctioned discovery) naming any of the **Named Insureds** as a defendant has been filed or received by the **Named Insured** or the United States Attorney General whether through service of process or otherwise; (ii) as to which a pre-litigation notice of intent to sue has been received by any of the **Named Insureds** or the United States Attorney General; or (iii) as to which an administrative claim has been filed pursuant to 28 U.S.C. 2675.

B. GENERAL PROVISIONS

The U.S. parties agree that duties to (i) provide notice of a **Potential Claim, Claim** or **Judicial Claim** and information relevant to a **Potential Claim, Claim** or **Judicial Claim,** and (ii) cooperate with the Company in the investigation, management, and/or settlement of a **Claim** or **Judicial Claim** imposed on the **Named Insured** by these claims provisions are obligations of the **U.S. parties** and of each **U.S. party,** but shall be executed by the first **Named Insured** on behalf of the **U.S. parties.** Rights conferred on any **Insured** by these claims provisions are rights of the **U.S. parties** as well as the **Named Insured** where applicable law so provides but are exercisable only by and through the first **Named Insured** unless the Policy specifically provides otherwise. The **U.S. parties** further agree that the Company may rely on the exercise of rights or the performance or nonperformance of duties under these claims provisions by the first **Named Insured** as evidence of the authorized exercise of rights and the performance or nonperformance of these duties by the **U.S. parties** and each **U.S. party** without further inquiry; provided that, in the case of **Judicial Claims,** where the **Named Insured** provides notice to the Company tendering a **Judicial Claim** to the Company for defense, the first **Named Insured** shall provide, and the Company shall have a duty to obtain, written proof of concurrence by the Department of Justice in such tender. The **U. S. parties** agree that any disputes between them concerning **Claims** management by the first **Named Insured** or these claims provisions shall be resolved by an interagency dispute resolution process in which the Attorney General of the United States has final authority within time frames that will permit the **Named Insured** to comply with all duties and exercise all rights under this Policy within the periods of time required by this Policy. Failure of the **U.S. parties** to resolve disputes timely may result in transfer of defense duties to the **Named Insured** under Section VII. G.5.(c) (ii) below, and in the dispute by the Company of requests for indemnity payments for needless or duplicative costs under Section VII.G.3(b).

The duties of the Company under this Policy either to pay on behalf of, indemnify, or defend the **Named Insured** for **Cleanup Costs** or **Losses** shall not extend to the payment or indemnification of **Cleanup Costs** or **Losses** incurred by, or which are legal obligations of, any other persons, agencies, departments, or entities, except as specifically provided in this Policy. The Company shall not be required to pay **Cleanup Costs** or **Losses** on behalf of, or to indemnify or defend the **Named Insured** for **Cleanup Costs** or **Losses,** incurred by the **Named Insured** with respect to obligations or potential obligations of persons, agencies, departments or entities other than the **Named**

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems – without written permission of the Zurich Insurance Company.

Case3:08-cv-05005-MMC Document1 Filed11/03/08 Page19 of 129

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Insured, except as specifically provided in this Policy. The Company shall not be required to represent, defend, consider or otherwise account for the legal or financial interest of any persons, entity, agency or department other than the **Named Insured** in the adjustment, settlement, defense or indemnification of any **Claim** for **Cleanup Cost** or **Loss** against a **Named Insured**, except as specifically provided in this Policy.

C. TIME FOR REQUIRED NOTICE OF CLAIMS OR POTENTIAL CLAIMS

The **U.S. parties** agree that they will provide to the Company notice of any **Claim** or **Potential Claim** as soon as practicable, and that they will use their best efforts to assure notification to the Company no later than 96 hours after their **Discovery** of **Claim** or **Potential Claim**. The **U.S. parties** agree that all such notices to the Company shall be provided by the **U.S. parties** through the first **Named Insured** acting on their behalf unless an imminent and substantial endangerment to the public health or welfare or the environment, or action of a **Governmental Authority**, including an order by a court of competent jurisdiction, makes direct notice by another **U.S. party** to the Company imperative.

D. NOTICE OF CLAIMS

In the event of a **Claim**, the **Named Insured** must give written or oral notice thereof to the Company as soon as practicable in accordance with Section VII.C. above, accompanied by particulars sufficient to identify an **Insured** and reasonably obtainable information with respect to:

1. the time, place, **Covered Location** and circumstances of the **Claim**, including how and when the **Insured** or **U.S. Party** first became aware of the **Claim**;
2. the names and addresses of any injured parties and available witnesses;
3. any and all investigative or engineering reports, data or information about the **Pollution Event**, **Cleanup Costs** and/or the **Loss**, in the control of the **Named Insured** or any of the **U.S. parties**; and
4. any and all other relevant information about the **Pollution Event**, **Loss**, or **Claim** and;

when a **Claim** is made, the **Named Insured** shall as soon as practicable forward to the Company every demand, notice, summons, complaint, order or other process received by any **Insured** or **U.S. party** or its representatives in connection therewith.

E. NOTICE OF POTENTIAL CLAIMS

If during the **Policy Period** the **Named Insured** or any **U.S. party** discovers a **Pollution Event** which may reasonably be expected to give rise to a **Claim** under the Policy, the **Named Insured** shall provide written notice to the Company as soon as practicable accompanied by particulars sufficient to identify an **Insured** and reasonably obtainable information with respect to the **Discovery, Pollution Event**, or **Loss**:

1. the time, place, **Covered Location** and circumstances of the **Discovery**, including how and when the **Insured** or **U.S. party** first became aware of the **Discovery**;
2. the names and addresses of any injured parties and available witnesses;
3. any and all investigative or engineering reports, data or information about the **Discovery, Pollution Event** and/or **Loss** in the control of the **Insured** or any **U.S. party** ; and
4. any and all other relevant information about the **Discovery, Claim, Pollution Event, Loss**, or **Cleanup Costs** in the control of the **Insured** or any other **U.S. party**;

and any subsequent **Claim** arising from a reported **Discovery, Pollution Event** or **Potential Claim** made by or against the **Named Insured** reported pursuant to subsection F. below, during the **Policy Period**, during an effective renewal **Policy Period**, or during an Extended Reporting Period issued by the Company, for which coverage is provided by this Policy shall be deemed for the purposes of this Policy to have been

Copyright © 1999 by Zurich Insurance Company Page 11 of 22 STF-REEL-100-PRES-MAN CW (6/99)

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

made on the date upon which the written notice of the **Pollution Event, Discovery** or **Potential Claim** was received by the Company; provided that, no discovery or reporting of a **Potential Claim** during this Policy, will operate to trigger coverage under the Policy. Only a **Claim** made during the **Policy Period,** during an effective renewal **Policy Period,** or during an Extended Reporting Period issued by the Company for which coverage is provided by this Policy shall operate to trigger coverage.

**F. NOTICE PROCEDURES FOR CLAIMS, POTENTIAL CLAIMS AND CLAIMS MANAGEMENT**

1. Any oral notice hereunder shall be provided by the **Named Insured** by calling the Company's 24 Hour Claims Reporting Center at 1-800-987-3373.

   Any written notice hereunder shall be provided by the **Named Insured** by sending information to:

   **Zurich U.S.**
   **Environmental Claims Unit**
   **1400 American Lane**
   **Schaumburg, Illinois 60196**
   **Attn: Managing Accounts Specialist**
   **Environmental Specialties**
   **Telephone: (847) 605-6809**
   **Facsimile: (847) 413-7811**

   or any other address as substituted by the Company by endorsement onto the Policy.

2. In the event of oral notice, the **Named Insured** agrees to furnish a written notice as soon as practicable on behalf of the **U.S. parties.** The **Named Insured** shall immediately provide copies of such written notice to each **U.S. party.**

   Oral or written notices may be given by the Company to the **Named Insured** as follows:

   **The Presidio Trust**
   **Attn: Executive Director**
   **34 Graham Street**
   **P.O. Box 29052**
   **San Francisco, CA 94129-0052**
   **Telephone: (415) 561-5300**
   **Facsimile: (415) 561-5315**

3. Notice shall be deemed provided to the Company when received by the Company. Within 48 hours of receipt of notice by the Company, the Company shall provide to the **Named Insured** confirmation of receipt of notice, including the date and time at which notice was received by the Company. Such confirmation shall be effective as to each **Named Insured** and each **U.S. party** when received by the first **Named Insured.** The first **Named Insured** shall as soon as practicable provide copies of any notice to the Company, if written, or a written description of any notice, if oral, to all **U.S. parties.**

4. Notice to the first **Named Insured** by the Company shall also constitute notice to each **Named Insured** and each **U.S. party** and shall be effective when received by the first **Named Insured** as to each **Named Insured** and each **U.S. party.** The first **Named Insured** shall provide to all **Named Insureds** and **U.S. parties** as soon as practicable copies of any notice received from the Company and of any confirmation of notice received from the Company.

**G. PROCEDURES FOR MANAGEMENT OF CLAIMS OR POTENTIAL CLAIMS**

1. **Initial Management of Judicial Claims**

   Pursuant to 28 U.S.C. Section 516 and Section 104 (h) of Public Law 104-333, 110 Stat. 4097, all **Judicial Claims** with regard to the **Named Insured** are handled on behalf of the **Named Insureds** by the United States Attorney General through the United States Department of Justice (including the United States Attorneys) ("DOJ"). With regard to issues under this policy regarding litigation of **Judicial Claims,** DOJ shall be the

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

Case3:08-cv-05005-MMC Document1 Filed11/03/08 Page21 of 129

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

representative and primary point of contact for the **Named Insured** unless the Company receives written notice from DOJ designating another person.

The Department of Justice shall have the right, authority and duty to manage **Judicial Claims** from and after their inception unless the **Named Insured** provides notice to the Company that the Department of Justice has elected to tender the defense of a **Judicial Claim** to the Company. If DOJ elects to tender the defense of a **Judicial Claim** to the Company it shall do so as soon as reasonably possible, and in a manner that avoids prejudice to the handling of the **Claim**. If DOJ elects to tender the defense of a **Judicial Claim** to the Company more than 90 days after the date of notice to the Company of the **Judicial Claim**, the Company shall have sole discretion whether to accept such tender (except as provided in Section VII.G.4.d.(v))., and the **Named Insured** shall be responsible for any needless or duplicative expense incurred as a result of such tender. Determinations by the Company concerning needless or duplicative expense shall be subject to the provisions of subsection G.3.b, below. Such an election to tender defense of a **Judicial Claim** to the Company shall be irrevocable. DOJ shall continue to be fully responsible for management of the **Judicial Claim** until counsel for DOJ and counsel for the Company have agreed in writing to procedures necessary to ensure an appropriate transfer of management responsibility for the **Claim**, and, with regard to **Claims** in litigation, counsel retained by the Company have entered an appearance in court.

2. **Election to Manage Non-Judicial Claim by the Named Insured**

   a. The **Named Insured** may elect at any time to manage a non-judicial **Claim**. Such an election by the **Named Insured** to manage such a **Claim** shall be irrevocable. Such an election shall bind all **Named Insureds** and all **U. S. parties**, and the Company shall be entitled to assume that the first **Named Insured** is acting within its authority in electing to manage the non-judicial **Claim**. Notice of the election shall be given in writing to the Company as soon as practicable, and the Company's authority under the Policy to manage the non-Judicial **Claim** shall continue until notice is actually received by the Company. The Company shall provide confirmation of receipt of notice of an election by the **Named Insured** within 48 hours of receipt of notice, stating the date and time of receipt of the notice.

   b. Notwithstanding the opportunity of the **Named Insured** to elect to manage a non-Judicial **Claim**, immediately upon receiving Notice of a non-Judicial **Claim**, the Company, pursuant to its duty to defend, shall have and assume responsibility for management of the non-judicial **Claim**, without regard to whether the non-judicial **Claim** is pending before an agency and, if pending, without regard to the forum in which the non-judicial **Claim** is pending, until the Company receives notice of such election. In the event the Company receives notice or otherwise becomes aware that any party to a non-Judicial **Claim** proposes to resolve that non-judicial **Claim** through a settlement in the form of an order signed or issued by a court, the Company shall promptly notify the DOJ of the **Claim** and the proposed settlement, and permit the DOJ to review the proposed settlement or elect to assume management of the **Claim**. The Department of Justice shall review the proposed settlement and make any election with respect to management within 30 days of notice or such shorter time as may be required by court or agency procedure or agreement of the parties, and any

Copyright © 1999 by Zurich Insurance Company Page 13 of 22 STF-REEL-100-PRES-MAN CW (6/99)

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

election shall be subject to the provisions of subsection G. 2.c. below.

c. If the **Named Insured** elects to manage the non-Judicial **Claim** more than ninety (90) calendar days after the date of notice to the Company of the non-Judicial **Claim**, in circumstances that would cause prejudice to the management of a non-Judicial **Claim**, or result in needless or duplicative expense, the **Named Insured** shall be responsible for such additional expense. Determinations by the Company concerning needless or duplicative expense shall be subject to the provisions of subsection G.3.b, below. Such an election by the **Named Insured** to manage the non-Judicial **Claim** shall be irrevocable.

3. **Indemnity Coverage with Regard to Judicial Claims; Effect of Election by the Named Insured to Manage a non-Judicial Claim on Coverage: Conversion to Indemnity Coverage; Elimination of Pay on Behalf of Coverage; Conditions for Indemnity Payments**

a. Conversion to Indemnity Coverage; Elimination of Pay on Behalf of Coverage

In the event of a **Judicial Claim** that is not tendered by DOJ for defense by the Company, or if the **Named Insured** elects to manage a non-Judicial **Claim**, the following provision of the Policy shall be deleted in its entirety only as respects the **Judicial Claim** managed by DOJ or non-Judicial which the **Named Insured** elects to manage:

"SECTION I. INSURING AGREEMENTS"

and shall be replaced by the following:

"I. INSURING AGREEMENTS

COVERAGE A: FIRST PARTY CLEAN UP

To indemnify an **Insured** for any **Cleanup Costs** required by **Governmental Authority** as a result of a **Pollution Event** on, at or under a **Covered Location(s)** discovered by the **Insured** during the **Policy Period** provided that the **Claim** is reported to the Company during the **Policy Period** or any renewal thereof, or any applicable Extended Reporting Period. Coverage for **Claims** due to changes in **Governmental Authority** during any applicable Extended Reporting Period is set out in Section V.

COVERAGE B: THIRD PARTY LIABILITY

To indemnify an **Insured** for any **Loss** caused by a **Pollution Event** on, at, under or coming from a **Covered Location(s)** that an **Insured** is legally obligated to pay as a result of **Claim(s)** first made against the **Insured** during the **Policy Period** provided that the **Claim** is reported to the Company during the **Policy Period**, any renewal thereof, or any applicable Extended Reporting Period.

DEFENSE

The Company has no right or duty to defend under this policy. The Company shall indemnify the **Insured** for the adjustment, defense and settlement of any **Claim** brought by or on behalf of any federal, state or local environmental regulatory agency, or by or on behalf of a third party seeking payment for **Cleanup Costs** and/or **Loss** to which this insurance applies. **Claim Expense** reduces the applicable Limit of Liability set out in the Declarations as described in Section VI., Limit of Liability and Deductible. The Company's duty to indemnify the **Insured** for the adjustment, defense and settlement of all

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

Case3:08-cv-05005-MMC Document1 Filed11/03/08 Page23 of 129

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

**Claim(s)** to which this insurance applies, pending and future, ends when the applicable Limit of Liability has been tendered into court or exhausted by payment of **Claim Expense, Cleanup Costs** or **Loss**."

b. Conditions Precedent Related to Indemnity Payments

**Loss** costs, **Claim** costs, or **Claims Expenses** shall be submitted to the Company by the **Named Insured** in a timely fashion but in no event more than 180 days after such costs or expenses are incurred or paid. The **Named Insured** through its counsel shall also provide the Company with written status reports within 14 days of any significant factual or legal development with respect to the **Claim**, but in no event less than quarterly. The Company reserves the right to review and audit any such costs incurred or paid by the **Insured** at such time as it may be necessary, but in no event more than 180 days after the **Loss** costs, **Claims** costs or **Claims Expenses** are received by the Company, to confirm or dispute that sueh costs were reasonable and necessary to adjust, defend and settle said **Claim** brought by or on behalf of any federal, state or local environmental regulatory agency, or by or on behalf of a third party seeking payment for **Cleanup Costs** and/or **Loss** to which this insurance applies. Within 180 days after receipt of **Loss** Costs, **Claims** Costs or **Claims Expenses** as required above, the Company shall notify the **Insured** of the specific **Loss** Costs, **Clalms** Costs, or **Claims Expenses** that it disputes are reasonable and necessary to adjust, defend and/or settle the **Claim.** The Company will pay any non-disputed amounts within 45 days. In the event that the Company disputes whether any **Loss** costs, **Claim** costs, or **Claims Expenses** are reasonable and necessary to adjust, defend or settle any **Claim**, the Company shall provide to the **Insured** a description of disputed costs or expenses with sufficient particularity to allow the **Named Insured** to respond, and the **Insured** shall establish, at its expense, that such disputed amounts were reasonable and necessary. Receipt by the Company of any status report provided by the **Insured** shall not be deemed to mean that all costs incurred or paid by or on behalf of the **Insured** as presented in such status report are allowable. Determination by the Company whether any particular expense or cost is allowable at one point in time shall not bind the Company as respects any future determinations unless the **Insured** establishes that it has relied to its detriment upon such earlier determination. The Company shall notify the **Insured** as soon as practicable after determining that a previously allowed expense or cost may not be allowed in the future.

Should the **Insured** dispute a determination by the Company that any cost(s) incurred or paid by the **Insured** are not allowable or due indemnity, then the **Insured** and the Company mutually agree to attempt to resolve the dispute in good faith. In the event that good faith efforts by the **Insured** and the Company do not resolve the dispute, the **Insured** and the Company agree to submit to an informal **Mediation** process as follows:

(i) For the purposes of this endorsement **Mediation** is defined as any confidential non-binding dispute resolution process convened or assisted by a neutral third party.

(ii) The **Named Insured** and the Company agree to select a neutral third party (**Mediator**) to oversee the **Mediation**. The **Named Insured** and the Company will as soon as practicable, select and jointly retain a **Mediator** to perform a review of the costs incurred or paid in any status report(s) or demands for indemnity provided to the Company by the **Insured.**

Copyright © 1999 by Zurich Insurance Company Page 15 of 22 STF-REEL-100-PRES-MAN CW (6/99)

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

Case3:08-cv-05005-MMC Document1 Filed11/03/08 Page24 of 129

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

The cost of the Mediator shall be shared equally by the **Named Insured** and the Company. If the **Named Insured** and the Company are unable to reach agreement within thirty (30) days after the initial **Mediation** session with the Mediator, then within the next thirty (30) days, the Mediator shall make a formal recommendation to the parties as to whether such costs were reasonable and necessary to adjust, defend and/or settle the **Claim.** The **Insured** and the Company agree to confer on the determination of the Mediator and to use their best efforts to resolve the dispute. No documents, information or statements by the parties or the Mediator during the course of the **Mediation** shall be admissible in any court or tribunal, nor shall anything contained herein waive any right the parties may have to seek to resolve the dispute in a court of law. Notwithstanding the above, nothing in this paragraph shall operate to preclude a **U.S. Party's** right to introduce into evidence in a court of law any documents, information or statements obtained by means wholly independent of the **Mediation** by the **U.S. Party** seeking to admit such evidence into a court of law.

(iii) All time limits provided in the **Mediation** processes set forth above may be extended on a case by case basis, by mutual agreement of the **Insured** and the Company.

**4. Management of Claim by the Named Insured; Selection of Defense Counsel**

In the event of a **Judicial Claim** that is not tendered by DOJ for defense to the Company, or if the **Named Insured** elects to manage a non-Judicial **Claim,** the following provisions shall apply to its management thereof:

a. In the event the **Named Insured** chooses to manage the **Claim** through attorneys or other persons employed by the United States or any agency or entity thereof, including the **Named Insured,** the Company's liability for **Claim Expenses** with respect to the **Claim** shall be limited as set forth in this section.

b. In the event the **Named Insured** chooses to manage the **Claim** through attorneys or persons not employed by the United States and the Company agrees or is required by law to permit the **Named Insured** to do so at the Company's expense, the **Claim Expense** including all attorney's fees the Company must pay to that counsel are limited to rates the Company would actually pay to counsel the Company retains in the ordinary course of business in the defense of similar **Claims** in the community where the **Claim** is being defended.

c. Additionally, the Company may exercise the right to require that non-governmental counsel have certain minimum qualifications with respect to their legal competency including experience in defending **Claims** similar to the one pending against the **Named Insured** and to require such counsel to have errors and omissions insurance coverage. Furthermore, a **Named Insured** may at any time, by its signed consent, waive its right to select independent non-governmental counsel with regard to that **Claim.**

d. Where the **Named Insured** is represented by the Department of Justice in defense of a **Claim(s),** and where said **Claim(s)** involve(s) a reasonably anticipated **Cleanup Cost** or **Loss,** inclusive of **Claims Expenses,** in excess of $25,000.00, the following conditions shall apply to the choice of counsel by DOJ:

(i) The DOJ shall promptly inform the Company of the attorneys it proposes to designate to defend the **Claim,** providing

Copyright © 1999 by Zurich Insurance Company Page 16 of 22 STF-REEL-100-PRES-MAN CW (6/99)

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

the Company with a summary of the background and experience of the attorneys so designated;

(ii) If the Company objects to DOJ's proposed designation of counsel, the Company shall have 30 days to inform the DOJ in writing of its objection, stating in detail the reasons therefor;

(iii) Appropriate supervisors in the DOJ section or branch in which the designated attorneys are employed will review the Company's objection, and discuss such concerns with the Company within 30 days to try to resolve the Company's concerns;

(iv) If the Company and the DOJ continue to disagree as to the proper choice of counsel, the Company may request that the matter be promptly reviewed by the Assistant Attorney General for the Division(s) in which the designated attorneys are employed;

(v) If the Company and the DOJ continue to disagree as to the proper choice of counsel, the Company may notify the DOJ that the Company believes that DOJ's choice of counsel will prejudice the defense of the **Claim(s)**, in which case a deductible in the amount of $250,000 (Two Hundred and Fifty Thousand Dollars) will apply to indemnification of **Claims Expenses** for each **Claim**. In response to such notice, DOJ may elect to tender defense of the **Claim(s)** to the Company, in which case the Company agrees it will unconditionally assume defense of the **Claim(s)** subject to policy limits of liability and **Claims Expenses** provisions, but the **Named Insured** shall be responsible for any needless or duplicative expense resulting from delay in tender of the **Judicial Claim** beyond 90 days after DOJ became aware of the **Claim**.

e. The **Named Insured** and the **U.S. parties** agree to require that any person managing a **Claim** on behalf of the United States, whether such person is an employee of the United States or not, will timely respond to the Company's request for factual or legal information regarding the **Claim** and provide other cooperation where reasonably required.

5. **Management of Claim by Company**

a. The Company, immediately upon receiving Notice of a non-Judicial **Claim**, shall have and assume responsibility for management of the non-Judicial **Claim**, without regard to whether the non-Judicial **Claim** is pending before an agency and, if pending, without regard to the forum in which the **Claim** is pending. The Company shall have no right, duty, or authority for management of any **Judicial Claim** unless such **Judicial Claim** is formally tendered for defense to the Company and the Company either agrees in writing to accept defense of such **Claim** or is required under the provisions of subsection VII.G.4.d.(v) to accept such defense. At all times while responsible for claims management, the Company shall observe all procedures for consultation with the **Named Insured** described below, and shall be permitted to exercise to the fullest extent any authority to manage and settle the **Claim** it possesses under the Policy.

b. The Company shall have the right and the duty to designate legal counsel in the investigation, adjustment, defense or settlement of a non-Judicial **Claim** or **Loss**, or of a **Judicial Claim** that DOJ has tendered to the company for defense and that the Company has agreed, or is required under the provisions of subsection VII.G.4.d.(v), to defend. The **Named Insured** shall have the right to consent to the Company's

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

Case3:08-cv-05005-MMC Document1 Filed11/03/08 Page26 of 129

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

choice of legal counsel, which consent shall not be unreasonably withheld or denied.

c. If the Company manages a **Claim**, the Company shall have the following responsibilities with respect to claim management:

(i) The Company shall provide required notices and periodic status reports to the **Named Insured** for distribution to all **U.S. parties** and shall provide information concerning the **Claim** in its possession to the **Named Insured** on behalf of the **U.S. parties** on reasonable request therefor by the **Named Insured.**

d. (ii) The Company shall seek the concurrence of the **Named Insured** with respect to basic strategy for management of the **Claim**, and with respect to major decisions affecting management of the **Claim**, which concurrence shall not be unreasonably withheld. A request for concurrence on a management decision with respect to a **Claim** proposed by the Company shall contain a time certain within which concurrence or non-concurrence by the **Named Insured** is required. Such time certain shall not be less than fifteen (15) business days from the date of receipt of the request for concurrence by the **Named Insured**; provided that the Company may request concurrence within a period of time not less than five (5) calendar days where required by exigent circumstances such as environmental, health or safety emergency or expedited litigation schedules.

Notwithstanding the above, where the decision involves a **Judicial Claim** and is determined by DOJ to involve substantive case settlement or other significant issues requiring elevation within DOJ for concurrence, the Company and DOJ shall work together to determine the appropriate schedule for DOJ concurrence. If the Company determines, in its sole discretion, that it is or will be prejudiced as a result of a delay in concurrence deemed necessary by the DOJ, the Company shall send written notice to the **Named Insured** of its determination and such determination shall operate as an irrevocable election on the part of the **Named Insured** to manage the **Claim** under Section G.(2) . The Company shall manage the transition of the **Claim** so as to minimize disruption and avoid prejudice to the **Named Insured,** other than monetary prejudice invoked by the terms of this policy where duplicative expenses are excluded.

Delivery of the request for concurrence shall be made by facsimile and U.S. Postal Services at the location designated in paragraph F. above and will be followed by telephone notification if required by exigent circumstances. Failure of the **Named Insured** to respond in writing by facsimile or other means to the Company's request for concurrence within the required time by either concurring or refusing to concur may be relied upon by the Company as conclusive evidence of an irrevocable election by the **Named Insured** to manage the **Claim** pursuant to Section G.(2). Concurrence by the **Named Insured** shall bind all **U.S. parties**; provided, however, that such concurrence shall not be effective unless written evidence of concurrence by all **U.S. parties** is provided to the Company. Notice or receipt of written evidence of non-concurrence from the **Named Insured** by the Company will trigger the irrevocable election set forth in Section G.(2), above, unless otherwise agreed to by the Company and the **Named Insured.**

Copyright © 1999 by Zurich Insurance Company Page 18 of 22 STF-REEL-100-PRES-MAN CW (6/99)

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

(iii) If the Company manages a **Claim**, the **Named Insured** and the **U.S. parties** shall have a duty to cooperate with the Company in its management of the **Claim** by providing information or reasonable access to information in their possession, custody or control relevant to the **Claim** in a timely manner. Any request for information from the Company shall state a time certain by which the information is requested. The time period shall not be less than five business days from the date of receipt by the **Named Insured** or the **U.S. party**; provided, that the time certain shall not be less than 8 hours where required by environmental, health or safety emergency or exigent litigation circumstances. Delivery of the request for information shall be made by facsimile and U.S. Postal Services at the location designated in paragraph F. above and will be followed by telephone notification if required by exigent circumstances.

**H. SETTLEMENT OF CLAIMS OR POTENTIAL CLAIMS**

**1. Settlement of Claims Managed by the Company**

a. If the Company is managing the **Claim**, the **Named Insured** shall not admit liability or settle any **Claim** without the Company's written consent.

b. If the Company has assumed responsibility for managing the **Claim**, whether under a reservation of rights or otherwise, it may at any time recommend a settlement of the **Claim** to the **Named Insured**. The Company shall not admit liability or settle any **Claim** without the **Named Insured's** written consent.

c. If the Company offers to pay to the **Named Insured** or recommends a reasonable settlement of a **Claim**, after reasonable opportunity is afforded the **Named Insured** to review such offer or settlement:

(i) for an amount within the deductible and if the **Named Insured** refuses to concur with such reasonable settlement, then the Company shall not be liable for any **Claim** in excess of the deductible; or

(ii) for a total amount in excess of the balance of the deductible and an **Named Insured** refuses to concur with such reasonable settlement then the Company's liability for a **Claim** shall be limited to that portion of the recommended settlement and the costs, charges and expenses as of the date of an **Insured's** refusal which exceed the deductible and fall within the Limit of Liability.

**2. Settlement of Claims Managed by the Named Insured**

a. If the **Named Insured** is managing the **Claim**, then the **Named Insured** may admit liability or settle any **Claim**, provided however, that the Company's liability for indemnity under this Policy is subject to all terms and conditions of the Policy, including those items set forth in Section G. 3. and G. 4., above.

**I. RESERVATION OF RIGHTS AND RESUMPTION OF CLAIMS MANAGEMENT BY THE NAMED INSURED**

1. Within ninety (90) days after notice to the Company of a **Claim**, the Company shall advise the **Named Insured** in writing whether it reserves its rights with respect to whether the **Claim** is covered by the Policy. If the Company is managing the **Claim** at the time it reserves its rights, all of the provisions of Section G.5 shall continue to apply. In the event the Company later declines coverage with respect to the **Claim**, the

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Company agrees that it will not seek to recoup any **Claim Expenses** from the **Named Insured.**

2. If the Company reserves its rights with respect to a **Claim,** the **Named Insured** may elect to manage the **Claim** pursuant to Section G.(2). If the **Named Insured** elects to manage the **Claim,** such management shall be subject to all of the conditions of Sections G.(1), G.(2), G.(3), and G.(4).

**J. VOLUNTARY PAYMENTS**

If the Company is managing a **Claim,** no costs, charges or related **Claim Expense** shall be incurred without the Company's prior written consent, which consent shall not be unreasonably withheld or delayed. Notwithstanding the foregoing, an **Insured** may take such emergency actions as reasonably necessary to prevent or mitigate further damage, provided an **Insured** provides notice to the Company as soon as practicable thereafter, but in no event later than 96 hours after action is taken.

**VIII. CONDITIONS**

A. **ASSIGNMENT** - Assignment of interest under this Policy shall not bind the Company until its consent is endorsed thereon, which consent shall not be unreasonably withheld.

B. **AUDIT AND INSPECTION** - The Company shall be permitted, upon reasonable prior notice to inspect, sample and monitor on a continuing basis a **Covered Location** or operations thereon. Neither the Company's right to make inspections, sample and monitor nor the actual undertaking thereof nor any report thereon shall constitute an undertaking, by the Company, on behalf of an **Insured** or others, to determine or warrant that a **Covered Location** or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation.

C. **BANKRUPTCY** - Bankruptcy or insolvency of an **Insured** will not relieve the Company of its obligations under this policy.

D. **CANCELLATION** - This Policy may be canceled by the First **Named Insured** by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when the cancellation shall be effective. This Policy may be canceled by the Company by mailing to the **Insureds,** at the addresses shown in this Policy, a notice stating when thereafter such cancellation shall be effective.

The Company may cancel this policy for the following reasons only:

1. Non-payment of premium;
2. Fraud or material misrepresentation;
3. A change in the activities of an **Insured** at the **Covered Location** which results in a materially added, increased, or changed risk.

Notice of pending cancellation will be provided (not less than 60 days for fraud or material misrepresentation, or material change in the nature or extent of the risk; or 15 days for non-payment of premium) by facsimile, telephone, and certified mail to:

The Presidio Trust
Attn: Executive Director
34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052
Telephone: (415) 561-5300
Facsimile: (415) 561-5315

and

General Superintendent
Golden Gate National Recreation Area
Building 201, Fort Mason
San Francisco CA 94123
Telephone: (415) 561-4620

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Facsimile: (415) 561-4610

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period.** Delivery of such written notice either by the First **Named Insured** or by the Company shall be equivalent to mailing. Confirmed receipt by the First **Named Insured** and the United States Department of the Interior of notice of cancellation will be obtained.

E. **CHANGES** - Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this Policy or stop the Company from asserting any right under the terms of this Policy. The terms of this Policy shall not be waived or changed except by endorsement issued to form a part of this Policy.

F. **COOPERATION** - The **Insured** and the Company agree to assist and cooperate in the fulfillment of the Policy's terms, including the investigation, adjustment, defense or settlement of **Claim(s)**.

G. **DECLARATIONS** - By acceptance of this Policy, the **Named Insured** agrees that the statements in the Declarations and Application are its agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the **Named Insured** and the Company or any of its agents relating to this insurance.

H. **OTHER INSURANCE** - The insurance provided under this Policy is primary insurance.

I. **SEPARATION OF INSUREDS** - Except with respect to the deductible, **Limit of Liability** and any rights and duties specifically assigned to the **First Named Insured** this insurance applies:

1. as if each **Named Insured** were the only **Named Insured**; and
2. separately to each **Insured** against whom **Claim** is made.

Misrepresentation, concealment, breach of condition or violation of any duty under this Policy by one **Insured** shall not prejudice the interest of coverage for another **Insured** under this Policy.

J. **SOLE AGENT** - The First **Named Insured** shall act on behalf of all **Insureds** for all purposes, including but not limited to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation or non-renewal, and the exercise of the rights provided in the Extended Reporting Periods section.

K. **SUBROGATION** - In the event of any payment under this Policy and to the extent permitted by law, the Company shall be subrogated to all an **Insured's** rights of recovery thereof against any person or organization. An **Insured** shall execute and deliver instruments and papers and do whatever else is reasonably necessary to secure such rights. The **Insured** shall do nothing to prejudice such rights.

Where the Company reimburses the Trust for obligations of the United States Department of Defense, Department of the Army as set forth in the **MOA**, the First **Named Insured** will pursue all remedies available under the **MOA** and nothing in this Policy will operate to change the obligations set forth in the **MOA**.

Any recovery obtained through subrogation or other recovery efforts by either party, after expenses incurred in such subrogation are deducted by the party bearing the expense, shall be applied proportionately to the **Insured** and the Company for actual payments as a result of adjustment, judgment, settlement or defense of a **Claim.**

\\zari_uszde01\sys\users\b09mxm5\quotes\presidio\policies\issued\reel\reelpr24.doc:::07/06/99 4:34 PM

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

# Important Notice

ZURICH

### Service of Suit

In the event of failure of the Company to pay any amount to be due under this policy, at the **Insured**'s request, the Company will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is agreed that service of process in such suit may be made upon the Company's General Counsel, Law Department, Zurich Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and the Company will abide by the final decision of such court or of any appellate court in the event of an appeal of any suit initiated against the Company under this policy.

### In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, the Company agrees to provide insurance as stated in this policy.

In Witness Whereof, the Company has executed this policy, and, where required, have had it countersigned by a duly authorized representative of the Company.

**President**
**Zurich Insurance Company**

**Corporate Secretary**
**Zurich Insurance Company**

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 1

# Nuclear Energy Liability Exclusion Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872442-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** Presidio Trust (the "**First Named Insured**") and Department of Interior (DOI) and the United States of America (USA) but the USA is a **Named Insured** only to the extent of **Claims** or **Loss** arising out of the activities, liabilities and obligations of the Presidio Trust and Department of Interior at the Covered Location (the **First Named Insured**, DOI, and USA collectively may be referred to as the "**Named Insured**").

34 Graham Street, P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Real Estate Environmental Liability**

In consideration of the payment of the premium and the deductible by the **Named Insured** and the reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions, conditions of the Policy that:

Section IV., EXCLUSIONS is amended to include the following exclusion:

T. 1. Under any Liability Coverage, to **Bodily Injury** or **Property Damage**:

a. With respect to which an **Insured** under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

b. Resulting from the **Hazardous Properties** of **Nuclear Material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments coverage, to expenses incurred with respect to **Bodily Injury** or resulting from the **Hazardous Properties** of **Nuclear Material**, and arising out of the operation of a **Nuclear Facility** by any person or organization.

3. Under any Liability Coverage to **Bodily Injury** or **Property Damage** resulting from the **Hazardous Properties** of **Nuclear Material**, if:

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

a. The Nuclear Material (a) is at any Nuclear Facility owned by, or operated by or on behalf of, an Insured, or (b) has been discharged or dispersed therefrom;

b. The Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

c. The **Bodily Injury** or **Property Damage** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such **Nuclear Facility** and any property thereat.

4. As used in this endorsement:

"**Hazardous Properties**" include radioactive, toxic or explosive properties;

"**Nuclear Material**" means **Source Material, Special Nuclear Material** or **By-Product Material**;

"**Source Material,**" "**Special Nuclear Material,**" and "**By-Product Material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**Spent Fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**;

"**Waste**" means any waste material (l) containing **By-Product Material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **Source Material** content, and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included under the first two paragraphs of the definition of **Nuclear Facility**.

"**Nuclear Facility**" means:

(a) Any **Nuclear Reactor**;

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **Spent Fuel**, or (3) handling, processing or packaging **Waste**;

(c) Any equipment or device used for the processing, fabricating or alloying of **Special Nuclear Material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**Nuclear Reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**Property Damage**" includes all forms of radioactive contamination of property.

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

All other terms and conditions of the Policy shall apply and remain unchanged.

Signed by: ______________________ July 6, 1999

Authorized Representative    Date

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 2

# Known Pollution Events Exclusion Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872442-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** Presidio Trust (the "First Named Insured") and Department of Interior (DOI) and the United States of America (USA) but the USA is a **Named Insured** only to the extent of **Claims** or **Loss** arising out of the activities, liabilities and obligations of the Presidio Trust and Department of Interior at the Covered Location (the **First Named Insured**, DOI, and USA collectively may be referred to as the "**Named Insured**").

34 Graham Street, P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Real Estate Environmental Liability**

In consideration of the payment of the premium and the deductible by the **Named Insured** and the reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions, conditions of the Policy, that, pursuant to Section IV., Exclusions, Paragraph R., this endorsement shall exclude coverage for **Claims, Cleanup Costs** and **Loss(es)** based on or arising out of the following scheduled known **Pollution Event(s)**:

<u>Schedule</u>

1. Lead contaminated soil at the Golden Gate Bridge Highway and Transportation District site in High and Moderate Contaminant Probability Areas as described in *Work Plan for Phase II Remedial Investigation of Lead Bearing Sand Blast Media in Soil at the Golden Gate Bridge, Final Draft*, PES Environmental, Inc., January 1, 1998.
2. Petroleum hydrocarbon impacts to soil and groundwater at the Golden Gate Bridge Highway and Transportation District site as described in *Final Remedial Investigation Report, Presidio Main Installation, Presidio of San Francisco*, Dames & Moore, January 1997.

All other terms and conditions of the Policy shall apply and remain unchanged.

Signed by: William M [signature]
Authorized Representative

July 6, 1999
Date

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 3

# Pollution Events Listed in Table 1 Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872442-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** Presidio Trust (the "First Named Insured") and Department of Interior (DOI) and the United States of America (USA) but the USA is a **Named Insured** only to the extent of **Claims** or **Loss** arising out of the activities, liabilities and obligations of the Presidio Trust and Department of Interior at the Covered Location (the First **Named Insured**, DOI, and USA collectively may be referred to as the "**Named Insured**").

34 Graham Street, P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Real Estate Environmental Liability**

In consideration of the payment of the premium and the deductible by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions, conditions of the policy that:

(1) all **Pollution Events** identified in Exhibit 2 to the **MOA** that are known to the **Insureds** are included in the attached Table 1 to this endorsement and are thus excluded from coverage under this Real Estate Environmental Liability policy pursuant to Section IV A. of this Policy; and

(2) any **Pollution Event** identified in Exhibit 2 to the **MOA** but not included in the attached Table 1 to this endorsement is not known to the **Insureds** for the purpose of this Policy.

Notwithstanding the foregoing, if coverage for any **Pollution Event** is provided under the Remediation Stop Loss Policy (ERC 2872443-00), coverage under this Policy is excluded.

All other terms and conditions of the Policy shall apply and remain unchanged.

Signed by: William M Lynch [signature]
Authorized Representative

July 6, 1999
Date

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

# KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
# REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| **Main Installation and Public Health Service Hospital (PHSH) Sites** | |
| *Regulatory Agency Approval* | |
| Feasibility Study/Remedial Action Plan (FS/RAP) | Prepare and obtain regulatory agency approval of FS/RAP for Main Installation sites. |
| *NFA Sites* | |
| Building 302 Area | Obtain NFA certification from regulatory agencies through FS/RAP. (a) |
| Building 611 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 662 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 680 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1057 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1153 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1369 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1388 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1450 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1451 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Lobos Creek | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Sewer Lift Station #2 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| *Remedial Action Sites* | |
| Baker Beach Disturbed Area 1 | Excavate waste fill and impacted subsoil, dispose of such materials as a Class III, non-hazardous waste at a permitted, off-site facility, and monitor seep surface water. |
| Baker Beach Disturbed Area 1A | Excavate waste fill and impacted subsoil, and dispose of such materials as a Class III, nor hazardous waste at a permitted, off-site facility. |
| Baker Beach Disturbed Area 2 | Excavate waste fill and impacted subsoil, and dispose of such materials as a Class III, non hazardous waste at a permitted, off-site facility. |
| Baker Beach Disturbed Area 3 | Characterize upper portion of waste fill. Install low-permeability cap over lower portion of waste fill. Perform on-going management and maintenance of cap, and monitor seep surface water. |
| Baker Beach Disturbed Area 4 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Howe-Wagner | Evaluate source of groundwater contamination. Excavate waste fill and impacted subsoil, dispose of such materials as a Class II, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Fill Site 1 | Excavate waste fill and impacted subsoil, dispose of such materials as a Class III, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Fill Site 5 | Excavate waste fill and impacted subsoil, dispose of such materials as a Class III, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Fill Site 6 | Install soil cover, asphalt, concrete, or equivalent over waste fill. Perform on-going maintenance of cover and monitor groundwater. |
| Graded Area 9 | Install soil cover, asphalt, concrete, or equivalent over waste fill. Perform on-going maintenance of cover and monitor groundwater. |
| Landfill 2 | Excavate waste fill and impacted subsoil, dispose of such materials as a Class III, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Landfill 4 | Excavate waste fill and impacted subsoil, dispose of such materials as a Class III, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Landfill 8 | Install soil cover, asphalt, concrete, or equivalent over waste fill. Perform on-going maintenance of cover and monitor groundwater. |
| Landfill 10 | Control surface water drainage, buttress landfill toe, and monitor groundwater. |
| Landfill E | Install low-permeability cap over waste fill. Extract groundwater, monitor groundwater and landfill gas, and perform on-going maintenance of cap. |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Remedial Action Sites (cont'd)* | |
| Building 215 Area | Characterize soil near former tanks, excavate impacted soil, dispose of such soil at as a Class II, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Former Building 609 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 633 Firing Range Area | Remove sand and concrete, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 669 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 1167 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 1244 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 1245 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 1351 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 1750 Area | Characterize soil and obtain NFA concurrence from regulatory agencies. |
| Building 1827 Area | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste. |
| El Polin Spring Area | Seep surface water monitoring. |
| Mountain Lake Area | Monitor surface water and perform biological verification sampling. |
| Nike Facility Area | Characterize soil and sediment. Excavate impacted soil and sediment, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. Monitor groundwater. |
| Nike Swale | Collect sediment samples and monitor seep surface water. |
| Sewer Lift Station #1 Area | Excavate impacted soil, dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility, and investigate groundwater. |
| Transfer Station Area | Characterize soil, excavate impacted soil, and dispose of half of such soil as a Class II waste and half as a non-RCRA hazardous waste at permitted, off-site facilities. Remove rubbish and dispose of such rubbish as a Class III waste at a permitted, off- |
| **Petroleum Program** | |
| *Regulatory Agency Approval* | |
| RWQCB Order | Renegotiate Order with Regional Water Quality Control Board (RWQCB) and comply with order requirements. |
| *NFA Sites* | |
| Tank Site 6 | Obtain NFA certification from regulatory agencies. (b) |
| Tank Site 7 | Obtain NFA certification from regulatory agencies. |
| Tank Site 8 | Obtain NFA certification from regulatory agencies. |
| Tank Site 11 | Prepare NFA report. (c) |
| Tank Site 12 | Prepare NFA report. |
| Tank Site 13 | Obtain NFA certification from regulatory agencies. |
| Tank Site 15 | Obtain NFA certification from regulatory agencies. |
| Tank Site 16 | Prepare NFA report. |
| Tank Site 34 | Obtain NFA certification from regulatory agencies. |
| Tank Site 35.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 35.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 35.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 38.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 38.2 | Obtain NFA certification from regulatory agencies. |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *NFA Sites (cont'd)* | |
| Tank Site 38.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 39 | Obtain NFA certification from regulatory agencies. |
| Tank Site 40 | Obtain NFA certification from regulatory agencies. |
| Tank Site 41 | Obtain NFA certification from regulatory agencies. |
| Tank Site 58 | Obtain NFA certification from regulatory agencies. |
| Tank Site 59 | Obtain NFA certification from regulatory agencies. |
| Tank Site 64 | Prepare NFA report. |
| Tank Site 99 | Prepare NFA report. |
| Tank Site 100.2 | Prepare NFA report. |
| Tank Site 101.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 101.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 102.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 102.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 103.2 | Prepare NFA report. |
| Tank Site 103.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 103.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 104.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 104.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 105.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 105.2 | Prepare NFA report. |
| Tank Site 105.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 105.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 106 | Obtain NFA certification from regulatory agencies. |
| Tank Site 130 | Prepare NFA report. |
| Tank Site 210 | Obtain NFA certification from regulatory agencies. |
| Tank Site 220 | Obtain NFA certification from regulatory agencies. |
| Tank Site 227 | Obtain NFA certification from regulatory agencies. |
| Tank Site 250 | Obtain NFA certification from regulatory agencies. |
| Tank Site 268.1 | Prepare NFA report. |
| Tank Site 268.2 | Prepare NFA report. |
| Tank Site 300.1 | Prepare NFA report. |
| Tank Site 300.2 | Prepare NFA report. |
| Tank Site 314.1 | Prepare NFA report. |
| Tank Site 314.2 | Prepare NFA report. |
| Tank Site 325.1 | Prepare NFA report. |
| Tank Site 325.2 | Prepare NFA report. |
| Tank Site 326.1 | Prepare NFA report. |
| Tank Site 326.2 | Prepare NFA report. |
| Tank Site 327.1 | Prepare NFA report. |
| Tank Site 327.2 | Prepare NFA report. |
| Tank Site 328.1 | Prepare NFA report. |
| Tank Site 328.2 | Prepare NFA report. |
| Tank Site 329.1 | Prepare NFA report. |
| Tank Site 329.2 | Prepare NFA report. |
| Tank Site 330.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 330.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 331 | Obtain NFA certification from regulatory agencies. |
| Tank Site 337 | Obtain NFA certification from regulatory agencies. |
| Tank Site 338.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 510.1 | Prepare NFA report. |
| Tank Site 510.2 | Prepare NFA report. |

# KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
# REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
## TABLE 1
## SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *NFA Sites (cont'd)* | |
| Tank Site 511.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 511.2 | Prepare NFA report. |
| Tank Site 512.2 | Prepare NFA report. |
| Tank Site 513.2 | Prepare NFA report. |
| Tank Site 514.2 | Prepare NFA report. |
| Tank Site 530 | Prepare NFA report. |
| Tank Site 531 | Prepare NFA report. |
| Tank Site 532 | Prepare NFA report. |
| Tank Site 533 | Prepare NFA report. |
| Tank Site 534 | Prepare NFA report. |
| Tank Site 535 | Prepare NFA report. |
| Tank Site 536 | Prepare NFA report. |
| Tank Site 540.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 540.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 541.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 541.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 542.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 542.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 543 | Obtain NFA certification from regulatory agencies. |
| Tank Site 544.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 544.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 545 | Obtain NFA certification from regulatory agencies. |
| Tank Site 546.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 546.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 547 | Obtain NFA certification from regulatory agencies. |
| Tank Site 548.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 548.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 549 | Obtain NFA certification from regulatory agencies. |
| Tank Site 550.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 550.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 551.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 551.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 645.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 650.1 | Prepare NFA report. |
| Tank Site 650.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 651 | Obtain NFA certification from regulatory agencies. |
| Tank Site 718.1 | Prepare NFA report. |
| Tank Site 718.2 | Prepare NFA report. |
| Tank Site 720.1 | Prepare NFA report. |
| Tank Site 720.2 | Prepare NFA report. |
| Tank Site 725/727 | Prepare NFA report. |
| Tank Site 728.1 | Prepare NFA report. |
| Tank Site 729.2 | Prepare NFA report. |
| Tank Site 730.1 | Prepare NFA report. |
| Tank Site 730.2 | Prepare NFA report. |
| Tank Site 732.2 | Prepare NFA report. |
| Tank Site 733.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 749/751 | Prepare NFA report. |
| Tank Site 752.1 | Prepare NFA report. |
| Tank Site 752.2 | Prepare NFA report. |
| Tank Site 753.1 | Prepare NFA report. |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *NFA Sites (cont'd)* | |
| Tank Site 753.2 | Prepare NFA report. |
| Tank Site 755.1 | Prepare NFA report. |
| Tank Site 758.2 | Prepare NFA report. |
| Tank Site 760.2 | Prepare NFA report. |
| Tank Site 920.3 | Prepare NFA report. |
| Tank Site 931 | Prepare NFA report. |
| Tank Site 934 | Obtain NFA certification from regulatory agencies. |
| Tank Site 952 | Prepare NFA report. |
| Tank Site 953 | Prepare NFA report. |
| Tank Site 954 | Prepare NFA report. |
| Tank Site 955 | Prepare NFA report. |
| Tank Site 956 | Prepare NFA report. |
| Tank Site 957 | Prepare NFA report. |
| Tank Site 958 | Prepare NFA report. |
| Tank Site 959 | Prepare NFA report. |
| Tank Site 960 | Prepare NFA report. |
| Tank Site 961 | Prepare NFA report. |
| Tank Site 962 | Prepare NFA report. |
| Tank Site 963 | Prepare NFA report. |
| Tank Site 964 | Prepare NFA report. |
| Tank Site 970 | Obtain NFA certification from regulatory agencies. |
| Tank Site 976 | Prepare NFA report. |
| Tank Site 990 | Prepare NFA report. |
| Tank Site 1029 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1060 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1064 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1100 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1110.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1110.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1168 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1185 | Prepare NFA report. |
| Tank Site 1201 | Prepare NFA report. |
| Tank Site 1202 | Prepare NFA report. |
| Tank Site 1203 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1204 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1205 | Prepare NFA report. |
| Tank Site 1206 | Prepare NFA report. |
| Tank Site 1207 | Prepare NFA report. |
| Tank Site 1208 | Prepare NFA report. |
| Tank Site 1214.1 | Prepare NFA report. |
| Tank Site 1216 | Prepare NFA report. |
| Tank Site 1216.1 | Prepare NFA report. |
| Tank Site 1217 | Prepare NFA report. |
| Tank Site 1217.1 | Prepare NFA report. |
| Tank Site 1218.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1226.1 | Prepare NFA report. |
| Tank Site 1226.2 | Prepare NFA report. |
| Tank Site 1228 | Prepare NFA report. |
| Tank Site 1233 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1244 | Prepare NFA report. |
| Tank Site 1261.1 | Prepare NFA report. |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *NFA Sites (cont'd)* | |
| Tank Site 1261.2 | Prepare NFA report. |
| Tank Site 1262.1 | Prepare NFA report. |
| Tank Site 1262.2 | Prepare NFA report. |
| Tank Site 1263.1 | Prepare NFA report. |
| Tank Site 1263.2 | Prepare NFA report. |
| Tank Site 1264 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1265.1 | Prepare NFA report. |
| Tank Site 1265.2 | Prepare NFA report. |
| Tank Site 1266.1 | Prepare NFA report. |
| Tank Site 1266.2 | Prepare NFA report. |
| Tank Site 1266.3 | Prepare NFA report. |
| Tank Site 1266.4 | Prepare NFA report. |
| Tank Site 1268.1 | Prepare NFA report. |
| Tank Site 1268.2 | Prepare NFA report. |
| Tank Site 1270.1 | Prepare NFA report. |
| Tank Site 1270.2 | Prepare NFA report. |
| Tank Site 1270.3 | Prepare NFA report. |
| Tank Site 1270.4 | Prepare NFA report. |
| Tank Site 1272.1 | Prepare NFA report. |
| Tank Site 1272.2 | Prepare NFA report. |
| Tank Site 1273.1 | Prepare NFA report. |
| Tank Site 1273.2 | Prepare NFA report. |
| Tank Site 1274.1 | Prepare NFA report. |
| Tank Site 1274.2 | Prepare NFA report. |
| Tank Site 1275.1 | Prepare NFA report. |
| Tank Site 1275.2 | Prepare NFA report. |
| Tank Site 1276.1 | Prepare NFA report. |
| Tank Site 1276.2 | Prepare NFA report. |
| Tank Site 1277.1 | Prepare NFA report. |
| Tank Site 1277.2 | Prepare NFA report. |
| Tank Site 1300.1 | Prepare NFA report. |
| Tank Site 1300.2 | Prepare NFA report. |
| Tank Site 1302 | Prepare NFA report. |
| Tank Site 1304.1 | Prepare NFA report. |
| Tank Site 1304.2 | Prepare NFA report. |
| Tank Site 1308.1 | Prepare NFA report. |
| Tank Site 1308.2 | Prepare NFA report. |
| Tank Site 1310.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1310.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1314 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1320 | Prepare NFA report. |
| Tank Site 1320.1 | Prepare NFA report. |
| Tank Site 1320.2 | Prepare NFA report. |
| Tank Site 1322.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1324.1 | Prepare NFA report. |
| Tank Site 1324.2 | Prepare NFA report. |
| Tank Site 1326.1 | Prepare NFA report. |
| Tank Site 1326.2 | Prepare NFA report. |
| Tank Site 1328.1 | Prepare NFA report. |
| Tank Site 1328.2 | Prepare NFA report. |
| Tank Site 1330 | Prepare NFA report. |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *NFA Sites (cont'd)* | |
| Tank Site 1334 | Prepare NFA report. |
| Tank Site 1339 | Prepare NFA report. |
| Tank Site 1359.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1359.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1399.1 | Prepare NFA report. |
| Tank Site 1399.2 | Prepare NFA report. |
| Tank Site 1399.6 | Prepare NFA report. |
| Tank Site 1648 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1750.2 | Prepare NFA report. |
| Tank Site 1794 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1801 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1802.1 | Prepare NFA report. |
| Tank Site 1802.3 | Prepare NFA report. |
| Tank Site 1802.4 | Prepare NFA report. |
| Tank Site 1806 | Prepare NFA report. |
| *Mini-Corrective Action Plan (Mini-CAP) Sites (d)* | |
| Tank Site 3 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 14 | Monitor groundwater. |
| Tank Site 51 | Monitor groundwater. |
| Tank Site 100.1 | Monitor groundwater. |
| Tank Site 101.1 | Monitor groundwater. |
| Tank Site 101.2 | Monitor groundwater. |
| Tank Site 102.1 | Monitor groundwater. |
| Tank Site 102.2 | Monitor groundwater. |
| Tank Site 103.1 | Monitor groundwater. |
| Tank Site 104.1 | Monitor groundwater. |
| Tank Site 104.2 | Monitor groundwater. |
| Tank Site 300.3 | Monitor groundwater. |
| Tank Site 332 | Monitor groundwater. |
| Tank Site 336 | Monitor groundwater. |
| Tank Site 338.1 | Monitor groundwater. |
| Tank Site 339 | Monitor groundwater. |
| Tank Site 340 | Monitor groundwater. |
| Tank Site 342 | Monitor groundwater. |
| Tank Site 343 | Monitor groundwater. |
| Tank Site 512.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 514.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 537 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 538 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 539 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 722.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 722.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Mini-CAP Sites (cont'd)* | |
| Tank Site 724.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 724.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 726.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 726.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 728.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 732.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 742.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 742.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 743.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 743.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 744.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 744.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 745.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 745.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 746.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 746.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 747.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 747.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 748.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 748.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 749.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 749.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 748/750 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 750.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 751.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Mini-CAP Sites (cont'd)* | |
| Tank Site 754.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 754.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 755.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 756.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 756.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 757.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 757.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 758.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 759.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 759.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 760.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 920.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 920.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 951 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1213 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1213.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1214.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1260 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1287 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1337 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1430 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1452 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1453 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1454 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1600 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Mini-CAP Sites (cont'd)* | |
| Tank Site 1601 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1625 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1647.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1647.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1660 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1774 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1802.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| *Corrective Action Plan (CAP) Sites (f)* | |
| DEH Area RAP Sites | See DEH Area RAP Sites, DEH Area (groundwater) (Other Programs). |
| Tank Site 269.2 | See note (e). |
| Tank Site 269.3 | See note (e). |
| Tank Site 269.4 | See note (e). |
| Crissy Field RAP Sites | See Crissy Field RAP Sites, Building 937/979 Area (groundwater) (Other Programs). |
| Tank Site 979.4 | See note (e). |
| Tank Site 979.5 | See note (e). |
| Tank Site 979.6 | See note (e). |
| Building 207/231 Area | Excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility, perform enhanced bioremediation, and monitor groundwater. |
| Tank Site 207.1 | See note (e). |
| Tank Site 207.2 | See note (e). |
| Tank Site 207.3 | See note (e). |
| Tank Site 228.1 | See note (e). |
| Tank Site 228.2 | See note (e). |
| Tank Site 228.3 | See note (e). |
| Tank Site 231.2 | See note (e). |
| Tank Site 231.3 | See note (e). |
| Tank Site 231.4 | See note (e). |
| Tank Site 231.5 | See note (e). |
| Tank Site 231.6 | See note (e). |
| Tank Site 231.7 | See note (e). |
| Building 637 Area | Excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Tank Site 637.1 | See note (e). |
| Tank Site 637.2 | See note (e). |
| Tank Site 637.3 | See note (e). |
| Tank Site 637.4 | See note (e). |
| Tank Site 637.5 | See note (e). |
| Tank Site 637.6 | See note (e). |
| Tank Site 637.VR | See note (e). |
| Tank Site 638.OW | See note (e). |
| Tank Site 640.1 | See note (e). |
| Tank Site 640.3 | See note (e). |
| Tank Site 640.4 | See note (e). |
| Tank Site 640.5 | See note (e). |
| Tank Site 642.1 | See note (e). |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Corrective Action Plan (CAP) Sites (cont'd)* | |
| Building 1065 Area | Excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility, perform enhanced bioremediation, and monitor groundwater. |
| Tank Site 1040.1 | See note (e). |
| Tank Site 1040.2 | See note (e). |
| Tank Site 1047.1 | See note (e). |
| Tank Site 1047.2 | See note (e). |
| Tank Site 1047.3 | See note (e). |
| Tank Site 1065.1 | See note (e). |
| Tank Site 1065.2 | See note (e). |
| Tank Site 1065.3 | See note (e). |
| Building 1349 Area | Excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility, perform enhanced bioremediation, and monitor groundwater. |
| Tank Site 1349 | See note (e). |
| *Additional Data Sites* | |
| Building 215 Area | See Building 215 Area (Main Installation and PHSH Sites). |
| Tank Site 215 | See note (e). |
| Tank Site 215.1 | See note (e). |
| Tank Site 215.2 | See note (e). |
| Commissary Area | Characterize soil and groundwater. Remove fuel distribution piping. Excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility and monitor groundwater. |
| Tank Site 603 | See note (e). |
| Tank Site 616 | See note (e). |
| Tank Site 621 | See note (e). |
| Tank Site 622 | See note (e). |
| Tank Site 626 | See note (e). |
| Tank Site 634 | See note (e). |
| Tank Site FDS-1 | See note (e). |
| Miscellaneous Tank Sites | Characterize soil and groundwater at the 30 listed miscellaneous tank sites. |
| Tank Site 2 | Perform further actions, as necessary. |
| Tank Site 136 | See note (e). |
| Tank Site 137 | See note (e). |
| Tank Site 140 | See note (e). |
| Tank Site 238 | See note (e). |
| Tank Site 283.1 | See note (e). |
| Tank Site 283.2 | See note (e). |
| Tank Site 283.3 | See note (e). |
| Tank Site 286 | See note (e). |
| Tank Site 513.1 | See note (e). |
| Tank Site 727.1 | See note (e). |
| Tank Site 727.2 | See note (e). |
| Tank Site 731.1 | See note (e). |
| Tank Site 731.2 | See note (e). |
| Tank Site 930.1 | See note (e). |
| Tank Site 930.2 | See note (e). |
| Tank Site 1027 | See note (e). |
| Tank Site 1030 | See note (e). |
| Tank Site 1214 | See note (e). |
| Tank Site 1221.1 | See note (e). |
| Tank Site 1221.2 | See note (e). |
| Tank Site 1221.3 | See note (e). |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Additional Data Sites (cont'd)* | |
| Tank Site 1221.4 | See note (e). |
| Tank Site 1221.5 | See note (e). |
| Tank Site 1351 | See note (e). |
| Tank Site 1399.3 | See note (e). |
| Tank Site 1750.1 | See note (e). |
| Tank Site 1773.1 | See note (e). |
| Tank Site 1773.2 | See note (e). |
| Tank Site M30 | See note (e). |
| *Verify Information Sites* | |
| Miscellaneous Tank Sites | Search, obtain, and review relevant information at the 10 listed miscellaneous |
| Tank Site 42 | tank sites. Perform further actions, as necessary. |
| Tank Site 127 | See note (e). |
| Tank Site 269.5 | See note (e). |
| Tank Site 729.1 | See note (e). |
| Tank Site 733.1 | See note (e). |
| Tank Site 750.2 | See note (e). |
| Tank Site 751.2 | See note (e). |
| Tank Site 1399.4 | See note (e). |
| Tank Site 1399.5 | See note (e). |
| Tank Site GT39 | See note (e). |
| *Phase II PA Report Sites (g)* | |
| Tank Site 35.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 105.5 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 205 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 924 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| *Fuel Distribution System Line (FDS)* | |
| FDS Line | Excavate impacted soil and dispose of such soil at as Class II, non-hazardous waste at a permitted, off-site facility. |
| *RWQCB Order 96-070 Compliance* | |
| Routine Monitoring | Perform quarterly water level monitoring and conduct 5-year reviews. |

# KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
# REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| **Other Programs** | |
| *Firing Ranges* | |
| Lobos Creek Protected Range | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Lobos Creek Target Butt | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Machine Gun Butt | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| CHP Pistol Range | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| *Coastal Fortifications* | |
| Battery Blaney (Building 635) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Boutelle (Building 1651) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Chamberlain (Building 1621) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Cranston (Building 1661) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Crosby (Building 1630) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Dynamite (Building 1399) | See Petroleum Program. |
| Battery East | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Godfrey (Building 1647) | See Petroleum Program. |
| Battery Howe-Wagner (Building 1287) | See Petroleum Program. |
| Battery Lancaster (Building 1665 and 998) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Batter Marcus Miller (Building 1658) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Batter McKinnon (Building 1430) | See Petroleum Program. |
| Batter Safford (Building 1354) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Batter Sherwood (Building 636) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Batter Stotsenberg (Building 1430) | See Petroleum Program. |
| Batter West (Buildings 1640 and 1643) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Central Magazine (Buildings 1470 and 1471) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Mine Depot (Buildings 979 and 985 to 990) | See Petroleum Program. |
| New Mine Casement (Building 1601) | See Petroleum Program. |
| Old Mine Casement (Building 1600) | See Petroleum Program. |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Crissy Field Remedial Action Plan (RAP) Sites* | |
| East of Mason (EOM) | Obtain NFA certification from regulatory agencies. |
| Fill Site 7 | Obtain NFA certification from regulatory agencies. |
| Building 640/643 Area | Obtain NFA certification from regulatory agencies. |
| Building 923/937 Area (soil) | Obtain NFA certification from regulatory agencies. |
| Building 924 Firing Range | Obtain NFA certification from regulatory agencies. |
| Building 950 Area | Obtain NFA certification from regulatory agencies. |
| Building 979 Area (soil) | Obtain NFA certification from regulatory agencies. |
| Crissy Field Monitoring Wells | Decommission monitoring wells for restoration project. |
| Storm Drain Sediments | Remove storm drains and associated sediments in wetlands area. Dispose of such sediments as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Crissy Field Rifle Institute and Skeet Ranges (on-shore) | Excavate impacted soil in intertidal zone and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Fill Site 7 Soil under Electrical Line | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Contingency Action Plan Sites | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Wetlands | Sample sediment in wetlands. |
| Building 937/979 Area (groundwater) | Monitor groundwater. |
| *DEH Area Remedial Action Plan Sites* | |
| DEH Area (soil) | Obtain NFA certification from regulatory agencies. |
| Building 268 Area | See note (e). |
| Building 269 Area | See note (e). |
| Building 283 Area | See note (e). |
| Building 286 Area | See note (e). |
| Buildings 292/293 Area | See note (e). |
| DEH Area (groundwater) | Monitor groundwater. |
| *CERCLA Tank Sites* | |
| Building 207/231 Area | See Building 207/231 Area (Petroleum Program). |
| Tank Site 231.1 | See note (e). |
| DEH Area Sites | See DEH RAP Sites, DEH Area (groundwater). |
| Tank Site 269.1 | See note (e). |
| Crissy Field RAP Sites | See Crissy Field RAP Sites, Building 937/979 Area (groundwater). |
| Tank Site 937.1 | See note (e). |
| Tank Site 937.2 | See note (e). |
| Tank Site 937.3 | See note (e). |
| Tank Site 979.1 | See note (e). |
| Tank Site 979.2 | See note (e). |
| Tank Site 979.3 | See note (e). |
| Miscellaneous Tank Sites | |
| Tank Site 628 | See Commissary Area (Petroleum Program, Need Additional Data Sites) |
| Tank Site 640.2 | See Building 637 Area (Petroleum Program, CAP Sites) |
| Tank Site 640.20W | See Building 637 Area (Petroleum Program, CAP Sites) |
| Tank Site 651 | Prepare NFA report. |
| Tank Site 662.1 | Prepare NFA report. |
| Tank Site 662.2 | Prepare NFA report. |
| Tank Site 1362 | Prepare NFA report. |
| Tank Site LR0101.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site LR0101.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |

KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Selected Category A Sites (h)* | |
| Building 31 Area | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 203 | Characterize soil. |
| Building 204 | Characterize soil. |
| Building 252 Area | Characterize soil. |
| Building 660 | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 666 | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 671 | Characterize soil. |
| Building 901 Area | Characterize soil. |
| Building 1229 | Characterize soil. |
| Building 1231 | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1233 | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1235 Area | Characterize soil. Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1283 | Characterize soil. |
| Building 1338 | Characterize soil. |
| Building 1355 | Characterize soil. Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1355 Area | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1361 Area | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1363 | Characterize soil. |
| Building 1365 | Characterize soil. |
| *Regulatory Agency Approval* | |
| Basewide Remedial Action Plan (RAP) | Prepare and obtain regulatory agency approval of a Basewide RAP. |
| **Lead-Based Paint in Soil** | |
| *Planning Area* | |
| Main Post: 138 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Golden Gate/Fort Point: 23 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Fort Scott: 140 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Letterman Complex: 31 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Cavalry Stables: 4 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Public Health Service Hospital: 21 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| East Housing Area: 65 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Crissy Field: 39 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Presidio Hill: 15 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |

# KNOWN POLLUTION EVENTS LISTED IN TABLE 1 ENDORSEMENT
# REAL ESTATE ENVIRONMENTAL LIABILITY POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Planning Area (cont'd)* | |
| Presidio Forest: 12 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Lobos Creek Valley: 13 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Coastal Bluffs: 8 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| **Administration** | |
| Regulatory Agency Oversight | Provide regulatory agency oversight of the Presidio Environmental Restoration. |

Notes:

(a) This footnote applies to all sites for which the proposed activity is "Obtain NFA certification from the regulatory agencies through FS/RAP." No remedial actions have been identified for affected media at the site. Based on available data, the proposed activity is to obtain certification from regulatory agencies that no further action (NFA) is required as part of the FS/RAP for the Main Installation sites.

(b) This footnote applies to all sites for which the proposed activity is "Obtain NFA certification from the regulatory agencies." No remedial actions have been identified for affected media at the site and necessary reporting has been completed. Based on available data, the proposed activity is to obtain NFA certification from regulatory agencies.

(c) This footnote applies to all sites for which the proposed activity is "Prepare NFA report." No remedial actions have been identified for affected media at the site. However, for the proposed activity, a report requesting no further action must be prepared and NFA certification must be obtained from the regulatory agencies.

(d) Remedial actions for Mini-CAP sites include the listed tank site and associated impacted soil. Where necessary, the activity also addresses associated appurtenances, such as fuel dispensers, vapor return lines, and distribution piping, if they are directly related to the Mini-CAP site.

(e) The tank site and the associated activity are addressed in the site area listed above.

(f) Remedial actions for CAP sites include the listed tank sites, associated impacted soil, and releases from appurtenances to the listed tanks, such as fuel dispensers, vapor return lines, and distribution piping.

(g) The Phase II PA Report sites are those tank sites identified in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled *Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco* which have not otherwise been included in this Scope of Work and for which the activities identified in this table may be necessary.

(h) Selected Category A sites are those sites identified in the International Technology ("IT") report, dated 17 February 1999, entitled *Additional Sites of Potential Environmental Concern: In-Depth Historical Research Results* for which the activities identified in this table may be necessary.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 4

# Non-Owned Disposal Site Coverage Endorsement, Off-Site and On-Site

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872442-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** Presidio Trust (the "First **Named Insured**") and Department of Interior (DOI) and the United States of America (USA) but the USA is a **Named Insured** only to the extent of **Claims** or **Loss** arising out of the activities, liabilities and obligations of the Presidio Trust and Department of Interior at the Covered Location (the First **Named Insured**, DOI, and USA collectively may be referred to as the "**Named Insured**").

34 Graham Street, P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Real Estate Environmental Liability**

In consideration of the payment of the premium and the deductible by the **Named Insured** and the reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions, conditions of the Policy that:

I. Section IV., EXCLUSIONS, Exclusion L., shall be deleted in its entirety and the following scheduled exclusion shall apply:

L. any **Pollution Event** or **Loss** on, at, under or from any location to which the **Insured** sends or has sent materials for treatment, recycling, reclamation, storage or disposal except for non owned disposal sites expressly scheduled onto this endorsement.

**SCHEDULE**

| NON OWNED DISPOSAL SITE NAME | ADDRESS | SITE # |
|---|---|---|

II. It is further understood and agreed that the following Exclusions shall apply to the coverage provided by this endorsement in addition to the terms, conditions and exclusions contained in the Policy.

**EXCLUSIONS**

This insurance shall not apply to **Claim(s)**, **Cleanup Costs** or **Loss(es)** based upon or arising out of:

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

A. any non-owned disposal site that is now or ever has been owned, operated or leased in whole or in part by the **Insured** or an employee of the **Insured** or any subsidiary or affiliated company of the **Insured**; and

III. It is further understood and agreed that Section VIII., CONDITIONS, paragraph I. shall be deleted and replaced with the following paragraph only with respect to coverage provided by this endorsement and in addition to the terms, conditions and exclusions contained in the Policy.

CONDITIONS

I. **OTHER INSURANCE**-When other insurance is available to the **Insured** for **Cleanup Costs** and **Loss** including **Claim Expenses** covered under the terms and conditions of this Policy and this endorsement, the Company's obligation to the **Insured** shall be as follows:

1. The coverage provided by this Policy and this endorsement shall apply as excess insurance over any other valid insurance, be it primary or excess. This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insured for any coverage.

2. Where this Policy and this endorsement is excess insurance, the Company will pay only its share of the amount of **Cleanup Costs** and **Loss** including **Claim Expense**, if any, that exceeds the total amount of all such valid insurance.

The **Insured** shall promptly upon request of the Company provide the Company with copies of all policies potentially applicable against the liability covered by this endorsement.

All other terms and conditions of the Policy shall apply and remain unchanged.

Signed by: William M [signature]　　　July 6, 1999

Authorized Representative　　　Date

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 5

# Transportation of Materials by Automobile Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872442-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** Presidio Trust (the "First **Named Insured**") and Department of Interior (DOI) and the United States of America (USA) but the USA is a **Named Insured** only to the extent of **Claims** or **Loss** arising out of the activities, liabilities and obligations of the Presidio Trust and Department of Interior at the Covered Location (the First **Named Insured**, DOI, and USA collectively may be referred to as the "**Named Insured**").

34 Graham Street, P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Real Estate Environmental Liability**

In consideration of the payment of the premium and the deductible by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions, conditions of the policy that:

1. **Section I. INSURING AGREEMENT** is amended to include the following coverage:

   "To pay on behalf of an **Insured** any **Loss** an **Insured** is legally obligated to pay as a result of **Claims** caused by a **Pollution Event** resulting from the **Transportation of Materials** by the **Insured** and the **Claim** arising from such **Pollution Event** is first made against the **Insured** during the **Policy Period** any renewal thereof, the Automatic Extended Reporting Period, or the Extended Reporting Period, if applicable."

   except as modified by Section VII. G. 3. (a) of the Policy and paragraph 4, below.

2. **Section II. DEFINITIONS** is amended to include the following Definitions:

   A. **Automobile** means a land motor vehicle, trailer or semi-trailer designated for travel on public roads including any machinery or apparatus attached thereto.

   B. **Materials** means materials, products or waste **Transported** by the **Insured** or another acting on behalf of the **Insured** on or within an **Automobile** that is properly licensed to **Transport** such materials, products or waste.

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

C. **Transportation** or **Transported** or **Transport** means the movement of **Materials** during the period commencing when the physical possession of the **Materials** are loaded onto an **Automobile** by the **Insured** or another acting on behalf of the **Insured** and ending when the **Materials** are unloaded from the **Automobile** by the **Insured** or another acting on behalf of the **Insured** at the place where the **Materials** are finally delivered, disposed of or abandoned by the **Insured**.

D. **Wrongful Delivery** means the delivery of any **Materials** into the wrong receptacle or to the wrong address, or the delivery of one type of **Materials** in error for another.

3. Section IV. **EXCLUSIONS** is amended to include the following exclusions:

A. Any **Claim** for **Loss** to **Materials** or an **Automobile**.

B. Any **Claim** for **Loss** caused by **Wrongful Delivery**.

C. Any **Claim** for **Loss** caused by the movement or **Transportation** of **Materials** by someone or some entity other than the **Named Insured** or on behalf of the **Named Insured**.

4. Section VII. Claims Provisions G. 3. (a) is amended to include the following coverage:

"To indemnify the **Insured** for any **Loss** caused by a **Pollution Event** that an **Insured** is legally obligated to pay as a result of **Claims** first made against the **Insured** during the **Policy Period** resulting from the **Transportation of Materials** by the **Insured**, provided that the **Claim** is reported to the Company during the **Policy Period**, any renewal thereof, the Automatic Extended Reporting Period, or the Extended Reporting Period, if applicable."

5. Section VIII. **CONDITIONS** is amended to include the following condition:

A. This Endorsement shall not be utilized to evidence financial responsibility of any **Insured** under any federal, state or local law.

6. Section VIII. **CONDITION I., OTHER INSURANCE** shall be deleted in its entirety and the following CONDITION I., shall apply to coverage provided by this endorsement only:

I. **OTHER INSURANCE**-When other insurance is available to the **Insured** for **Loss** covered under the terms and conditions of this Policy and this endorsement, the Company's obligation to the **Insured** shall be as follows:

1. The coverage provided by this Policy and this endorsement shall apply as excess insurance over any other valid insurance, be it primary or excess. This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insured for any coverage.

2. Where this Policy and this endorsement is excess insurance, the Company will pay only its share of the amount of **Loss** including **Claim Expense**, if any, that exceeds the total amount of all such valid insurance, whether collectible or not.

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

The **Insured** shall promptly upon request of the Company provide the Company with copies of all policies potentially pplicable against the liability covered by this endorsement.

All other terms and conditions of the Policy shall apply and remain unchanged.

Signed by: William M Lynch July 6, 1999

Authorized Representative Date

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 6

# Non-Owned Disposal Site Coverage Endorsement Off-Site and On-Site

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| BRC 2872442-00 | 5/24/1999 | 5/24/2014 | | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** Presidio Trust (the "First Named Insured") and Department of Interior (DOI) and the United States of America (USA) but the USA is a **Named Insured** only to the extent of **Claims** or **Loss** arising out of the activities, liabilities and obligations of the Presidio Trust and Department of Interior at the Covered Location (the First **Named Insured**, DOI, and USA collectively may be referred to as the "**Named Insured**").

34 Graham Street, P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Real Estate Environmental Liability**

In consideration of the payment of the premium and the deductible by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions, conditions of the policy that:

I. Section IV., EXCLUSIONS, Exclusion L., shall be deleted in its entirety and the following scheduled exclusion shall apply:

L. any **Pollution Event** or **Loss** on, at, under or from any location to which the **Insured** sends or has sent materials for treatment, recycling, reclamation, storage or disposal except for non owned disposal sites expressly scheduled onto this endorsement.

**SCHEDULE**

| NON OWNED DISPOSAL SITE NAME | ADDRESS | EPA/SWIS ID NO. |
|---|---|---|
| Chemical Waste Management, Kettleman Hills Treatment Facility Effective 10/14/99 | 35251 Old Skyline Road Kettleman Hills, CA 93239 | CAT 0006461175/16-AA-0021 |
| ECDC Environmental Effective 10/14/99 | 970 East Murray-Holladay Road Salt Lake City, UT 84177 | UTR000000687 |

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

| | | |
|---|---|---|
| US Ecology, Inc. (for the Beatty, NV site) Texas Ecologists, Inc. | 805 W. Idaho, Suite 200 Boise, ID 83702-8916 | NVT 330010000 |
| Altamont Recycling and Disposal Facility A Division of Waste Management of Alameda County, Inc. Effective 10/14/99 | 10840 Altamont Pass Road Livermore, CA 94550 | CA 0083763 |
| USA Waste Services, Inc. DBA McKittrick Waste Treatment Site Effective 10/14/99 | 56533 Hwy 58 West McKittrick, CA 93251 | CAD 980636831/15-AA-0105 |
| Evergreen Environmental Services-North Effective 11/05/99 | 5000 Birch Street, Suite 500 Newport Beach, CA 92660 | CAD 980887418 |
| TPS Technologies, Inc. Effective 11/05/99 | 1964 S. Orange Blossom Tr. Apopka, FL 32703 | FL 0001215466 |
| Ecology Control Industries Effective 11/05/99 | 19500 Normandie Avenue Torrance, CA 90502 | CAD 009585803 |
| Clearwater Environmental Mgmt. Effective 11/05/99 | P.O. Box 7420 Fremont, CA 94537-7420 | CAR 000007013 |
| Safety Clean Buttonwillow, Inc. Effective 11/30/99 | 2500 W. Lokern Road Buttonwillow, CA 93206 | CAD 980675276 |
| Forward Inc. | | CAD 990794133/39-AA-0020 |
| OX Mountain Landfill | | CAD 001459650/41-AA-0002 |
| Keller Canyon Landfill | | CAD 000007057036/07-AA-0032 |
| Vasco Road Landfill | | CAD 982407645/01-AA-0010 |

II. It is further understood and agreed that the following Exclusions shall apply to the coverage provided by this endorsement in addition to the terms, conditions and exclusions contained in the Policy.

**EXCLUSIONS**

This insurance shall not apply to **Claim(s)**, **Cleanup Costs** or **Loss(es)** based upon or arising out of:

A. any non-owned disposal site that is now or ever has been owned, operated or leased in whole or in part by the **Insured** or an employee of the **Insured** or any subsidiary or affiliated company of the **Insured**; and

II. It is further understood and agreed that Section VIII., CONDITIONS, paragraph I. Shall be deleted and replaced with the following paragraph only with respect to coverage provided by this endorsement and in addition to the terms, conditions and exclusions contained in the Policy.

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

**ONDITIONS**

I. **OTHER INSURANCE**-when other insurance is available to the **Insured** for **Cleanup Costs** and **Loss** including **Claim Expenses** covered under the terms and conditions of this Policy and this endorsement, the Company's obligation to the **Insured** shall be as follows:

1. The coverage provided by this Policy and this endorsement shall apply as excess insurance over any other valid insurance, be it primary or excess. This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insured for any coverage.

2. Where this Policy and this endorsement is excess insurance, the Company will pay only its share of the amount of **Cleanup Costs** and **Loss** including **Claim Expense**, if any, that exceeds the total amount of all such valid insurance.

The **Insured** shall promptly upon request of the Company provide the Company with copies of all policies potentially applicable against the liability covered by this endorsement.

All other terms and conditions of the Policy shall apply and remain unchanged.

Signed by: William M. [signature]
Authorized Representative

December 27, 2000
Date

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 7

# Non-Owned Disposal Site Coverage Endorsement Off-Site and On-Site

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872442-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** Presidio Trust (the "First Named Insured") and Department of Interior (DOI) and the United States of America (USA) but the USA is a Named Insured only to the extent of Claims or Loss arising out of the activities, liabilities and obligations of the Presidio Trust and Department of Interior at the Covered Location (the First Named Insured, DOI, and USA collectively may be referred to as the "Named Insured").

34 Graham Street, P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**al Estate Environmental Liability**

In consideration of the payment of the premium and the deductible by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions, conditions of the policy that:

I. Section IV., EXCLUSIONS, Exclusion L., shall be deleted in its entirety and the following scheduled exclusion shall apply:

L. any **Pollution Event** or **Loss** on, at, under or from any location to which the **Insured** sends or has sent materials for treatment, recycling, reclamation, storage or disposal except for non owned disposal sites expressly scheduled onto this endorsement.

<u>SCHEDULE</u>

| NON OWNED DISPOSAL SITE NAME | ADDRESS | EPA/SWIS ID NO. |
|---|---|---|
| Chemical Waste Management, Kettleman Hills Treatment Facility Effective 10/14/1999 | 35251 Old Skyline Road Kettleman Hills, CA 93239 | CAT 0006461175 / 16-AA-0021 |
| ECDC Environmental Effective 10/14/1999 | 970 East Murray-Holladay Road Salt Lake City, UT 84177 | UTR000000687 |

opyright © 2003 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

| | | |
|---|---|---|
| 3 Ecology, Inc. (for the Beatty, NV site) .exas Ecologists, Inc. Effective 14/14/1999 | 805 W. Idaho, Suite 200 Boise, ID 83702-8916 | NVT 330010000 |
| Altamont Recycling and Disposal Facility A Division of Waste Management of Alameda County, Inc. Effective 10/14/1999 | 10840 Altamont Pass Road Livermore, CA 94550 | CA 0083763 / 01-AA-0009 |
| USA Waste Services, Inc. DBA McKittrick Waste Treatment Site Effective 10/14/1999 | 56533 Hwy 58 West McKittrick, CA 93251 | CAD 980636831 / 15-AA-0105 |
| Evergreen Environmental Services-North Effective 11/05/1999 | 5000 Birch Street, Suite 500 Newport Beach, CA 92660 | CAD 980887418 |
| TPS Technologies, Inc. Effective 11/05/1999. | 1964 S. Orange Blossom Tr. Apopka, FL 32703 | FL 0001215466 |
| Ecology Control Industries Effective 11/05/1999 | 19500 Normandie Avenue Torrance, CA 90502 | CAD 009585803 |
| Clearwater Environmental Mgmt. ffective 11/05/1999 | P.O. Box 7420 Fremont, CA 94537-7420 | CAR 000007013 |
| Safety Clean Buttonwillow, Inc. Effective 11/30/1999 | 2500 W. Lokern Road Buttonwillow, CA 93206 | CAD 980675276 |
| Forward, Inc. Landfill Effective 12/27/2000 | 9999 South Austin Road Manteca, CA 95336 | CAD 990794133 / 39-AA-0015 |
| Ox Mountain Landfill Effective 12/27/2000 | 12310 San Mateo Road Half Moon Bay, CA 94019 | CAD 001459650 / 41-AA-0002 |
| Keller Canyon Landfill Effective 12/27/2000 | 901 Bailey Road Pittsburg, CA 94565 | CAD 000007057036 / 07-AA-0032 |
| Vasco Road Landfill Effective 12/27/2000 | 4001 North Vasco Road Vacaville, CA 95687 | CAD 982407645 / 01-AA-0010 |
| Hay Road Landfill Effective 10/23/2003 | 6426 Hay Road Vacaville, CA 95687 | CAD 982042475 / 48-AA-0002 |

yright © 2003 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

It is further understood and agreed that the following Exclusions shall apply to the coverage provided by this ıdorsement in addition to the terms, conditions and exclusions contained in the Policy.

EXCLUSIONS

This insurance shall not apply to **Claim(s)**, **Cleanup** Costs or Loss(es) based upon or arising out of:

A. any non-owned disposal site that is now or ever has been owned, operated or leased in whole or in part by the **Insured** or an employee of the **Insured** or any subsidiary or affiliated company of the **Insured**; and

II. It is further understood and agreed that Section VIII., CONDITIONS, paragraph I. Shall be deleted and replaced with the following paragraph only with respect to coverage provided by this endorsement and in addition to the terms, conditions and exclusions contained in the Policy.

CONDITIONS

I. OTHER INSURANCE-when other insurance is available to the **Insured** for **Cleanup Costs** and **Loss** including **Claim Expenses** covered under the terms and conditions of this Policy and this endorsement, the Company's obligation to the **Insured** shall be as follows:

1. The coverage provided by this Policy and this endorsement shall apply as excess insurance over any other valid insurance, be it primary or excess. This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insured for any coverage. -

2. Where this Policy and this endorsement is excess insurance, the Company will pay only its share of the amount of **Cleanup Costs** and **Loss** including **Claim Expense**, if any, that exceeds the total amount of all such valid insurance.

The **Insured** shall promptly upon request of the Company provide the Company with copies of all policies potentially applicable against the liability covered by this endorsement.

This endorsement applied in lieu of previously issued endorsement #6.

All other terms and conditions of the Policy shall apply and remain unchanged.

Signed by: William M. [signature] October 23, 2003

Authorized Representative Date

yright © 2003 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

# Exhibit B

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

# STEADFAST INSURANCE COMPANY

**Dover, Delaware**
**Administrative Offices - 1400 American Lane**
**Schaumburg, Illinois 60196-1056**

# REMEDIATION STOP LOSS INSURANCE POLICY

## CLAIMS-MADE AND REPORTED COVERAGE

**This is a Claims-Made and reported Policy. Notice of a Potential Claim is not a Claim and does not trigger coverage under the Policy. This Policy has certain provisions and requirements unique to it and may be different from other policies an Insured may have purchased. Claim(s) must first be made by the Insured during the Policy Period, and Claim(s) must be reported, in writing, to the Company during the Policy Period.**

**Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.**

**Words and phrases that appear in bold print have special meaning. Refer to Section II -- DEFINITIONS.**

**There are no third party beneficiaries of this Policy. This policy creates no rights by or on behalf of any third party. The Company has no obligation under this Policy to any third party whatsoever and specifically has no obligation to make payment to anyone except the Insured.**

**In consideration of the payment of the premium and the undertaking of the Insured to pay the Cumulative Losses Self Insured Retention and Total Cumulative Losses Self Insured Retention as described herein, in reliance upon the statements in the Declarations and Application made a part hereof, and subject to the Limits of Liability of this insurance as set forth in the Declarations, and the exclusions, conditions and other terms of this Policy, the Company agrees with the Named Insured as follows:**

### I. INSURING AGREEMENT

To pay to the **Named Insured** any **Loss** arising out of the **Insured Project** designated in the Declarations which results from costs exceeding the **Self Insured Retention(s)** designated in the Declarations, provided the **Loss** is the result of a **Claim** first reported to the Company, in writing by the **Named Insured**, during the **Policy Period**.

### II. DEFINITIONS

A. **Bodily Injury** means physical injury, sickness or disease, mental anguish or emotional distress, sustained by any person, including death resulting therefrom.

B. **Claim** means discovery by the **Insured**, memorialized in a written notice received by the Company, that remediation costs for the **Insured Project** have exceeded the **Cumulative Losses Self Insured Retention** or **Total Cumulative Losses Self Insured Retention** amount.

C. **Defense Costs** means all costs incurred in connection with any dispute or investigation of any **Loss**.

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

D. **Insured** means:

1. the **Named Insured**;

2. any current or former trustee, principal, partner, executive, officer, director, employee, contract employee or leased personnel of the **Insured** while acting within the scope of their employment or written agreement with the **Insured**;

3. the heirs, executors, administrators, assigns and legal representatives of each of the **Insureds** in the event of death, incapacity, or bankruptcy.

E. **Insured Project** means the project designated in Item 5 of the Declarations.

F. **Loss(es)** means the dollar amount due and payable which is required to complete the **Scope of Work** described in the Scope of Work Endorsement to this Policy.

G. **MOA** means Memorandum of Agreement Regarding Environmental Remediation at the Presidio of San Francisco entered into between the **Named Insured**, the United States Department of Defense, Department of the Army and the United States Department of the Interior, National Park Service on May 24, 1999.

H. **Named Insured** means the person or entity designated as such in Item 1 of the Declarations.

I. **Policy Period** means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of termination or cancellation.

J. **Scope of Work** means the activities and schedule outlined in the Scope of Work Endorsement to this Policy required to perform the **Insured Project**.

K. **Cumulative Losses Self Insured Retention** means the dollar amount designated in Item 4.a. through Item 4.d. of the Declarations. The **Named Insured** must pay the **Cumulative Losses Self Insured Retention** in full toward settlement of **Loss** prior to the Company's payment of any **Loss** in excess of the **Cumulative Losses Self Insured Retention**. The **Insured** may not insure the **Cumulative Losses Self Insured Retention.**

L. **Total Cumulative Losses Self Insured Retention** means the dollar amount designated in Item 4.e. of the Declarations. The **Named Insured** must pay the **Total Cumulative Losses Self Insured Retention** in full toward settlement of **Loss** prior to the Company's payment of any **Loss** in excess of the **Total Cumulative Losses Self Insured Retention**. The **Insured** may not insure the **Total Cumulative Losses Self Insured Retention.**

M. **Reduced Funding Scope of Work** shall have that meaning set forth in Section II of the Scope of Work Endorsement to this Policy.

## III. TERRITORY

This Policy only applies to **Claims** made or brought in the United States, its territories or possessions or in Canada.

## IV. EXCLUSIONS

This insurance does not apply to **Loss** or **Claims** based upon or arising out of:

A. any suit made by an **Insured** against any other person or entity who is also an Insured under this Policy;

B. any **Insured's** intentional, knowing, or willful non-compliance with any statute, regulation, ordinance, permit, administrative complaint or order, notice of violation, notice letter, executive order, or instruction of any governmental agency or body;

C. any dishonest or criminal acts of the **Insured**;

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

D. any liability assumed by contract and not otherwise excluded, except for the performance of activities described in the Scope of Work Endorsement;

E. fines, assessments, penalties, punitive, exemplary, or treble damages;

F. the **Named Insured's** intentional misrepresentation of the **Scope of Work**;

G. a time delay in a contractor(s) completion of the **Insured Project**, if such delay was within the control of the contractor(s) performing the remediation;

H. the insolvency or bankruptcy of any contractor(s) performing the remediation;

I. a change in the **Scope of Work** or material change in the schedule of activities in the **Scope of Work** designated in the Scope of Work Endorsement to this Policy unless such change is agreed to by the Company, such agreement not to be unreasonably withheld, and so endorsed to the Policy; however, this exclusion shall not apply to any change in the **Scope of Work** required by any regulatory agency, other than the Department of Interior or the Department of Defense, Department of Army, or required pursuant to applicable federal, state, or local statutes and regulations, orders or ordinances;

J. **Insured's** internal expenses or chargebacks for operating costs or professional services of their employees;

K. **Defense Costs**;

L. **Bodily Injury**;

M. any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot or civil commotion;

N. faulty workmanship or defective materials in the activities outlined in the **Scope of Work**.

O. radiologic materials, chemical warfare agents or biologic warfare agents, or unexploded ordnance as referenced in Section 4.4 of the **MOA**.

P. all forms of radioactive contamination.

Q. any Substance or Condition, as defined in the **MOA**, derived from ordnance, ammunition, or skeet located in, on, or under the soil, waters, fish or wildlife of the San Francisco Bay or the Pacific Ocean at any point bayward or seaward of the Presidio's Mean Lower Low Water (MLLW) elevation line at zero (0.00) feet, equal to the National Geodetic Vertical Datum of 1929 (NGVD29) at minus two point eight four (-2.84) feet.

## V. LIMIT OF LIABILITY AND SELF INSURED RETENTION

A. The Company's total liability for all **Losses** from **Claims** first made by an **Insured** and reported in writing to the Company by the **Named Insured** during the **Policy Period** shall not exceed or reinstate the limit of liability shown in the Declarations as applicable to the "Total Cumulative Losses."

Subject to the foregoing, this Policy shall pay covered **Loss** in excess of the **Cumulative Losses Self Insured Retention** amount, up to but not exceeding the Limit of Liability for Cumulative Loss and the Limit of Liability for Total Cumulative Loss set forth in Item 3 of the Declarations subject to the terms and conditions of the Self Insured Retention Endorsement endorsed to this Policy. The **Named Insured** is responsible for the payment of the entire **Cumulative Losses Self Insured Retention** amount prior to the limit of liability applying to the **Loss**.

B. Regardless of the number of **Claims**, claimants, or **Insureds**, the total liability of the Company for **Claims**

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means – graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

during one or more **Policy Periods** arising out of the same, interrelated, associated, repeated or continuous **Loss(es)** shall be considered a single **Loss** subject to the Limit of Liability for Cumulative Loss set forth in Item 3 of the Declarations of the Policy in effect when the first **Claim** was made and reported to the Company during the **Policy Period** in which the initial **Claim** was first reported to the Company.

C. In the event that the **Named Insured** fails to receive funding from the United States Department of Defense, Department of the Army as agreed in the **MOA** in the amounts within the schedule set forth below, (i) the Limit of Liability for Cumulative Loss and the Limit of Liability for Total Cumulative Loss set forth in Item 3 of the Declarations will immediately be reduced to the dollar amount equal to the dollar amount of funding which the **Named Insured** has received since the inception of the Policy and held in an account or accounts dedicated to completion of the **Scope of Work**, (ii) the **Scope of Work** will be immediately modified and reduced to a subset of activities, called the **Reduced Funding Scope of Work** and the term **Reduced Funding Scope of Work** will immediately replace the term **Scope of Work** throughout the policy and (iii) the **Cumulative Losses Self Insured Retention** for the Cumulative Loss Period and the **Total Cumulative Losses Self Insured Retention** will be immediately reduced to the dollar amount equal to the dollar amount of funding which the **Named Insured** has received since the inception of the Policy and held in an account or accounts dedicated to completion of the **Scope of Work**.

**Schedule of Funding Payments**

| **Date** | **Dollar Amount** |
|---|---|
| Within 90 days of execution of the **MOA**, but no later than 90 days from Policy inception | $25,000,000.00 |
| Prior to 5/24/2000 | $25,000,000.00 |
| Prior to 5/24/2001 | $25,000,000.00 |
| Prior to 5/24/2002 | $25,000,000.00 |

D. In the event the **Named Insured** fails to receive funding from the United States Department of Defense, Department of the Army, as agreed in the **MOA** in the amounts within the schedule set forth in V.(C)., above, and the **Named Insured** subsequently receives funding in the amounts set forth in the schedule in V.(C), above, but no later than one year from the corresponding date in the schedule in section V.(C), above, and the **Named Insured** holds the funds in an account or accounts dedicated to the completion of the **Scope of Work**, then (i) the Total Cumulative Loss Limit of Liability and Cumulative Loss Limit of Liability will be immediately reinstated to the level provided at the inception of this Policy (ii) the **Scope of Work** will be reinstated and replace the **Reduced Funding Scope of Work** term throughout the Policy (iii) the **Cumulative Losses Self Insured Retention** for the Cumulative Loss Period will be immediately increased to the dollar amount of funding which the **Named Insured** has received since the inception of the Policy and held in an account or accounts dedicated to completion of the **Scope of Work,** and (iv) and the **Total Cumulative Losses Self Insured Retention** will be immediately reinstated to the level provided at the inception of this Policy; provided that the provisions of V.(C), will continue to apply to any subsequent funding and Cumulative Loss Period; and the **Scope of Work**, Cumulative Losses Limit of Liability, Total Cumulative Losses Limit of Liability, **Cumulative Losses Self Insured Retention, and Total Cumulative Losses Self Insured Retention** will continue to be subject to adjustment in accordance with Section V.(C), above, and this Section V.(D). In the event the **Named Insured** fails to receive funding from the United States Department of Defense, Department

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

of the Army, as agreed in the **MOA** in the amounts within the schedule set forth in V.(C) and the **Named Insured** subsequently receives funding in the amounts set forth in the schedule in V.(C) more than one year from the corresponding date in the schedule in V.(C) and the **Named Insured** holds the funds in an account or accounts dedicated to the completion of the **Scope of Work**, then the Company shall have the right, at its sole discretion, but not the obligation, to (i) reinstate the Total Cumulative Loss Limit of Liability and Cumulative Loss Limit of Liability to the level provided at the inception of this Policy, (ii) replace the term **Reduced Funding Scope of Work** throughout the Policy with the term **Scope of Work**, (iii) increase the **Cumulative Losses Self Insured Retention** for the Cumulative Loss Period to the dollar amount of funding which the **Named Insured** has received since the inception of the Policy and held in an account or accounts dedicated to completion of the **Scope of Work**, and (iv) reinstate the **Total Cumulative Losses Self Insured Retention** to the level provided at the inception of this Policy; provided that the provisions of V.(C), above, will continue to apply to any subsequent funding and Cumulative Loss Period; and the Scope of Work, Cumulative Losses Limit of Liability, Total Cumulative Losses Limit of Liability, **Cumulative Losses Self Insured Retention**, and **Total Cumulative Losses Self Insured Retention** will continue to be subject to adjustment in accordance with Section V.(C), above, and this Section V.(D).

## VI. CLAIM PROVISIONS

### A. NOTICE OF CLAIM

In the event of a **Claim**, the **Insured** must give written or oral notice to the Company as soon as practicable containing particulars sufficient to identify an **Insured** and reasonably obtainable information with respect to:

1. the time, place, **Insured Project**, and circumstances of the **Claim** including how and when the **Insured** first became aware of the **Claim**;
2. any and all investigative or engineering reports, data or information about the **Loss**; and
3. any and all other relevant information about the **Claim** and/or **Loss**.

If the **Insured** provides notice of a **Claim** as specified above, the Company will, to the extent practicable, adjust any **Claim(s)** made within the **Policy Period** in a timely manner to prevent delays or interruptions to the **Insured Project**.

### B. NOTICE OF POTENTIAL CLAIM

If during the **Policy Period** the **Insured** discovers that costs have exceeded eighty-five (85) percent of the **Cumulative Losses Self Insured Retention** and such costs may reasonably be expected to give rise to a **Claim** under the Policy, the **Insured** shall provide written notice to the Company as soon as practicable during the **Policy Period** containing particulars sufficient to identify an **Insured** and reasonably obtainable information with respect to:

1. the time, place, **Insured Project**, and circumstances of the discovery including how and when the **Insured** first became aware of the discovery;
2. any and all investigative or engineering reports, data or information about the anticipated **Loss**; and
3. any and all other relevant information about the anticipated **Loss**.

If the **Insured** provides notice of a potential **Claim** as specified above, the Company will, to the extent practicable, attempt to adjust any actual **Claim(s)** in a timely manner that subsequently arise within the **Policy Period** to prevent delays or interruptions to the **Insured**

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial Information exempt from public disclosure under the Freedom of Information Act*

Project.

C. NOTICE TO THE COMPANY

All Claim(s) and potential Claim(s) shall be reported to:

> Zurich U.S.
> Environmental Claims Unit
> 1400 American Lane
> Schaumburg, Illinois 60196
> Attn: Managing Accounts Specialist
> Environmental Specialties
> Telephone: (847) 605-6809
> Facsimile: (847) 413-7811

or any other address as substituted by the Company by endorsement onto the Policy.

In the event of oral notice, the Insured agrees to furnish a written report to the Company as soon as practicable.

D. VOLUNTARY PAYMENTS

When the Insured discovers that costs have exceeded eighty-five (85) percent of the Cumulative Losses Self Insured Retention, the Insured shall notify the Company of anticipated costs, charges, and expenses and shall provide the Company reasonable opportunity for participation and consultation with regard to Losses.

No costs, charges or expenses shall be incurred above 100% of the Cumulative Losses Self Insured Retention without the Company's written consent which consent shall not be unreasonably withheld or denied.

Notwithstanding the foregoing, an Insured may take such Emergency Action(s) as reasonably necessary to prevent or mitigate further Loss(es) provided an Insured provides notice to the Company within ninety-six (96) hours after such action begins.

VII. CONDITIONS

A. INSPECTION AND AUDIT - The Company shall be permitted but not obligated to inspect, sample and monitor on a continuing basis an Insured's property or operations, upon providing reasonable advance notice with consideration for the timing of such notice and any site access requirements. Neither the Company's right to make inspections, sample and monitor nor the actual undertaking therefore nor any report thereon shall constitute an undertaking by the Company, on the behalf of an Insured or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation.

The Named Insured shall provide the Company with periodic progress reports, in a format as agreed to and endorsed onto the Policy, which state the status of the Insured Project versus the Scope of Work and remediation schedule, whether the project is on budget, and a description of any materials or areas requiring remediation not anticipated in the endorsed Scope of Work. If additional work not anticipated in the Scope of Work is required by any regulatory agency, other than the Department of Interior or the Department of Defense, Department of Army, or is required pursuant to applicable federal, state, or local statutes and regulations, orders or ordinances, the Named Insured must provide the Company a summary of the additional work required and the estimated additional cost of the additional work within 90 days of the applicable order requiring the additional work, or within 90 days of the date on which the Named Insured receives notice or otherwise becomes aware that additional work will be required, whichever comes first.

B. CANCELLATION - This Policy may be canceled by the Named Insured by surrender thereof to the

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. Except as provided under Section II and Section IV of the Scope of Work Endorsement, the policy premium is fully earned on the effective date of the Policy, therefore, cancellation by the **Named Insured** will not result in a return premium.

This Policy may be canceled by the Company for non-payment of premium by providing to the **Insured(s)** at the addresses shown in this Policy, written notice stating when not less than fifteen (15) days thereafter such cancellation shall be effective. This Policy may be canceled by the Company immediately if the Company discovers material misrepresentation or fraud by an **Insured**. If it is finally determined by a court of competent jurisdiction that the Company has canceled the Policy in error, the Policy will be reinstated and the coverage considered to have been continuous from the date of cancellation; provided that the Company shall not be liable for any **Loss(es)** or indemnification costs incurred and or paid by or on behalf of the **Insured** in excess of such expenses or indemnities that the Company would have paid under the terms and conditions of the Policy. In the event of cancellation by the Company, any return premium due will be determined by the Company.

Immediately upon cancellation of the Policy, either by the **Named Insured** or the Company, the Company is released from all liability or obligations under the Policy, including any liability or obligations from **Claims** previously reported or pending under the Policy.

Notice of pending cancellation will be provided by facsimile, telephone and certified mailing to:

**The Presidio Trust**
**Attn: Executive Director**
**34 Graham Street**
**P.O. Box 29052**
**San Francisco, CA 94129-0052**
**Telephone: (415) 561-5300**
**Facsimile: (415) 561-5315**

**and**

**General Superintendent**
**Golden Gate National Recreation Area**
**Building 201, Fort Mason**
**San Francisco CA 94123**
**Telephone: (415) 561-4620**
**Facsimile: (415) 561-4610**

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such notice either by the **Named Insured** or by the Company shall be the equivalent of mailing. The Company shall obtain confirmed receipt by the **Insured** of delivery of the notice of cancellation.

C. COVERAGE TERMINATION OTHER THAN BY CANCELLATION - Coverage shall terminate at the earliest of the following times:

1. the **Policy Period** expiration as shown in Item 2 of the Declarations;

2. ninety (90) days after the Company becomes aware that the **Scope of Work** for the **Insured Project** was never initiated; or

3. ninety (90) days after the Company becomes aware that the **Insured Project** has been abandoned.

The **Insured Project** is considered to have initiated when the activities outlined in the Scope of Work Endorsement have commenced. The **Insured Project** is considered never initiated when the activities outlined in the Scope of Work Endorsement have not

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

commenced and **Named Insured** has no plans for commencing them. The **Insured Project** is considered to have been abandoned when the schedule of activities outlined in the Scope of Work Endorsement cease with no plans for continuing the work. The Company will provide notice in writing to the **Named Insured** at the time it becomes aware that the **Insured Project** has not been initiated or has been abandoned.

Coverage shall also terminate for a portion of the **Insured Project** upon receipt of the Certificate of Completion for that portion of the **Insured Project** and endorsement of the known conditions addressed by that portion of the **Insured Project** by the Company onto Real Estate Environmental Liability coverage subject to consent of the Company, which consent shall not be unreasonably withheld.

Immediately upon termination of the Policy, either by the **Named Insured** or the Company, the Company is released from all liability or obligations under the Policy, including any liability or obligations from **Claims** previously reported or pending under the Policy.

D. DECLARATIONS - By acceptance of this Policy, the **Named Insured** agrees that the statements in the Declarations and Application are their agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the **Named Insured** and the Company or any of its agents relating to this insurance.

E. ASSIGNMENT - Assignment of interest under this Policy shall not bind the Company until its consent is endorsed thereon, which consent shall not be unreasonably withheld, subject to:

1. Ability of the assignee to fund the **Insured Project**.

2. Demonstration by the assignee of competency to complete the **Insured Project**.

F. SUBROGATION - In the event of any payment under this Policy and to the extent permitted by law, the Company shall be subrogated to all an **Insured**'s rights of recovery thereof against any person or organization. An **Insured** shall execute and deliver instruments and papers and do whatever else is reasonably necessary to secure such rights. The **Insured** shall do nothing to prejudice such rights.

Any recovery obtained through subrogation or other recovery efforts, after expenses incurred in such subrogation are deducted by the party bearing the expense, shall be applied proportionally to the **Named Insured** and the Company in accordance with actual payments made for **Loss**.

G. CHANGES - Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this Policy or stop the Company from asserting any right under the terms of this Policy. The terms of this Policy shall not be waived or changed except by endorsement issued to form a part of this Policy.

H. SOLE AGENT - The **Named Insured** shall act on behalf of all **Insureds** for all purposes, including but not limited to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, complying with all applicable **Claims** provisions, and giving notice of cancellation or non-renewal to the Company.

I. OTHER INSURANCE - The insurance provided under this Policy is primary insurance, except this insurance shall be excess over any financial assurance instrument or surety bond applicable to the **Loss** covered under this Policy.

When this insurance is excess over financial assurance

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

instruments or surety bonds, the Company shall be obligated to pay only its share of the amount of **Loss**, if any, that exceeds the total amount that all such financial assurance instruments or surety bonds would pay for the **Loss** in the absence of this insurance.

J. BANKRUPTCY - Bankruptcy or insolvency of an **Insured** will not relieve the Company of its obligations under this Policy.

K. SEPARATION OF INSUREDS - Except with respect to the Limit of Liability, **Cumulative Losses Self Insured Retention, Total Cumulative Losses Self Insured Retention** and any rights and duties specifically assigned to the **Named Insured**, this insurance applies separately to each **Insured**.

L. Any **Loss(es)** paid by the Company which is within the **Total Cumulative Losses Self Insured Retention** is subject to recoupment pursuant to Section I of the SIR Endorsement to this Policy), appended hereto and made part of this Policy.

M. No third party beneficiaries are created as a result of this policy. This policy creates no rights by or behalf of any third parties. The Company has no obligation under this Policy to any third party whatsoever and specifically has no obligation to make payment to anyone except the **Insured**.

F:\USERS\B09MXMS\QUOTES\PRESIDIO\POLICIES\ISSUED\RSL\RSL0522 .DOC

06/22/99 9:15 AM

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems -- without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

# Important Notice

ZURICH

## Service of Suit

In the event of failure of the Company to pay any amount to be due under this policy, at the Insured's request, the Company will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is agreed that service of process in such suit may be made upon the Company's General Counsel, Law Department, Zurich American Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and the Company will abide by the final decision of such court or of any appellate court in the event of an appeal of any suit initiated against the Company under this policy.

## In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, the Company agrees to provide insurance as stated in this policy.

In Witness Whereof, the Company has executed this policy, and, where required, have had it countersigned by a duly authorized representative of the Company.

**President**
**Zurich Insurance Company**

**Corporate Secretary**
**Zurich Insurance Company**

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means -- graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems – without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

**Endorsement # 1**

# Nuclear Energy Liability Exclusion Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss**

In consideration of the payment of the premium and the undertaking to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and the reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions, conditions of the 'olicy that:

Section IV., EXCLUSIONS is amended to include the following exclusion:

**R.** the **Hazardous Properties** of **Nuclear Material**, **Spent Fuel**, or **Waste**

As used in this endorsement:

"**Hazardous Properties**" include radioactive, toxic or explosive properties resulting from the radioactive, toxic or explosive properties of **Waste**, **Spent Fuel Source Material**, **Special Nuclear Material**, or **By-Product Material**;

"**Nuclear Material**" means **Source Material**, **Special Nuclear Material** or **By-Product Material**;

"**Source Material**," "**Special Nuclear Material**," and "**By-Product Material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**Spent Fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**;

"**Waste**" means any waste material (l) containing **By-Product Material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **Source Material** content, and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included under the first two paragraphs of the definition of **Nuclear Facility**.

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

"**Nuclear Facility**" means:

(a) Any **Nuclear Reactor**;

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **Spent Fuel**, or (3) handling, processing or packaging **Waste**;

(c) Any equipment or device used for the processing, fabricating or alloying of **Special Nuclear Material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**Nuclear Reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

All other terms and conditions of the Policy shall apply and remain unchanged.

Signed by: William M Sgrul [signature] July 6, 1999

Authorized Representative Date

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 2

# Scope of Work Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

**In consideration of the payment of the premium and the undertaking of the Insured to pay the Cumulative Losses lf Insured Retention and Total Cumulative Losses Self Insured Retention as described herein, in reliance upon .ae statements in the Application made a part hereof, and subject to the Limits of Liability of this insurance as set forth in the Declarations, and the exclusions, conditions and other terms of this Policy, the Company agrees with the Named Insured as follows:**

## I. Scope of Work

This Policy shall provide coverage for the **Insured Projects** listed in Item 5 of the Declarations according to the **Scope of Work** set forth in the attached Table 1. The activities identified in Table 1 represent the remedial approach planned by the Presidio Trust that may be necessary based on available data and current understanding of conditions existing at each site. In addition to those activities listed in Table 1, the **Scope of Work** of the **Insured Project** includes but is not limited to all permitting, sampling, construction, restoration, reporting, and other tasks and items associated with and necessary to implement the activity as listed in Table 1 for each site required by any regulatory agency, other than the United States Department of the Interior or the United States Department of Defense, Department of the Army, or required pursuant to applicable federal, state or local statutes, regulations or ordinances. In performing any such task associated with activities listed in Table 1, the **Named Insured** shall seek to minimize costs wherever practicable with the overall goal of achieving project completion through regulatory closure of each site. Table 2 represents the anticipated remediation schedule for the **Insured Project** and is subject to public review and regulatory approval.

## II. Reduced Funding Scope of Work

In the event that the **Named Insured** fails to receive funding from the United States Department of Defense, Department of the Army as agreed in the **MOA** in the amounts and within the schedule set forth in Section V.C. of the Policy, the **Scope of Work** will be immediately modified and reduced to the **Reduced Funding Scope of Work**. The **Reduced Funding Scope of Work** means the activities and schedule for a subset of sites, listed in Table 1 and Table 2,

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

respectively, required to perform that portion of the **Insured Project** which can reasonably be completed for costs ~~e~~stimated to be within the amount of funding received under the previous sentence by the **Named Insured** since the ~~inc~~eption of the Policy and held in an account or accounts dedicated to the completion of the **Scope of Work**. The **Named Insured** acknowledges and accepts that in the event that the **Named Insured** fails to receive funding from the United States Department of Defense, Department of Army as agreed in the **MOA** in the amounts and within the schedule set forth in Section V.C of the Policy, that it will likely not be possible to achieve regulatory release for all sites at the Presidio of San Francisco, and that in such event of reduced funding that the Policy will only provide coverage for those activities at the subset of sites determined to be the **Reduced Funding Scope of Work** and will not operate to provide coverage for sites not listed in Table 1 or any subsequent replacements thereto. The **Reduced Funding Scope of Work** shall be determined based solely on and in strict adherence to the protocol set forth in Sections II.A, II.B. and III. below.

A. <u>The **Named Insured's** Proposal for **Reduced Funding Scope of Work:**</u> The **Named Insured** shall select, as their proposed **Reduced Funding Scope of Work** a list of activities at a subset of sites which consist of a subset of the activities set forth in Table 1 of this endorsement, below, which:

(1) can be accomplished at or below the reduced funding level considering the estimates set forth in the documents listed in III. B.;

(2) are activities, which include all associated permitting, sampling, construction, restoration, reporting, and other tasks and items associated with and necessary to implement the activity, for which a specific cost estimate is set forth in the documents listed in III. B. or for which a cost estimate could fairly be inferred from the documents listed in III. B. (partial task selection is strictly prohibited); and

(3) include the entire list of activities, which includes all associated permitting, sampling, construction, restoration, reporting, and other tasks and items associated with and necessary to implement the activity, and schedules and milestones required to accomplish the proposed **Reduced Funding Scope of Work** (selecting activities which implicitly require prior activities with defined costs and omitting same from the listed activities is strictly prohibited as it would result in an underestimate of costs); and

the Named Insured shall provide its proposed **Reduced Funding Scope of Work** to the Company in writing no later than thirty (30) days after the last date of the Cumulative Loss Period for which funding was last received as set forth in the schedule in Section V.C. of the Policy.

B. The Company will review the **Named Insured's** proposed **Reduced Funding Scope of Work** and provide to the **Named Insured** written notice of acceptance or rejection, and the basis of such rejection, of the **Reduced Funding Scope of Work** no later than thirty (30) days after receipt of the proposal from the **Named Insured.** If the **Named Insured's** proposed **Reduced Funding Scope of Work** is acceptable to the Company it shall be endorsed onto the Policy. If the Company rejects the proposed **Reduced Funding Scope of Work**, then the **Named Insured** and the Company agree to cooperate in good faith and use best efforts to resolve the dispute to determine a mutually agreeable **Reduced Funding Scope of Work** within thirty (30) days. In the event of failure to resolve such dispute the **Named Insured** and the Company agree to come to a final determination of the **Reduced Funding Scope of Work** using the Dispute Resolution Protocol set forth in Section III below.

C. When the **Reduced Funding Scope of Work** is determined pursuant to this endorsement, the Company shall recalculate the premium in accordance with the Company's standard, proprietary pricing model for the Remediation Stop Loss Policy. If the revised premium is less than the amount paid to date by the **Named Insured**, then the Company shall return any excess premium payments made by the **Named Insured** to the **Named Insured** within 90 days of the determination. If the revised premium is more than the amount paid to date by the **Named Insured**, then

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

the **Named Insured** shall remit payment to the Company within 90 days of the determination.

**III. Dispute Resolution Protocol**

A. Selection of Arbitrator: Within thirty (30) days after the failure of the parties to determine a mutually agreeable **Reduced Funding Scope of Work**, the **Named Insured** and the Company agree to submit the matter for binding arbitration, if binding arbitration is allowed under the Alternative Dispute Resolution Action (5 U.S.C. 571 et. seq.) using an Arbitrator mutually agreed upon between the Company and the **Named Insured**. The Arbitrator shall have the following minimum qualifications:

(1) Professional Engineer (PE) registered and licensed within the State of California with experience in environmental remediation cost engineering; and

(2) Juris Doctor (JD) admitted to practice law within the State of California and the federal courts

If within the thirty day window set forth above, the Company and the **Named Insured** are unable to agree upon the selection of an Arbitrator, then each party will select an Arbitrator within 5 days and the selected Arbitrators will select an Umpire Arbitrator within 10 days; and the arbitration shall proceed under the protocol set forth in this endorsement and the American Arbitration Association Commercial Arbitration Rules ("AAA rules") . Where the AAA rules and the protocols of this endorsement conflict, the protocols set forth in this endorsement shall control. The Arbitrator or Umpire Arbitrator will then determine, within fifteen (15) days, a list of activities, which can reasonably be completed for costs estimated based solely on the protocols set forth in this endorsement to be no more than the amount of the reduced funding received by the Trust under the MOA and dedicated to complete the **Scope of Work** as of the time the arbitration commenced, to comprise the **Reduced Funding Scope of Work** to apply in accordance with this Policy.

The cost of any arbitrator shall be shared equally by the **Named Insured** and the Company. The costs of any designated representative of either the Company or the **Named Insured** shall be the obligation of the respective party retaining such representative.

**B. Documents Which Shall Be Reviewed and Considered by the Arbitrator:** The determination of the **Reduced Funding Scope of Work** by the Arbitrator or Umpire Arbitrator shall be limited to and based solely upon review of the following documents, materials and information:

(1) The **Named Insured's** proposed **Reduced Funding Scope of Work**;

(2) The Company's basis for rejection of the **Named Insured's** proposed **Reduced Funding Scope of Work** as communicated the **Named Insured** in writing pursuant to this endorsement;

(3) the report prepared by Erler & Kalinowski, Inc. titled "Alternate Remedial Actions for the Presidio Main Installation Sites and Public Health Service Hospital Sites", dated May 1998 (EKI Report);

(4) the memorandum prepared by Erler & Kalinowski, Inc. titled "Summary of Cash Flow Analysis for Environmental Restoration, Presidio" dated March 10, 1999 (EKI Memorandum);

(5) the Trust Act;

(6) the Final General Management Plan Amendment, Presidio of San Francisco, Golden Gate National Recreation Area, California (July 1994);

(7) other superseding final remedial investigation or decision document(s) approved by all appropriate regulatory authorities if accompanied by cost estimates for the activities described by the document(s), provided that a) the

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

documents have previously been submitted to the Company in full compliance with the provision of Section VII. A of the Policy, and b) the Company has provided written concurrence to the **Named Insured** that the cost estimates are reasonable and necessary to complete the activities described by the document(s). Failure of the Company to provide written concurrence or non-concurrence within 90 days of the receipt of any cost estimates shall be deemed to mean that all cost estimates as presented in such document(s) are reasonable and necessary; and

(8) other documents, materials or information only if such documents, materials or information are mutually acceptable to both the Company and the **Named Insured.**

C. **Process for Determination of Costs**

(1) using the documents listed in B, above, the Arbitrator shall identify each activity(ies) at the subset of sites included in **the Reduced Funding Scope of Work** proposed by the **Named Insured** for inclusion within the **Reduced Funding Scope of Work,** and the Arbitrator shall identify the associated cost estimate. The Arbitrator shall then sum the estimated costs for the selected activities and tasks and compare this sum to the reduced funding level;

(2) the Arbitrator will then review the activity(ies) selected and verify that the selection strictly complies with all of the requirements set forth in Section II. A., above.

(3) If the activity(ies) selected comply with Section II A., above which shall include any activities previously performed under the **Scope of Work,** and the sum of costs determined in Section III. C. 1, above which must include actual expenditures to the extent deemed allowable pursuant to Section VII.A of the Policy and Section 3 of the Self Insured Retention Endorsement to this Policy is equal to or less than the funding received by the **Named Insured** since the inception of the policy and held in an account or accounts dedicated to the **Scope of Work,** then the list of activity(ies) selected shall be deemed the **Reduced Funding Scope of Work.** In addition to those activities listed in the **Reduced Funding Scope of Work** established under this section , the **Reduced Funding Scope of Work** includes but is not limited to all permitting, sampling, construction, restoration, reporting, and other tasks and items associated with and necessary to implement the activity at the subset of sites as listed in **Reduced Funding Scope of Work** required by any regulatory agency, other than the Department of Interior or the Department of Army, or required pursuant to applicable federal, state or local statutes, regulations or ordinances. In performing any such activities listed in the **Reduced Funding Scope of Work,** the **Named Insured** shall seek to minimize costs wherever practicable with the overall goal of achieving project completion through regulatory closure of each site.

(4) If the activity(ies) do not comply with Section II. A, above or the estimated costs for the selected activity(ies) , which shall include the actual expenditures to the extent deemed allowable pursuant to Section VII.A of the Policy and Section 3 of the Self Insured Retention Endorsement to this Policy of any activities previously performed under the **Scope of Work,** exceed the funding received by the **Named Insured** since the inception of the policy and held in an account or accounts dedicated to the **Scope of Work,** then the Arbitrator will determine the **Reduced Funding Scope of Work** in accordance with the restrictions set forth in Section II. A., above. Such determination shall be binding and final and not subject to review in any forum. In addition to those activities listed in **the Reduced Funding Scope of Work** established under this section , the **Reduced Funding Scope of Work** includes but is not limited to all permitting, sampling, construction, restoration, reporting, and other tasks and items associated with and necessary to implement the activity at the subset of sites as listed in **Reduced Funding Scope of Work** required by any regulatory agency, other than the Department of Interior or the Department of Army, or required pursuant to applicable federal, state or local statutes, regulations or ordinances. In performing any such activities listed in the **Reduced Funding Scope of Work,** the **Named Insured** shall seek to minimize costs wherever practicable.

3. Arbitrator's Report

ie Arbitrator's report's must contain concise determinations, lacking in ambiguity, as to the costs incurred and estimated to be incurred in implementing the activities requested by the **Named Insured** to be included in the **Reduced Funding**

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

**Scope of Work**, the basis for the determination of the **Reduced Funding Scope of Work**; and the activities or tasks that comprise the **Reduced Funding Scope of Work**.

The decision of the Arbitrator shall be final and binding. Judgment may be entered on the award rendered by the Arbitrator by any court of competent jurisdiction.

All other terms and conditions of the policy shall apply and remain unchanged.

**IV. Alternate Dispute Resolution and Policy Cancellation Procedures**

Notwithstanding any other provision of this Policy or federal law, in the event that for any reason the **Insured(s)** are unable or unwilling to enter into binding arbitration following the procedures provided in Section III., above, the following alternate procedures for dispute resolution will apply to the determination of the **Reduced Funding Scope of Work**:

A. The Parties will negotiate in good faith for a period not to exceed 60 days with respect to a mutually agreeable **Reduced Funding Scope of Work**.

B. In the event the Parties are unable to reach an agreement within those sixty (60) days on a **Reduced Funding Scope of Work**, in its sole and unreviewable discretion, the Company may within five (5) business days cancel this policy and terminate all coverage thereunder; and the **Insured** agrees that it will remain liable for any unpaid premium amounts according to the following schedule:

| Aggregate Amount of Premium Due | Date of Cancellation |
|---|---|
| $1,767,813.00 | From Policy Inception through May 24, 2000. |
| $3,165,625.00 | After May 24, 2000 through May 24, 2001. |
| $4,563,438.00 | After May 24, 2001 through May 24, 2002. |
| $5,961,250.00 | After May 24, 2002. |

C. Immediately upon cancellation of the Policy pursuant to this provision, the Company is released from all liability or obligations under the Policy, including any liability or obligations from **Claims** previously reported or pending under the Policy.

Signed by: [signature] July 6, 1999

Authorized Representative Date

\\zari_uszde01\sys\users\b09mxm5\quotes\presidio\policies\issued\rsl\sow630.doc

07/01/99 5:49 PM

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

SCOPE OF WORK ENDORSEMENT
REMEDIATION STOP LOSS POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| **Main Installation and Public Health Service Hospital (PHSH) Sites** | |
| *Regulatory Agency Approval* | |
| Feasibility Study/Remedial Action Plan (FS/RAP) | Prepare and obtain regulatory agency approval of FS/RAP for Main Installation sites. |
| *NFA Sites* | |
| Building 302 Area | Obtain NFA certification from regulatory agencies through FS/RAP. (a) |
| Building 611 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 662 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 680 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1057 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1153 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1369 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1388 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1450 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Building 1451 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Lobos Creek | Obtain NFA certification from regulatory agencies through FS/RAP. |
| Sewer Lift Station #2 Area | Obtain NFA certification from regulatory agencies through FS/RAP. |
| *Remedial Action Sites* | |
| Baker Beach Disturbed Area 1 | Excavate waste fill and impacted subsoil, dispose of such materials as a Class III, non-hazardous waste at a permitted, off-site facility, and monitor seep surface water. |
| Baker Beach Disturbed Area 1A | Excavate waste fill and impacted subsoil, and dispose of such materials as a Class III, non hazardous waste at a permitted, off-site facility. |
| Baker Beach Disturbed Area 2 | Excavate waste fill and impacted subsoil, and dispose of such materials as a Class III, non hazardous waste at a permitted, off-site facility. |
| Baker Beach Disturbed Area 3 | Characterize upper portion of waste fill. Install low-permeability cap over lower portion of waste fill. Perform on-going management and maintenance of cap, and monitor seep surface water. |
| Baker Beach Disturbed Area 4 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Howe-Wagner | Evaluate source of groundwater contamination. Excavate waste fill and impacted subsoil, dispose of such materials as a Class II, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Fill Site 1 | Excavate waste fill and impacted subsoil, dispose of such materials as a Class III, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Fill Site 5 | Excavate waste fill and impacted subsoil, dispose of such materials as a Class III, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Fill Site 6 | Install soil cover, asphalt, concrete, or equivalent over waste fill. Perform on-going maintenance of cover and monitor groundwater. |
| Graded Area 9 | Install soil cover, asphalt, concrete, or equivalent over waste fill. Perform on-going maintenance of cover and monitor groundwater. |
| Landfill 2 | Excavate waste fill and impacted subsoil, dispose of such materials as a Class III, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Landfill 4 | Excavate waste fill and impacted subsoil, dispose of such materials as a Class III, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Landfill 8 | Install soil cover, asphalt, concrete, or equivalent over waste fill. Perform on-going maintenance of cover and monitor groundwater. |
| Landfill 10 | Control surface water drainage, buttress landfill toe, and monitor groundwater. |
| Landfill E | Install low-permeability cap over waste fill. Extract groundwater, monitor groundwater and landfill gas, and perform on-going maintenance of cap. |

**SCOPE OF WORK ENDORSEMENT**
**REMEDIATION STOP LOSS POLICY**
**TABLE 1**
**SCOPE OF WORK FOR THE INSURED PROJECT**

| Site | Proposed Activity |
|---|---|
| *Remedial Action Sites (cont'd)* | |
| Building 215 Area | Characterize soil near former tanks, excavate impacted soil, dispose of such soil at as a Class II, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Former Building 609 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 633 Firing Range Area | Remove sand and concrete, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 669 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 1167 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 1244 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 1245 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 1351 Area | Characterize soil, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Building 1750 Area | Characterize soil and obtain NFA concurrence from regulatory agencies. |
| Building 1827 Area | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste. |
| El Polin Spring Area | Seep surface water monitoring. |
| Mountain Lake Area | Monitor surface water and perform biological verification sampling. |
| Nike Facility Area | Characterize soil and sediment. Excavate impacted soil and sediment, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. Monitor groundwater. |
| Nike Swale | Collect sediment samples and monitor seep surface water. |
| Sewer Lift Station #1 Area | Excavate impacted soil, dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility, and investigate groundwater. |
| Transfer Station Area | Characterize soil, excavate impacted soil, and dispose of half of such soil as a Class II waste and half as a non-RCRA hazardous waste at permitted, off-site facilities. Remove rubbish and dispose of such rubbish as a Class III waste at a permitted, off- |
| **Petroleum Program** | |
| *Regulatory Agency Approval* | |
| RWQCB Order | Renegotiate Order with Regional Water Quality Control Board (RWQCB) and comply with order requirements. |
| *NFA Sites* | |
| Tank Site 6 | Obtain NFA certification from regulatory agencies. (b) |
| Tank Site 7 | Obtain NFA certification from regulatory agencies. |
| Tank Site 8 | Obtain NFA certification from regulatory agencies. |
| Tank Site 11 | Prepare NFA report. (c) |
| Tank Site 12 | Prepare NFA report. |
| Tank Site 13 | Obtain NFA certification from regulatory agencies. |
| Tank Site 15 | Obtain NFA certification from regulatory agencies. |
| Tank Site 16 | Prepare NFA report. |
| Tank Site 34 | Obtain NFA certification from regulatory agencies. |
| Tank Site 35.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 35.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 35.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 38.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 38.2 | Obtain NFA certification from regulatory agencies. |

# SCOPE OF WORK ENDORSEMENT
# REMEDIATION STOP LOSS POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *NFA Sites (cont'd)* | |
| Tank Site 38.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 39 | Obtain NFA certification from regulatory agencies. |
| Tank Site 40 | Obtain NFA certification from regulatory agencies. |
| Tank Site 41 | Obtain NFA certification from regulatory agencies. |
| Tank Site 58 | Obtain NFA certification from regulatory agencies. |
| Tank Site 59 | Obtain NFA certification from regulatory agencies. |
| Tank Site 64 | Prepare NFA report. |
| Tank Site 99 | Prepare NFA report. |
| Tank Site 100.2 | Prepare NFA report. |
| Tank Site 101.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 101.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 102.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 102.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 103.2 | Prepare NFA report. |
| Tank Site 103.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 103.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 104.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 104.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 105.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 105.2 | Prepare NFA report. |
| Tank Site 105.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 105.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 106 | Obtain NFA certification from regulatory agencies. |
| Tank Site 130 | Prepare NFA report. |
| Tank Site 210 | Obtain NFA certification from regulatory agencies. |
| Tank Site 220 | Obtain NFA certification from regulatory agencies. |
| Tank Site 227 | Obtain NFA certification from regulatory agencies. |
| Tank Site 250 | Obtain NFA certification from regulatory agencies. |
| Tank Site 268.1 | Prepare NFA report. |
| Tank Site 268.2 | Prepare NFA report. |
| Tank Site 300.1 | Prepare NFA report. |
| Tank Site 300.2 | Prepare NFA report. |
| Tank Site 314.1 | Prepare NFA report. |
| Tank Site 314.2 | Prepare NFA report. |
| Tank Site 325.1 | Prepare NFA report. |
| Tank Site 325.2 | Prepare NFA report. |
| Tank Site 326.1 | Prepare NFA report. |
| Tank Site 326.2 | Prepare NFA report. |
| Tank Site 327.1 | Prepare NFA report. |
| Tank Site 327.2 | Prepare NFA report. |
| Tank Site 328.1 | Prepare NFA report. |
| Tank Site 328.2 | Prepare NFA report. |
| Tank Site 329.1 | Prepare NFA report. |
| Tank Site 329.2 | Prepare NFA report. |
| Tank Site 330.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 330.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 331 | Obtain NFA certification from regulatory agencies. |
| Tank Site 337 | Obtain NFA certification from regulatory agencies. |
| Tank Site 338.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 510.1 | Prepare NFA report. |
| Tank Site 510.2 | Prepare NFA report. |

# SCOPE OF WORK ENDORSEMENT
# REMEDIATION STOP LOSS POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *NFA Sites (cont'd)* | |
| Tank Site 511.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 511.2 | Prepare NFA report. |
| Tank Site 512.2 | Prepare NFA report. |
| Tank Site 513.2 | Prepare NFA report. |
| Tank Site 514.2 | Prepare NFA report. |
| Tank Site 530 | Prepare NFA report. |
| Tank Site 531 | Prepare NFA report. |
| Tank Site 532 | Prepare NFA report. |
| Tank Site 533 | Prepare NFA report. |
| Tank Site 534 | Prepare NFA report. |
| Tank Site 535 | Prepare NFA report. |
| Tank Site 536 | Prepare NFA report. |
| Tank Site 540.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 540.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 541.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 541.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 542.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 542.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 543 | Obtain NFA certification from regulatory agencies. |
| Tank Site 544.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 544.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 545 | Obtain NFA certification from regulatory agencies. |
| Tank Site 546.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 546.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 547 | Obtain NFA certification from regulatory agencies. |
| Tank Site 548.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 548.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 549 | Obtain NFA certification from regulatory agencies. |
| Tank Site 550.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 550.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 551.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 551.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 645.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 650.1 | Prepare NFA report. |
| Tank Site 650.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 651 | Obtain NFA certification from regulatory agencies. |
| Tank Site 718.1 | Prepare NFA report. |
| Tank Site 718.2 | Prepare NFA report. |
| Tank Site 720.1 | Prepare NFA report. |
| Tank Site 720.2 | Prepare NFA report. |
| Tank Site 725/727 | Prepare NFA report. |
| Tank Site 728.1 | Prepare NFA report. |
| Tank Site 729.2 | Prepare NFA report. |
| Tank Site 730.1 | Prepare NFA report. |
| Tank Site 730.2 | Prepare NFA report. |
| Tank Site 732.2 | Prepare NFA report. |
| Tank Site 733.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 749/751 | Prepare NFA report. |
| Tank Site 752.1 | Prepare NFA report. |
| Tank Site 752.2 | Prepare NFA report. |
| Tank Site 753.1 | Prepare NFA report. |

# SCOPE OF WORK ENDORSEMENT
# REMEDIATION STOP LOSS POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *NFA Sites (cont'd)* | |
| Tank Site 753.2 | Prepare NFA report. |
| Tank Site 755.1 | Prepare NFA report. |
| Tank Site 758.2 | Prepare NFA report. |
| Tank Site 760.2 | Prepare NFA report. |
| Tank Site 920.3 | Prepare NFA report. |
| Tank Site 931 | Prepare NFA report. |
| Tank Site 934 | Obtain NFA certification from regulatory agencies. |
| Tank Site 952 | Prepare NFA report. |
| Tank Site 953 | Prepare NFA report. |
| Tank Site 954 | Prepare NFA report. |
| Tank Site 955 | Prepare NFA report. |
| Tank Site 956 | Prepare NFA report. |
| Tank Site 957 | Prepare NFA report. |
| Tank Site 958 | Prepare NFA report. |
| Tank Site 959 | Prepare NFA report. |
| Tank Site 960 | Prepare NFA report. |
| Tank Site 961 | Prepare NFA report. |
| Tank Site 962 | Prepare NFA report. |
| Tank Site 963 | Prepare NFA report. |
| Tank Site 964 | Prepare NFA report. |
| Tank Site 970 | Obtain NFA certification from regulatory agencies. |
| Tank Site 976 | Prepare NFA report. |
| Tank Site 990 | Prepare NFA report. |
| Tank Site 1029 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1060 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1064 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1100 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1110.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1110.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1168 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1185 | Prepare NFA report. |
| Tank Site 1201 | Prepare NFA report. |
| Tank Site 1202 | Prepare NFA report. |
| Tank Site 1203 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1204 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1205 | Prepare NFA report. |
| Tank Site 1206 | Prepare NFA report. |
| Tank Site 1207 | Prepare NFA report. |
| Tank Site 1208 | Prepare NFA report. |
| Tank Site 1214.1 | Prepare NFA report. |
| Tank Site 1216 | Prepare NFA report. |
| Tank Site 1216.1 | Prepare NFA report. |
| Tank Site 1217 | Prepare NFA report. |
| Tank Site 1217.1 | Prepare NFA report. |
| Tank Site 1218.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1226.1 | Prepare NFA report. |
| Tank Site 1226.2 | Prepare NFA report. |
| Tank Site 1228 | Prepare NFA report. |
| Tank Site 1233 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1244 | Prepare NFA report. |
| Tank Site 1261.1 | Prepare NFA report. |

# SCOPE OF WORK ENDORSEMENT
# REMEDIATION STOP LOSS POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *NFA Sites (cont'd)* | |
| Tank Site 1261.2 | Prepare NFA report. |
| Tank Site 1262.1 | Prepare NFA report. |
| Tank Site 1262.2 | Prepare NFA report. |
| Tank Site 1263.1 | Prepare NFA report. |
| Tank Site 1263.2 | Prepare NFA report. |
| Tank Site 1264 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1265.1 | Prepare NFA report. |
| Tank Site 1265.2 | Prepare NFA report. |
| Tank Site 1266.1 | Prepare NFA report. |
| Tank Site 1266.2 | Prepare NFA report. |
| Tank Site 1266.3 | Prepare NFA report. |
| Tank Site 1266.4 | Prepare NFA report. |
| Tank Site 1268.1 | Prepare NFA report. |
| Tank Site 1268.2 | Prepare NFA report. |
| Tank Site 1270.1 | Prepare NFA report. |
| Tank Site 1270.2 | Prepare NFA report. |
| Tank Site 1270.3 | Prepare NFA report. |
| Tank Site 1270.4 | Prepare NFA report. |
| Tank Site 1272.1 | Prepare NFA report. |
| Tank Site 1272.2 | Prepare NFA report. |
| Tank Site 1273.1 | Prepare NFA report. |
| Tank Site 1273.2 | Prepare NFA report. |
| Tank Site 1274.1 | Prepare NFA report. |
| Tank Site 1274.2 | Prepare NFA report. |
| Tank Site 1275.1 | Prepare NFA report. |
| Tank Site 1275.2 | Prepare NFA report. |
| Tank Site 1276.1 | Prepare NFA report. |
| Tank Site 1276.2 | Prepare NFA report. |
| Tank Site 1277.1 | Prepare NFA report. |
| Tank Site 1277.2 | Prepare NFA report. |
| Tank Site 1300.1 | Prepare NFA report. |
| Tank Site 1300.2 | Prepare NFA report. |
| Tank Site 1302 | Prepare NFA report. |
| Tank Site 1304.1 | Prepare NFA report. |
| Tank Site 1304.2 | Prepare NFA report. |
| Tank Site 1308.1 | Prepare NFA report. |
| Tank Site 1308.2 | Prepare NFA report. |
| Tank Site 1310.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1310.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1314 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1320 | Prepare NFA report. |
| Tank Site 1320.1 | Prepare NFA report. |
| Tank Site 1320.2 | Prepare NFA report. |
| Tank Site 1322.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1324.1 | Prepare NFA report. |
| Tank Site 1324.2 | Prepare NFA report. |
| Tank Site 1326.1 | Prepare NFA report. |
| Tank Site 1326.2 | Prepare NFA report. |
| Tank Site 1328.1 | Prepare NFA report. |
| Tank Site 1328.2 | Prepare NFA report. |
| Tank Site 1330 | Prepare NFA report. |

# SCOPE OF WORK ENDORSEMENT
# REMEDIATION STOP LOSS POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *NFA Sites (cont'd)* | |
| Tank Site 1334 | Prepare NFA report. |
| Tank Site 1339 | Prepare NFA report. |
| Tank Site 1359.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1359.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1399.1 | Prepare NFA report. |
| Tank Site 1399.2 | Prepare NFA report. |
| Tank Site 1399.6 | Prepare NFA report. |
| Tank Site 1648 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1750.2 | Prepare NFA report. |
| Tank Site 1794 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1801 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1802.1 | Prepare NFA report. |
| Tank Site 1802.3 | Prepare NFA report. |
| Tank Site 1802.4 | Prepare NFA report. |
| Tank Site 1806 | Prepare NFA report. |
| *Mini-Corrective Action Plan (Mini-CAP) Sites (d)* | |
| Tank Site 3 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 14 | Monitor groundwater. |
| Tank Site 51 | Monitor groundwater. |
| Tank Site 100.1 | Monitor groundwater. |
| Tank Site 101.1 | Monitor groundwater. |
| Tank Site 101.2 | Monitor groundwater. |
| Tank Site 102.1 | Monitor groundwater. |
| Tank Site 102.2 | Monitor groundwater. |
| Tank Site 103.1 | Monitor groundwater. |
| Tank Site 104.1 | Monitor groundwater. |
| Tank Site 104.2 | Monitor groundwater. |
| Tank Site 300.3 | Monitor groundwater. |
| Tank Site 332 | Monitor groundwater. |
| Tank Site 336 | Monitor groundwater. |
| Tank Site 338.1 | Monitor groundwater. |
| Tank Site 339 | Monitor groundwater. |
| Tank Site 340 | Monitor groundwater. |
| Tank Site 342 | Monitor groundwater. |
| Tank Site 343 | Monitor groundwater. |
| Tank Site 512.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 514.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 537 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 538 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 539 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 722.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 722.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |

SCOPE OF WORK ENDORSEMENT
REMEDIATION STOP LOSS POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Mini-CAP Sites (cont'd)* | |
| Tank Site 724.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 724.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 726.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 726.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 728.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 732.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 742.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 742.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 743.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 743.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 744.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 744.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 745.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 745.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 746.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 746.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 747.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 747.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 748.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 748.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 749.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 749.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 748/750 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 750.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 751.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |

# SCOPE OF WORK ENDORSEMENT
# REMEDIATION STOP LOSS POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Mini-CAP Sites (cont'd)* | |
| Tank Site 754.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 754.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 755.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 756.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 756.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 757.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 757.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 758.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 759.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 759.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 760.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 920.1 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 920.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 951 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1213 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1213.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1214.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1260 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1287 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1337 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1430 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1452 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1453 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1454 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1600 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |

# SCOPE OF WORK ENDORSEMENT
# REMEDIATION STOP LOSS POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Mini-CAP Sites (cont'd)* | |
| Tank Site 1601 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1625 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1647.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1647.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1660 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1774 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 1802.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| *Corrective Action Plan (CAP) Sites (f)* | |
| DEH Area RAP Sites | See DEH Area RAP Sites, DEH Area (groundwater) (Other Programs). |
| Tank Site 269.2 | See note (e). |
| Tank Site 269.3 | See note (e). |
| Tank Site 269.4 | See note (e). |
| Crissy Field RAP Sites | See Crissy Field RAP Sites, Building 937/979 Area (groundwater) (Other Programs). |
| Tank Site 979.4 | See note (e). |
| Tank Site 979.5 | See note (e). |
| Tank Site 979.6 | See note (e). |
| Building 207/231 Area | Excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility, perform enhanced bioremediation, and monitor groundwater. |
| Tank Site 207.1 | See note (e). |
| Tank Site 207.2 | See note (e). |
| Tank Site 207.3 | See note (e). |
| Tank Site 228.1 | See note (e). |
| Tank Site 228.2 | See note (e). |
| Tank Site 228.3 | See note (e). |
| Tank Site 231.2 | See note (e). |
| Tank Site 231.3 | See note (e). |
| Tank Site 231.4 | See note (e). |
| Tank Site 231.5 | See note (e). |
| Tank Site 231.6 | See note (e). |
| Tank Site 231.7 | See note (e). |
| Building 637 Area | Excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility, and monitor groundwater. |
| Tank Site 637.1 | See note (e). |
| Tank Site 637.2 | See note (e). |
| Tank Site 637.3 | See note (e). |
| Tank Site 637.4 | See note (e). |
| Tank Site 637.5 | See note (e). |
| Tank Site 637.6 | See note (e). |
| Tank Site 637.VR | See note (e). |
| Tank Site 638.OW | See note (e). |
| Tank Site 640.1 | See note (e). |
| Tank Site 640.3 | See note (e). |
| Tank Site 640.4 | See note (e). |
| Tank Site 640.5 | See note (e). |
| Tank Site 642.1 | See note (e). |

SCOPE OF WORK ENDORSEMENT
REMEDIATION STOP LOSS POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Corrective Action Plan (CAP) Sites (cont'd)* | |
| Building 1065 Area | Excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility, perform enhanced bioremediation, and monitor groundwater. |
| Tank Site 1040.1 | See note (e). |
| Tank Site 1040.2 | See note (e). |
| Tank Site 1047.1 | See note (e). |
| Tank Site 1047.2 | See note (e). |
| Tank Site 1047.3 | See note (e). |
| Tank Site 1065.1 | See note (e). |
| Tank Site 1065.2 | See note (e). |
| Tank Site 1065.3 | See note (e). |
| Building 1349 Area | Excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility, perform enhanced bioremediation, and monitor groundwater. |
| Tank Site 1349 | See note (e). |
| *Additional Data Sites* | |
| Building 215 Area | See Building 215 Area (Main Installation and PHSH Sites). |
| Tank Site 215 | See note (e). |
| Tank Site 215.1 | See note (e). |
| Tank Site 215.2 | See note (e). |
| Commissary Area | Characterize soil and groundwater. Remove fuel distribution piping. Excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility and monitor groundwater. |
| Tank Site 603 | See note (e). |
| Tank Site 616 | See note (e). |
| Tank Site 621 | See note (e). |
| Tank Site 622 | See note (e). |
| Tank Site 626 | See note (e). |
| Tank Site 634 | See note (e). |
| Tank Site FDS-1 | See note (e). |
| Miscellaneous Tank Sites | Characterize soil and groundwater at the 30 listed miscellaneous tank sites. |
| Tank Site 2 | Perform further actions, as necessary. |
| Tank Site 136 | See note (e). |
| Tank Site 137 | See note (e). |
| Tank Site 140 | See note (e). |
| Tank Site 238 | See note (e). |
| Tank Site 283.1 | See note (e). |
| Tank Site 283.2 | See note (e). |
| Tank Site 283.3 | See note (e). |
| Tank Site 286 | See note (e). |
| Tank Site 513.1 | See note (e). |
| Tank Site 727.1 | See note (e). |
| Tank Site 727.2 | See note (e). |
| Tank Site 731.1 | See note (e). |
| Tank Site 731.2 | See note (e). |
| Tank Site 930.1 | See note (e). |
| Tank Site 930.2 | See note (e). |
| Tank Site 1027 | See note (e). |
| Tank Site 1030 | See note (e). |
| Tank Site 1214 | See note (e). |
| Tank Site 1221.1 | See note (e). |
| Tank Site 1221.2 | See note (e). |
| Tank Site 1221.3 | See note (e). |

# SCOPE OF WORK ENDORSEMENT
# REMEDIATION STOP LOSS POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Additional Data Sites (cont'd)* | |
| Tank Site 1221.4 | See note (e). |
| Tank Site 1221.5 | See note (e). |
| Tank Site 1351 | See note (e). |
| Tank Site 1399.3 | See note (e). |
| Tank Site 1750.1 | See note (e). |
| Tank Site 1773.1 | See note (e). |
| Tank Site 1773.2 | See note (e). |
| Tank Site M30 | See note (e). |
| *Verify Information Sites* | |
| Miscellaneous Tank Sites | Search, obtain, and review relevant information at the 10 listed miscellaneous |
| Tank Site 42 | tank sites. Perform further actions, as necessary. |
| Tank Site 127 | See note (e). |
| Tank Site 269.5 | See note (e). |
| Tank Site 729.1 | See note (e). |
| Tank Site 733.1 | See note (e). |
| Tank Site 750.2 | See note (e). |
| Tank Site 751.2 | See note (e). |
| Tank Site 1399.4 | See note (e). |
| Tank Site 1399.5 | See note (e). |
| Tank Site GT39 | See note (e). |
| *Phase II PA Report Sites (g)* | |
| Tank Site 35.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 105.5 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 205 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site 924 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| *Fuel Distribution System Line (FDS)* | |
| FDS Line | Excavate impacted soil and dispose of such soil at as Class II, non-hazardous waste at a permitted, off-site facility. |
| *RWQCB Order 96-070 Compliance* | |
| Routine Monitoring | Perform quarterly water level monitoring and conduct 5-year reviews. |

SCOPE OF WORK ENDORSEMENT
REMEDIATION STOP LOSS POLICY
TABLE 1
SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| **Other Programs** | |
| *Firing Ranges* | |
| Lobos Creek Protected Range | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Lobos Creek Target Butt | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Machine Gun Butt | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| CHP Pistol Range | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| *Coastal Fortifications* | |
| Battery Blaney (Building 635) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Boutelle (Building 1651) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Chamberlain (Building 1621) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Cranston (Building 1661) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Crosby (Building 1630) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Dynamite (Building 1399) | See Petroleum Program. |
| Battery East | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Battery Godfrey (Building 1647) | See Petroleum Program. |
| Battery Howe-Wagner (Building 1287) | See Petroleum Program. |
| Battery Lancaster (Building 1665 and 998) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Batter Marcus Miller (Building 1658) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Batter McKinnon (Building 1430) | See Petroleum Program. |
| Batter Safford (Building 1354) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Batter Sherwood (Building 636) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Batter Stotsenberg (Building 1430) | See Petroleum Program. |
| Batter West (Buildings 1640 and 1643) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Central Magazine (Buildings 1470 and 1471) | Remove underground storage tank and impacted soil. Dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Mine Depot (Buildings 979 and 985 to 990) | See Petroleum Program. |
| New Mine Casement (Building 1601) | See Petroleum Program. |
| Old Mine Casement (Building 1600) | See Petroleum Program. |

# SCOPE OF WORK ENDORSEMENT
# REMEDIATION STOP LOSS POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Crissy Field Remedial Action Plan (RAP) Sites* | |
| East of Mason (EOM) | Obtain NFA certification from regulatory agencies. |
| Fill Site 7 | Obtain NFA certification from regulatory agencies. |
| Building 640/643 Area | Obtain NFA certification from regulatory agencies. |
| Building 923/937 Area (soil) | Obtain NFA certification from regulatory agencies. |
| Building 924 Firing Range | Obtain NFA certification from regulatory agencies. |
| Building 950 Area | Obtain NFA certification from regulatory agencies. |
| Building 979 Area (soil) | Obtain NFA certification from regulatory agencies. |
| Crissy Field Monitoring Wells | Decommission monitoring wells for restoration project. |
| Storm Drain Sediments | Remove storm drains and associated sediments in wetlands area. Dispose of such sediments as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Crissy Field Rifle Institute and Skeet Ranges (on-shore) | Excavate impacted soil in intertidal zone and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Fill Site 7 Soil under Electrical Line | Excavate impacted soil and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Contingency Action Plan Sites | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Wetlands | Sample sediment in wetlands. |
| Building 937/979 Area (groundwater) | Monitor groundwater. |
| *DEH Area Remedial Action Plan Sites* | |
| DEH Area (soil) | Obtain NFA certification from regulatory agencies. |
| Building 268 Area | See note (e). |
| Building 269 Area | See note (e). |
| Building 283 Area | See note (e). |
| Building 286 Area | See note (e). |
| Buildings 292/293 Area | See note (e). |
| DEH Area (groundwater) | Monitor groundwater. |
| *CERCLA Tank Sites* | |
| Building 207/231 Area | See Building 207/231 Area (Petroleum Program). |
| Tank Site 231.1 | See note (e). |
| DEH Area Sites | See DEH RAP Sites, DEH Area (groundwater). |
| Tank Site 269.1 | See note (e). |
| Crissy Field RAP Sites | See Crissy Field RAP Sites, Building 937/979 Area (groundwater). |
| Tank Site 937.1 | See note (e). |
| Tank Site 937.2 | See note (e). |
| Tank Site 937.3 | See note (e). |
| Tank Site 979.1 | See note (e). |
| Tank Site 979.2 | See note (e). |
| Tank Site 979.3 | See note (e). |
| Miscellaneous Tank Sites | |
| Tank Site 628 | See Commissary Area (Petroleum Program, Need Additional Data Sites) |
| Tank Site 640.2 | See Building 637 Area (Petroleum Program, CAP Sites) |
| Tank Site 640.2OW | See Building 637 Area (Petroleum Program, CAP Sites) |
| Tank Site 651 | Prepare NFA report. |
| Tank Site 662.1 | Prepare NFA report. |
| Tank Site 662.2 | Prepare NFA report. |
| Tank Site 1362 | Prepare NFA report. |
| Tank Site LR0101.1 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Tank Site LR0101.2 | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |

# SCOPE OF WORK ENDORSEMENT
# REMEDIATION STOP LOSS POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Selected Category A Sites (h)* | |
| Building 31 Area | Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 203 | Characterize soil. |
| Building 204 | Characterize soil. |
| Building 252 Area | Characterize soil. |
| Building 660 | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 666 | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 671 | Characterize soil. |
| Building 901 Area | Characterize soil. |
| Building 1229 | Characterize soil. |
| Building 1231 | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1233 | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1235 Area | Characterize soil. Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1283 | Characterize soil. |
| Building 1338 | Characterize soil. |
| Building 1355 | Characterize soil. Remove tank, excavate impacted soil, and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1355 Area | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1361 Area | Characterize soil, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. |
| Building 1363 | Characterize soil. |
| Building 1365 | Characterize soil. |
| *Regulatory Agency Approval* | |
| Basewide Remedial Action Plan (RAP) | Prepare and obtain regulatory agency approval of a Basewide RAP. |
| **Lead-Based Paint in Soil** | |
| *Planning Area* | |
| Main Post: 138 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Golden Gate/Fort Point: 23 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Fort Scott: 140 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Letterman Complex: 51 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Cavalry Stables: 4 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Public Health Service Hospital: 21 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| East Housing Area: 65 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Crissy Field: 39 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Presidio Hill: 15 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |

# SCOPE OF WORK ENDORSEMENT
# REMEDIATION STOP LOSS POLICY
# TABLE 1
# SCOPE OF WORK FOR THE INSURED PROJECT

| Site | Proposed Activity |
|---|---|
| *Planning Area (cont'd)* | |
| Presidio Forest: 12 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Lobos Creek Valley: 13 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| Coastal Bluffs: 8 Buildings | Perform soil sampling, excavate impacted soil, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |
| **Administration** | |
| Regulatory Agency Oversight | Provide regulatory agency oversight of the Presidio Environmental Restoration. |

Notes:

(a) This footnote applies to all sites for which the proposed activity is "Obtain NFA certification from the regulatory agencies through FS/RAP." No remedial actions have been identified for affected media at the site. Based on available data, the proposed activity is to obtain certification from regulatory agencies that no further action (NFA) is required as part of the FS/RAP for the Main Installation sites.

(b) This footnote applies to all sites for which the proposed activity is "Obtain NFA certification from the regulatory agencies." No remedial actions have been identified for affected media at the site and necessary reporting has been completed. Based on available data, the proposed activity is to obtain NFA certification from regulatory agencies.

(c) This footnote applies to all sites for which the proposed activity is "Prepare NFA report." No remedial actions have been identified for affected media at the site. However, for the proposed activity, a report requesting no further action must be prepared and NFA certification must be obtained from the regulatory agencies.

(d) Remedial actions for Mini-CAP sites include the listed tank site and associated impacted soil. Where necessary, the activity also addresses associated appurtenances, such as fuel dispensers, vapor return lines, and distribution piping, if they are directly related to the Mini-CAP site.

(e) The tank site and the associated activity are addressed in the site area listed above.

(f) Remedial actions for CAP sites include the listed tank sites, associated impacted soil, and releases from appurtenances to the listed tanks, such as fuel dispensers, vapor return lines, and distribution piping.

(g) The Phase II PA Report sites are those tank sites identified in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled *Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco* which have not otherwise been included in this Scope of Work and for which the activities identified in this table may be necessary.

(h) Selected Category A sites are those sites identified in the International Technology ("IT") report, dated 17 February 1999, entitled *Additional Sites of Potential Environmental Concern: In-Depth Historical Research Results*for which the activities identified in this table may be necessary.

SCOPE OF WORK ENDORSEMENT

REMEDIATION STOP LOSS POLICY

TABLE 2

ANTICIPATED REMEDIATION SCHEDULE FOR THE INSURED PROJECT

| Site | Construction Implementation Schedule (years from Effective Date); (a) | Operations and Maintenance Schedule (years from Effective Date); (b) |
|---|---|---|
| **Main Installation and Public Health Service Hospital (PHSH) Sites** | | |
| Feasibility Study/Remedial Action Plan | 0 - 1.5 | - (c) |
| (includes NFA Sites) | | |
| Baker Beach Disturbed Area 1 | 0.5 - 3.5 | 2.5 - 5.5 |
| Baker Beach Disturbed Area 1A | 0.5 - 3.5 | - |
| Baker Beach Disturbed Area 2 | 0.5 - 3.5 | - |
| Baker Beach Disturbed Area 3 | 2 - 5 | 3.5 - 9.5 |
| Baker Beach Disturbed Area 4 | 2 - 5 | - |
| Battery Howe/Wagner | 3.5 - 6.5 | 5.5 - 9.5 |
| Fill Site 1 | 2 - 5 | 4 - 8 |
| Fill Site 5 | 3.5 - 6.5 | 5.5 - 9.5 |
| Fill Site 6 | 3.5 - 6.5 | 5.5 - 9.5 |
| Graded Area 9 | 0 - 2 | 1 - 6 |
| Landfill 2 | 2 - 5 | 4 - 8 |
| Landfill 4 | 3.5 - 6.5 | 5.5 - 9.5 |
| Landfill 8 | 0 - 2 | 1 - 6 |
| Landfill 10 | 0 - 2 | 1 - 6 |
| Landfill E | 2 - 5 | 4 - 15.5 |
| Building 215 Area | 3.5 - 6.5 | 5.5 - 9.5 |
| Building 609 Area | 3.5 - 6.5 | - |
| Building 633 Firing Range Area | 3.5 - 6.5 | - |
| Building 669 Area | 3.5 - 6.5 | - |
| Building 1167 Area | 0.5 - 3.5 | - |
| Building 1244 Area | 0.5 - 3.5 | - |
| Building 1245 Area | 0.5 - 3.5 | - |
| Building 1351 Area | 0.5 - 3.5 | - |
| Building 1750 Area | 3.5 - 5 | - |
| Building 1827 Area | 0.5 - 3.5 | - |
| El Polin Spring Area | - | 4 - 8 |
| Mountain Lake Area | 5 - 6 | 5.5 - 9.5 |
| Nike Facility Area | 0.5 - 3.5 | 2.5 - 7.5 |
| Nike Swale | 0.5 - 3.5 | 2.5 - 6 |
| Sewer Lift Station #1 Area | 3.5 - 6.5 | - |
| Transfer Station Area | 0.5 - 3.5 | - |
| **Petroleum Program** | | |
| Renegotiate Order with RWQCB | 0 - 1 | - |
| No Further Action (NFA) Tank Sites with Closure | 0 - 1.5 | - |
| Reports (86 tanks) | | |
| NFA Tank Sites That Need Reports | | |
| Group 1 (51 tanks) | 0 - 2.5 | - |
| Group 2 (50 tanks) | 1.5 - 4.5 | - |
| Group 3 (50 tanks) | 3 - 6 | - |
| First 50% Mini-Corrective Action Plan (Mini-CAP) | 0.5 - 3 | 2 - 13 |
| Sites (43 Sites) | | |
| Remaining 50% Mini-CAP Sites (43 Sites) | 1.5 - 4 | 3 - 14 |
| Corrective-Action Plan (CAP) Sites | | |
| Building 207/231 Area | 0 - 1.5 | 1 - 12 |
| Building 637 Area | 0.5 - 2 | 1 - 12 |
| Building 1065 Area | 0 - 1.5 | 1 - 12 |
| Building 1349 CAP | 4.5 - 6 | 5 - 16 |
| Additional Data Sites (38 Sites) | 3 - 6.5 | 5.5 - 16.5 |
| Verify Information Sites (10 Sites) | (d) | (d) |

SCOPE OF WORK ENDORSEMENT
REMEDIATION STOP LOSS POLICY
TABLE 2
ANTICIPATED REMEDIATION SCHEDULE FOR THE INSURED PROJECT

| Site | Construction Implementation Schedule (years from Effective Date); (a) | Operations and Maintenance Schedule (years from Effective Date); (b) |
|---|---|---|
| Fuel Distribution System Line | 0.5 | 4 |
| RWQCB Order Compliance | - | 0 - 16.5 |
| **Other Programs** | | |
| Firing Ranges | 3.5 - 6.5 | - |
| Coastal Fortifications | 4.5 - 7 | - |
| Crissy Field Remedial Action Plan (RAP) Sites | | |
| Storm Drain Sediments | 0 - 1 | - |
| Crissy Field Rifle Institute and Skeet Ranges | 0 - 1 | - |
| Beach Area | | |
| Fill Site 7 Soil under Electrical Line | 0 - 1 | - |
| Contingency Action Plan Sites | 0 - 1 | - |
| Wetlands Sediment Sampling | 1 - 2 | - |
| Building 937/979 Area | 0.5 - 2 | 0.5 - 6 |
| DEH RAP Sites | 0 - 1 | 0.5 - 6 |
| CERCLA Tank Sites | 0.5 - 3 | - |
| Selected Category A Sites | 5.5 - 8 | - |
| Basewide RAP | 7 - 8.5 | - |
| **Lead-Based Paint in Soil** | | |
| First 60% of Buildings | 0 - 4.5 | - |
| Next 20% of Buildings | 1.5 - 4.5 | - |
| Final 20% of Buildings | 2.5 - 5.5 | - |

Notes:

(a) "Construction Implementation Schedule" presents the current estimated schedule to implement Scope of Work of the Insured Project. The Construction Implementation Schedule shall be modified as necessary to accommodate any and all permitting, sampling, construction, restoration, reporting, and other tasks and items associated with and/or necessary to implement the activity as listed in Table 1 for each site as required by any regulatory agency other than the Department of Interior or the Department of Army, or pursuant to applicable federal, state or local statutes, regulations or ordinances.

(b) "Operations and Maintenance Schedule" presents the current estimated schedule to perform operations and maintenance for the Insured Project. The Operations and Maintenance Schedule shall be modified as necessary to accommodate any and all operations and maintenance including implementation of institutional controls, operation and maintenance of extraction and remediation systems, groundwater monitoring, reporting, and other tasks and items associated with and/or necessary to implement the activity listed in Table 1 for each site as required by any regulatory agency other than the Department of Interior or the Department of Army, or pursuant to applicable federal, state or local statutes, regulations or ordinances.

(c) Hyphen ("-") indicates that there are no scheduled activities for this site.

(d) The 10 petroleum sites classified as "Verify Information Sites" will be addressed in other parts of the petroleum program once the relevant information about the tank sites has been reviewed. For purposes of this schedule, these 10 sites have been assumed to be included in other parts of the petroleum program. For example, the schedule for "NFA Tank Sites that Need Reports" includes 6 "Verify Information" tank sites.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

**Endorsement # 3**

# Scope of Work Modifications Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

**In consideration of the payment of the premium and the undertaking of the Named Insured to pay the Cumulative Losses Self Insured Retention and Total Cumulative Losses Self Insured Retention as described herein, in reliance upon the statements in the Application made a part hereof, and subject to the Limits of Liability of this insurance as set forth in the Declarations, and the exclusions, conditions and other terms of this Policy, the Company agrees with the Named Insured as follows:**

**I. Fill Site 5 Proposed Activity Modification**

A. The Scope of Work Endorsement Table 1 sets forth excavation as the proposed activity for remediation of Fill Site 5. In the event the **Named Insured** receives approval from all appropriate regulatory agencies for an alternative remedy for Fill Site 5 which includes approval to complete remediation of Fill Site 5 using installation of a low permeability cap over the waste fill and performance of on-going maintenance of the cap and monitoring of groundwater, the Company will revise the **Scope of Work**, the **Cumulative Losses Self Insured Retention**, the **Total Cumulative Losses Self Insured Retention**, and the Limit of Liability upon receipt, review, and approval of the final Remedial Action Plan which has been approved by all appropriate regulatory agencies and detailed cost estimates documenting the estimated revised cost of the proposed activities, to reflect such change as set forth in this paragraph. The Company will provide written concurrence or non-concurrence to the **Named Insured** that the cost estimates are reasonable and necessary to complete the activities described by the document(s). Failure of the Company to provide written concurrence or non-concurrence within ninety (90) days of the receipt of any cost estimates shall be deemed to mean that all cost estimates as presented in such document(s) are reasonable and necessary. Any premium adjustments resulting from a reduction of risk and/or in the Limit of Liability will be calculated using the Company's standard, proprietary pricing model for the Remediation Stop Loss Policy.

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

II. Golden Gate Bridge Highway and Transportation District and Phase II PA Report Tank Sites

A. In the event the **Named Insured** becomes legally obligated to pay for **Loss** arising out of one or more of the known **Pollution Events** scheduled in Section II.B. of this endorsement, the **Scope of Work** will be modified to include the activities and schedule reasonable and necessary to complete the planned remedial approach, provided: a) final remedial investigation or decision document(s) approved by all appropriate regulatory authorities and accompanied by cost estimates for the activities to be included in the **Scope of Work** are provided to the Company as required under Section VII. A., and b) the Company has provided written concurrence to the **Named Insured** that the cost estimates are reasonable and necessary to complete the activities described by the document(s). Failure of the Company to provide written concurrence or non-concurrence within 90 days of the receipt of any cost estimates shall be deemed to mean that all cost estimates as presented in such document(s) are reasonable and necessary. Upon approval by the Company that the presented cost estimates are reasonable and necessary, the activities and schedule which are reasonable and necessary to complete the planned remedial approach will be endorsed onto the **Scope of Work** of the Policy; and the **Cumulative Losses Self Insured Retention, Total Cumulative Losses Self Insured Retention,** the Limit of Liability for Cumulative Loss and the Limit of Liability for Total Cumulative Loss will be increased by the dollar amount equal to the reasonable and necessary estimated costs to complete the planned remedial activities within schedule as endorsed onto the **Scope of Work** of the Policy. If the resulting increase in the **Total Cumulative Losses Self Insured Retention** is no more than a cumulative total of $500,000 in the aggregate for any and all such adjustments made during the Policy Term, no premium adjustment will result. If the cumulative total in aggregate for any and all such adjustments to the **Total Cumulative Losses Self Insured Retention** made during the Policy Term exceeds $500,000, premium adjustments resulting from modifications to the Limit of Liability for Cumulative Loss, the Limit of Liability for Total Cumulative Loss, **the Cumulative Losses Self Insured Retention** or the **Total Cumulative Losses Self Insured Retention** in excess of of $500,000 will be calculated using the Company's standard, proprietary pricing model for the Remediation Stop Loss Policy.

B. Known Pollution Events Schedule

1. Lead contaminated soil at the Golden Gate Bridge Highway and Transportation District site in High and Moderate Contaminant Probability Areas as described in *Work Plan for Phase II Remedial Investigation of Lead Bearing Sand Blast Media in Soil at the Golden Gate Bridge, Final Draft*, PES Environmental, Inc., January 1, 1998.
2. Petroleum hydrocarbon impacts to soil and groundwater at the Golden Gate Bridge Highway and Transportation District site as described in *Final Remedial Investigation Report, Presidio Main Installation, Presidio of San Francisco*, Dames & Moore, January 1997.
3. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 926.1 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
4. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 926.2 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
5. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 926.3 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
6. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 926.4 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
7. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 1289 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

8. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 1290 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
9. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 1291 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
10. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 1293 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
11. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 1294 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
12. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 1295 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
13. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 1296 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
14. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 1297 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
15. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 1298 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.
16. Petroleum hydrocarbon impacts to soil and groundwater at Tank Site 1357 as documented in the U.S. Army Corps of Engineers, Waterways Experiment Station report, dated March 1990, and entitled Phase II Preliminary Assessment, Underground Storage Tank Data Sheets, Presidio of San Francisco.

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: William M Sagusk — July 6, 1999

Authorized Representative — Date

\\zari_uszde01\sys\users\b09mxm5\quotes\presidio\policies\rsl\modsow3.doc

05/22/99 1:45 PM

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich ...

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 4

# Additional Insured Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and the reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions, and conditions of the Policy, that the coverage provided by this endorsement to the Additional **Insured(s)** scheduled below is strictly limited to and shall only be for **Claim(s)** or **Loss(es)**, made during the **Policy Period**, for which the Additional **Insured(s)** is legally obligated, but only to the extent that the **Named Insured** is legally obligated to pay for such **Loss** at the **Insured Project**. This endorsement provides no coverage for the Additional Insured's direct liability for **Loss** at the **Insured Project** that is not also the legal obligation of the **Named Insured.**

Additional Insured(s)

United States Department of the Interior, National Park Service ("DOI")

United States Department of Defense, Department of the Army ("Army")

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: [signature] July 6, 1999

Authorized Representative Date

Copyright © 1999 by Zurich Insurance Company

STF-PRESRSL-MAN2 CW (5/99)

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

**Endorsement # 5**

# Self Insured Retention Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and the reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions, conditions of the Policy that:

1. <u>Self Insured Retention</u>

A. The **Total Cumulative Losses Self Insured Retention** will be the most the **Insured** will pay for all **Self Insured Retention** amounts under this Policy. Except as provided in Section V. of the Policy., the **Total Cumulative Losses Self Insured Retention** amount is not subject to proration for any reason, including policy cancellation..

B. Items 4.a through 4.d. of the Declarations specify and define certain Cumulative Loss Periods. For each such Cumulative Loss Period, Items 4.a through 4.d. of the Declarations also specify a corresponding **Cumulative Losses Self Insured Retention.**

C. For any given Cumulative Loss Period the corresponding **Cumulative Losses Self Insured Retention** for the **Insured Project** shall be the obligation of the **Insured** for payment of all **Loss(es)** and the **Insured** shall pay all **Loss(es)** as those amounts become due and payable until the **Insured** has paid all amounts of **Loss(es)** equal to the **Cumulative Losses Self Insured Retention** amount, subject to Section 1.D. below.

D. For any given Cumulative Loss period, the Company will advance payment for **Loss** to the **Insured** for costs that are in excess of the corresponding **Cumulative Losses Self Insured Retention.** To the extent that the sum of all **Losses** paid or due and payable by the **Insured** are less than the **Total Cumulative Losses Self Insured Retention** the **Insured** shall reimburse the Company for such advance payments in full as soon as practicable but not later than:

1) ninety (90) days after receipt of funds from the Department of Defense, Department of the Army for the Cumulative Loss Period after the Cumulative Loss Period in which the Company advanced payments to the Insured, and

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

2) in the event that the amount of repayment owed by the **Insured** to the Company for the Company's advance payment exceeds the amount of funds received from the Department of Defense, Department of the Army, then the amount of the reimbursement exceeding the amount of funds received from Department of Defense, Department of the Army shall be paid to the Company ninety (90) days after receipt of funds from the Department of Defense, Department of the Army for the next succeeding Cumulative Loss Period(s) up to the **Cumulative Losses Self Insured Retention** for each such subsequent Cumulative Loss Period(s).

In the event that the Company has paid Loss(es) within or below the **Total Cumulative Losses Self Insured Retention**, to the extent that the **Insured** has not previously reimbursed the Company for such paid Loss up to the **Total Cumulative Losses Self Insured Retention**, upon the **Insured's** receipt of funds from the Department of Defense, Department of the Army or other appropriated funds which are held in an account or accounts dedicated to the **Scope of Work**, the **Insured** shall reimburse the Company in full as soon as practicable but no later than ninety (90) days after receipt of funds.

E. The fees, charges and costs of any claims service provider or auditor employed by the **Insured** shall be in addition to the **Total Cumulative Losses Self Insured Retention** amount and without any reimbursement from the Company.

**2. Insured Reporting of Self Insured Retention Loss Payments**

A. The **Insured** must provide a written progress report on payments made toward **Loss(es)** within the **Total Cumulative Losses Self Insured Retention** amount in the following manner:

1. The **Insured** must monitor the **Total Cumulative Losses Self Insured Retention** amounts due and payable or paid during the **Policy Period** and provide a progress report to the Company on a quarterly basis detailing such amounts by individual payments. No more than a ninety (90) day lag period shall transpire between the quarter of the cost incurred or paid and the progress report. When the **Insured** discovers that **Loss(es)** during the **Policy Period** have exceeded 85% of the **Cumulative Losses Self Insured Retention** amount, the **Insured** will as soon as practicable provide a progress report to the Company as required in Section VII. Conditions, A. Inspection and Audit of this Policy setting forth the total **Loss(es)** due and payable and paid.

B. The **Insured** shall keep and maintain records of all payments and make them available to the Company throughout the Policy Period.

C. If the Company is substantially prejudiced by the **Insured's** material non-compliance with the reporting requirements set forth in this endorsement, the Company shall be automatically relieved of liability with respect to that portion of the **Loss** for which the Company is substantially prejudiced.

**3. Company Audit Right and Qualification of Payments Made by the Insured Toward the Self Insured Retention**

The Company reserves the right to review and audit any **Loss(es)** incurred or paid by the **Insured**. Within 90 days after receipt of a progress report as required pursuant to Section 2 of this endorsement, the Company shall notify the **Insured** of the specific **Loss(es)** that it disputes are reasonable and necessary to complete the **Scope of Work**. Failure of the Company to dispute a **Loss** within 90 days of the receipt of any progress report shall be deemed to mean that all **Loss(es)** as presented in such progress report are reasonable and necessary. Failure of the Company to dispute whether any particular **Loss** is reasonable and necessary at one point in time shall not bind the Company as respects any future determinations unless the **Insured** establishes that it has relied to its detriment upon such earlier determination. The Company shall notify the **Insured** as soon as practicable after determining that a previously undisputed **Loss** may be disputed in the future.

Should the **Insured** dispute a determination by the Company that any **Loss(es)** due and payable or paid by the **Insured** are not reasonable and necessary to complete the **Scope of Work**, then the **Insured** and the Company mutually agree to attempt to resolve the dispute in good faith. In the event that good faith efforts by the **Insured**

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

and the Company do not resolve the dispute, the **Insured** and the Company shall submit to an informal **Mediation** process as follows:

1. For the purposes of this endorsement **Mediation** is defined as any non-binding intervention by a neutral third party.
2. The **Insured** and the Company agree to select a neutral third party (**Mediator**) to oversee the **Mediation**. The **Insured** and the Company will as soon as practicable, select and jointly retain a **Mediator** to perform a review of the **Loss(es)** incurred or paid in any progress report(s) provided to the Company by the **Insured**. The cost of the **Mediator** shall be shared equally by the **Insured** and the Company. Within thirty (30) days after the selection and the retention of the **Mediator**, the **Mediator** shall make a determination on whether such **Loss(es)** were reasonable and necessary to complete the **Scope of Work**. The **Insured** and the Company agree to confer on the determination of the **Mediator** and to use their best efforts to resolve the dispute. Nothing contained herein shall waive any right the parties may have to seek review in a court of law.
3. All time limits provided in the **Mediation** processes set forth above may be extended on a case by case basis, by mutual agreement of the **Insured** and the Company.

4. **Insured Obligation to Pay Self Insured Retention**

A. In the event that the **Insured** refuses to respond to obligations for the payment of **Cumulative Losses Self Insured Retention** or **Total Cumulative Losses Self Insured Retention** amounts for any reason, the insurance provided by this Policy shall not make payments for the **Insured**, nor in any event shall the Company be required to substitute for the **Insured** as respects the **Insured's** responsibility for payment of the **Cumulative Losses Self Insured Retention** or **Total Cumulative Losses Self Insured Retention** amounts.

B. For any given Cumulative Loss Period, the Company shall be liable only for the amount of **Loss(es)** in excess of the **Cumulative Losses Self Insured Retention** amounts as applicable, up to the Limit of Liability shown in the Declarations, subject to the offset and reimbursement provisions set forth in 1.D., above.

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: William M Sproul [signature]
Authorized Representative

July 6, 1999
Date

Copyright © 1999 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 6

# Representations and Warranty Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

The **Insureds** (undersigned) hereby represent and warrant they have no knowledge of any past or present insurance that provides coverage which may be applied towards **Cumulative Losses Self Insured Retention** or the **Total Cumulative Losses Self Insured Retention.** In addition, the **Insureds** (undersigned) represent and warrant that insurance will not be purchased by the **Insureds** or by others on behalf of the **Insureds** to cover the **Cumulative Losses Self Insured Retention** or the **Total Cumulative Losses Self Insured Retention.**

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by:

| | James E. Meadows | 7/9/99 |
|---|---|---|
| Presidio Trust<br>Authorized Representative | Printed Name | Date |
| | B. J. GRIFFIN | 7/9/99 |
| Department of Interior<br>Authorized Representative | Printed Name | Date |
| | | |
| Department of Army<br>Authorized Representative | Printed Name | Date |
| | William M. Lynch | July 6, 1999 |
| Zurich Insurance Company<br>Authorized Representative | Printed Name | Date |

Copyright © 1999 by Zurich Insurance Company

STF-PRESRSL-MAN3 CW (5/99)

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

**Endorsement # 7**

Replaced by Endorsement # 8

# Scope of Work Modification Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| BRC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

## I. Scope of Work

The following proposed activities are appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Contingency Action Plan / Remedial Action Work Plan | Preparation of generic planning and work plan documents to establish procedures to be used in the event of discovery of unknown pollution conditions, but only for costs incurred and invoiced through December 31, 2001. |
| Public Health Services Hospital ROD Amendment | Preparation of an amendment to the final Record of Decision for the Public Health Services Hospital, but only for costs incurred and invoiced through June 1, 2001. |
| **Site-wide Activities** | |
| Sampling and Analysis Plan | Develop a reusable set of standard operating procedures for the collection, sampling and analysis of environmental samples necessary for the completion of the **Scope of Work** of the **Insured Project**. |
| Quality Assurance Project Plan | Develop a reusable set of standard procedures for ensuring consistent quality assurance/quality control for the collection, sampling and analysis of environmental samples necessary for the completion of the **Scope of Work** of the **Insured Project**. |

Copyright © 2001 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

| | |
|---|---|
| Basewide Groundwater Monitoring Plan and Well Decommissioning | Implement procedures to streamline groundwater monitoring tasks necessary for the completion of the **Scope of Work** of the **Insured Project** into a site-wide coordinated program. This task also includes well decommissioning of obsolete groundwater monitoring wells that can not be tracked back to already scheduled individual remediation projects. |
| Data Management | Data input and management of environmental data associated with sites specifically listed in this Table 1 as necessary for the completion of the **Scope of Work** of the **Insured Project**. |
| Restoration Advisory Board (RAB) Administration | Conduct administrative tasks for administration of the RAB, including rental of meeting rooms for public meetings and workshops when appropriate rooms are not available from the Presidio Trust, sound system rental, meeting transcriptions, public notices, printing costs, and fact sheet preparation, which are necessary for the completion of the **Scope of Work** of the **Insured Project**. |

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: [signature]
Authorized Representative

December 17, 2001
Date

Copyright © 2001 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 8

# Scope of Work Modification Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| BRC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon .e statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that Endorsement #7 is hereby deleted in its entirety and replaced with the following:

## I. Scope of Work

The following proposed activities are appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Contingency Action Plan / Remedial Action Work Plan | Preparation of generic planning and work plan documents to establish procedures to be used in the event of discovery of unknown pollution conditions, but only for costs incurred and invoiced through the date of initial Remedial Action Work Plan approval or December 31, 2002, whichever occurs first. |
| Public Health Services Hospital ROD Amendment | Preparation of an amendment to the final Record of Decision for the Public Health Services Hospital, but only for costs incurred and invoiced through June 1, 2001. |
| **Site-wide Activities**<br>Sampling and Analysis Plan | Develop a reusable set of standard operating procedures for the collection, sampling and analysis of environmental samples necessary for the completion of the **Scope of Work** of the **Insured Project**. |
| Quality Assurance Project Plan | Develop a reusable set of standard procedures for ensuring consistent quality assurance/quality control for the collection, sampling and analysis of environmental samples necessary for the completion of the **Scope of Work** of the **Insured Project**. |

Copyright © 2001 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

| | |
|---|---|
| Basewide Groundwater Monitoring Plan and Well Decommissioning | Implement procedures to streamline groundwater monitoring tasks necessary for the completion of the **Scope of Work** of the **Insured Project** into a site-wide coordinated program. This task also includes well decommissioning of obsolete groundwater monitoring wells that can not be tracked back to already scheduled individual remediation projects. |
| Data Management | Data input and management of environmental data associated with sites specifically listed in this Table 1 as necessary for the completion of the **Scope of Work** of the **Insured Project.** |
| Restoration Advisory Board (RAB) Administration | Conduct administrative tasks for administration of the RAB, including rental of meeting rooms for public meetings and workshops when appropriate rooms are not available from the Presidio Trust, sound system rental, meeting transcriptions, public notices, printing costs, and fact sheet preparation, which are necessary for the completion of the **Scope of Work** of the **Insured Project.** |

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: [signature] April 29, 2002
Authorized Representative Date

Copyright © 2001 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 9

# Scope of Work Modification Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self** **[illegible]ured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon [illegible]atements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, [illegible]usions and conditions of the Policy that:

## I. Scope of Work

The following proposed activity is appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Barnard Avenue Protected Range | Excavate that portion of impacted soil not located beneath the footprint of Landfill E, and dispose of such soil as a non-RCRA hazardous waste at a permitted, off-site facility. |

All other terms and conditions of the policy shall apply and remain unchanged.

[illegible]ed by: William M. [illegible] — Authorized Representative

August 15, 2002 — Date

Copyright © 2001 by Zurich Insurance Company

STF-PRESRSL-MAN1 CW (7/01)

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

**Endorsement # 10**

# Scope of Work Modification Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

**I. Scope of Work**

The following proposed activities are appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Mountain Lake Area | Prepare a Remedial Action Plan (RAP) and remedial design consistent with the most likely regulatory agency-required remedy of contaminated sediment excavation, off-site disposal, relocation of surface water outfalls, and surface water monitoring. |
| Tank 511.1 | Remove and dispose of tank, excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted facility. |
| Letterman Army Institute of Research (LAIR) | Conduct soil sampling, analysis and reporting at the LAIR facility in accordance with regulatory agency requirements. Costs for this task shall not exceed $35,000 and costs associated with the cleanup of previously unknown contamination discovered as a result of this sampling is not included in the **Scope of Work**. |
| Landfill 4 | Installation by Presidio Trust personnel of an automatic drip irrigation system at Landfill 4 as required by the regulatory agency as part of post-closure activities. Costs for this task |

Copyright © 2001 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

| | |
|---|---|
| | shall not exceed $15,000. |
| Building 1351 Area | Jet wash and clean out a sump and associated drainage pipes, off-haul and properly dispose of sediments and liquids created by jet washing, and cap the pipes. |
| **Site-wide Activities**<br>Lead-Based Paint Decision Document and Technical Workplan | Prepare a Lead-Based Paint Plan and Technical Workplan for regulatory agency review and approval. Conduct lead-based paint cleanups at sites listed in Table 1 of the **Scope of Work** for the **Insured Project** in accordance with these Regulatory Agency-approved documents. |
| Master Remediation Schedule Management | Review, debug and modify the current Master Remediation Schedule. Provide routine schedule updates. |
| Data Management | Data input and management of environmental data associated with sites specifically listed in this Table 1 as necessary for the completion of the **Scope of Work** of the **Insured Project**. After December 30, 2002 environmental data and database management activities will be performed by in-house Presidio Trust staff without aid of outside contractor support services and are within the **Scope of Work**. |

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: William M. [signature]      May 14, 2003

Authorized Representative      Date

Copyright © 2001 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

**Endorsement # 11**

# Scope of Work Modification Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

**I. Scope of Work**

The following proposed activity is appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Fill Site 5 | Installation by Presidio Trust personnel of an automatic drip irrigation system at Fill Site 5 as required by the regulatory agency as part of post-closure activities. Costs for this task shall not exceed $35,000. |

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: William M. [signature]
Authorized Representative

September 17, 2003
Date

Copyright © 2001 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 12

# Scope of Work Modification Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

## I. Scope of Work

The following proposed activity is appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Contingency Action Plan for Petroleum Releases | Preparation of generic planning and work plan documents to establish procedures to be used in the event of discovery of unknown petroleum pollution conditions. This plan is required by Task 16 of the Regional Water Quality Control Board Order for the Presidio of San Francisco (Order R2-2003-0080). Allowable costs for this task shall include labor by Presidio Trust personnel, and shall not exceed $25,000. |

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: William H. Lynch
Authorized Representative

May 3, 2004
Date

Copyright © 2004 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 13

# Scope of Work Modification Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

**I. Scope of Work**

The following proposed activity is appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Site Wide | Compliance with the prohibitions, cleanup plan and standards, tasks and provisions of Regional Water Quality Control Board Order Number R2-2003-0080, issued on August 23, 2003. |

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: William M. Lynch (signature)
Authorized Representative

July 22, 2004
Date

Copyright © 2004 by Zurich Insurance Company

STF-PRESRSL-MAN1 CW (7/01)

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 14

# Scope of Work Modification Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured,** subject to all the terms, exclusions and conditions of the Policy that:

**I. Scope of Work**

The following proposed activity is appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Tank Site 13 | Excavate impacted soil at Tank Site 13, including from associated fuel distribution system lines, and dispose as a Class II, non-hazardous waste at a permitted off-site facility. Obtain NFA certification from regulatory agencies. |
| Tank Site 753.2 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted off-site facility. Obtain NFA certification from regulatory agencies. |

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: William H. Sygrob [signature]
Authorized Representative

February 7, 2005
Date

Copyright © 2005 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 15

# Scope of Work Modification Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon he statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

## I. Scope of Work

The following proposed activity is appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Tank Site 926.1 | Obtain NFA certification from regulatory agencies. |
| Tank Site 926.2 | Obtain NFA certification from regulatory agencies. |
| Tank Site 926.3 | Obtain NFA certification from regulatory agencies. |
| Tank Site 926.4 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1289 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1290 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1291 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1293 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1294 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1295 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1296 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1297 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1298 | Obtain NFA certification from regulatory agencies. |
| Tank Site 1357 | Obtain NFA certification from regulatory agencies. |

Copyright © 2005 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

l other terms and conditions of the policy shall apply and remain unchanged.

Signed by: ______________________ February 7, 2005
Authorized Representative Date

Copyright © 2005 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 16

# Scope of Work Modification Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

**Scope of Work**

The following proposed activities are appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Landfill 8 | Provide archeological support services using in-house Presidio Trust personnel to prepare archeological impact assessments as required for compliance with the California Environmental Quality Act (CEQA); conduct field inventories and monitoring in archeologically sensitive areas; and conduct recovery, analysis and curation of archeological discoveries during remedial construction. Allowable costs for this task during the period October 1, 2004 through September 30, 2005 shall not exceed $6,800. |
| Commissary PX | Provide archeological support services using in-house Presidio Trust personnel to prepare archeological impact assessments as required for compliance with CEQA; conduct field inventories and monitoring in archeologically sensitive areas; and conduct recovery, analysis and curation of archeological discoveries during remedial construction. Allowable costs for this task during the period October 1, 2004 through September 30, 2005 shall not exceed $7,200. |

Copyright © 2005 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

| | |
|---|---|
| Fill Site 6A | Provide archeological support services using in-house Presidio Trust personnel to prepare archeological impact assessments as required for compliance with CEQA; conduct field inventories and monitoring in archeologically sensitive areas; and conduct recovery, analysis and curation of archeological discoveries during remedial construction. Allowable costs for this task during the period October 1, 2004 through September 30, 2005 shall not exceed $10,000. |
| Building 207/231 | Provide archeological support services using in-house Presidio Trust personnel to prepare archeological impact assessments as required for compliance with CEQA; conduct field inventories and monitoring in archeologically sensitive areas; and conduct recovery, analysis and curation of archeological discoveries during remedial construction. Allowable costs for this task during the period October 1, 2004 through September 30, 2005 shall not exceed $6,000. |
| Landfill 8 | Provide vegetation management support services using in-house Presidio Trust personnel to prepare and implement a Site Vegetation Plan as required for compliance with CEQA. Allowable costs for this task during the period October 1, 2004 through September 30, 2005 shall not exceed $9,300. |
| Fill Site 6A | Provide vegetation management support services using in-house Presidio Trust personnel to prepare and implement a Site Vegetation Plan as required for compliance with CEQA. Allowable costs for this task during the period October 1, 2004 through September 30, 2005 shall not exceed $45,700. |

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: William H. Lynch (signature)
Authorized Representative

July 11, 2005
Date

... right © 2005 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 17

# Scope of Work Modification Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

## I. Scope of Work

The following proposed activity is appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Fill Site 5 | Installation, disassembly, and removal by Presidio Trust personnel of an automatic drip irrigation system at Fill Site 5 as required by the regulatory agency as part of post-closure activities. Costs for this task shall not exceed $35,000. |

This endorsement operates in lieu of previously issued endorsement #11. All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: William H. Lynch (signature)
Authorized Representative

July 11, 2005
Date

Copyright © 2005 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 18

# Scope of Work Modification Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

## I. Scope of Work

The proposed activity for Tank Site 3 shall be deleted and replaced with the following in Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Tank Site 3 | Excavate impacted soil and dispose of such soil as a Class II, non-hazardous waste at a permitted, off-site facility. Presidio Trust personnel and equipment shall be used for this task and costs shall not exceed $5,000. |

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: [signature]
Authorized Representative

October 12, 2005
Date

Copyright © 2005 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 19

# Scope of Work Modification Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

**I. Scope of Work**

The proposed activity for Master Remediation Schedule Management shall be deleted and replaced with the following in Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Master Remediation Schedule Management | Review, debug and modify the Master Remediation Schedule and provide routine schedule updates using National Park Service labor. Costs for this task shall not exceed $45,000 in the fiscal year ending September 30, 2005 and shall be escalated by 3% per annum according to the following table:<br>**Fiscal Year Ending** — **Not to Exceed Amount**<br>September 30, 2005 — $45,000<br>September 30, 2006 — $46,400<br>September 30, 2007 — $47,800<br>September 30, 2008 — $49,200<br>September 30, 2009 — $50,700<br>September 30, 2010 — $52,200<br>September 30, 2011 — $53,800<br>September 30, 2012 — $55,400<br>September 30, 2013 — $57,100<br>September 30, 2014 — $58,800 |

Copyright © 2005 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: ______________________________ December 19, 2005

Authorized Representative Date

Copyright © 2005 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 20

# Scope of Work Modification Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 10/1/2005 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

**Scope of Work**

The following proposed activities are appended to Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Site Wide | Perform removal and replacement of sidewalks required to complete remediation projects listed within this Scope of Work using either third party contractors or in-house Presidio Trust personnel. |
| Site Wide | Provide landscape vegetation removal and/or replacement support services required to complete remediation projects listed within this Scope of Work using either third party contractors or in-house Presidio Trust personnel. |
| Site Wide | Provide site vegetation technical plan preparation and implementation services required to complete remediation projects listed within this Scope of Work using either third party contractors or in-house Presidio Trust personnel. |
| Site Wide | Provide utility surveying and/or utility rerouting services required to complete remediation projects listed within this Scope of Work using either third party contractors or in-house Presidio Trust personnel. |
| Site Wide | Provide archeological technical assistance support services required to complete remediation project listed within this Scope of Work using either third party contractors or in-house |

opyright © 2006 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

| | |
|---|---|
| | Presidio Trust personnel. |
| Site Wide | Perform required database management services related to the State Water Quality Control Board's Geotracker leaking underground storage tank management system, for tank sites listed within this Scope of Work, using either third party contractors or in-house Presidio Trust personnel. |
| Site Wide | Perform tree and brush removal required to complete remediation projects listed within this Scope of Work using either third party contractors or in-house Presidio Trust personnel. |
| Site Wide | Prepare temporary construction activity advisory signs during completion of remediation projects listed within this Scope of Work using either third party contractors or in-house Presidio Trust personnel. |

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: William H. Lynch
Authorized Representative

December 20, 2006
Date

;right © 2006 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

Endorsement # 21

# Scope of Work Modification Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ERC 2872443-00 | 5/24/1999 | 5/24/2014 | 5/24/1999 | 18410 | $0 | $0 |

**Named Insured and Mailing Address:** The Presidio Trust

34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Remediation Stop Loss Policy**

In consideration of the payment of the premium and the undertaking of the **Insured** to pay the **Cumulative Losses Self Insured Retention** and **Total Cumulative Losses Self Insured Retention** by the **Named Insured** and in reliance upon the statements in the Application made a part hereof, the Company agrees with the **Insured**, subject to all the terms, exclusions and conditions of the Policy that:

**I. Scope of Work**

The proposed activity for Tank Site 743.1, 743.2, 746.2 and 747.1 shall be deleted and replaced with the following in Table 1 – Scope of Work for the Insured Project:

| Site | Proposed Activity |
|---|---|
| Tank Site 743.1 | Remove tank, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted off-site facility, provide short-term moving and storage of tenant personal property to allow tank removal activities, and provide loss of use reimbursement to existing tenants in buildings where tanks are located. Costs for short-term moving and storage of tenant personal property shall not exceed $3,000. Costs for tenant loss of use reimbursement shall not exceed $3,000. |
| Tank Site 743.2 | Remove tank, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted off-site facility, provide short-term moving and storage of tenant personal property to allow tank removal activities, and provide loss of use reimbursement to existing tenants in buildings where tanks are located. Costs for short-term moving and storage of tenant personal property shall not exceed $3,000. Costs for tenant loss of use reimbursement shall not exceed $3,000. |
| Tank Sites 746.2 | Remove tank, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted off-site facility, |

Copyright © 2006 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.

*Privileged and Confidential: Contains trade secrets and proprietary commercial or financial information exempt from public disclosure under the Freedom of Information Act*

| | |
|---|---|
| | provide short-term moving and storage of tenant personal property to allow tank removal activities, and provide loss of use reimbursement to existing tenants in buildings where tanks are located. Costs for short-term moving and storage of tenant personal property shall not exceed $3,000. Costs for tenant loss of use reimbursement shall not exceed $3,000. |
| Tank Site 747.1 | Remove tank, excavate impacted soil, dispose of such soil as a Class II, non-hazardous waste at a permitted off-site facility, provide short-term moving and storage of tenant personal property to allow tank removal activities, and provide loss of use reimbursement to existing tenants in buildings where tanks are located. Costs for short-term moving and storage of tenant personal property shall not exceed $3,000. Costs for tenant loss of use reimbursement shall not exceed $3,000. |

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: William H. Lynch
Authorized Representative

August 15, 2007
Date

Copyright © 2006 by Zurich Insurance Company

All rights reserved. No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means - graphic, electronic, or mechanical, including photocopying, taping or information storage and retrieval systems - without written permission of the Zurich Insurance Company.