Squire, Sanders & Dempsey L.L.P.
Ethan A. Miller (State Bar # 155965)
David A. Gabianelli (State Bar # 158170)
Ethan H. Seibert (State Bar # 232262)
Michelle M. Full (State Bar # 240973)
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: +1.415.954.0200
Facsimile: +1.415.393.9887
E-mail: eamiller@ssd.com
E-mail: dgabianelli@ssd.com
E-mail: eseibert@ssd.com
E-mail: mfull@ssd.com

Attorneys for Defendants and Counter-Claimant
ZURICH AMERICAN INSURANCE COMPANY
and STEADFAST INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>ZURICH INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY and STEADFAST INSURANCE COMPANY,<br><br>  Defendants. | Case No. CV08-5005-MMC<br><br>**STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:       December 10, 2010<br>Time:       9:00 A.M.<br>Courtroom:  No. 7, 19th Floor<br>Judge:      Hon. Maxine M. Chesney<br><br>Trial Date: February 28, 2011 |
| STEADFAST INSURANCE COMPANY,<br><br>  Counter-claimant,<br><br>  vs.<br><br>THE PRESIDIO TRUST, a Wholly-Owned Corporation of the UNITED STATES OF AMERICA,<br><br>  Counter-defendant. | |

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. DISCUSSION .................................................................................................................... 4

    A. The Trust's Effort to Re-write the Definition of "Pollution Event" Cannot Overcome the Fundamental Fact that It Unequivocally Knew about the Pollution before the Policies Began ................................................................... 4

        1. The Policy Language and Pre-Policy Understanding Are Clear ................ 4

        2. The Post-Policy "Course of Performance" Argument Fails ....................... 8

    B. The Trust's Repeated Appeals to Steadfast's "New" Acknowledgment of RSL Coverage for Mountain Lake Is Nonsensical; Endorsement 10 — which Grants RSL Coverage for Mountain Lake — Was Requested by the Trust (and Agreed to By Steadfast) in 2003, and (Even Absent All Other Facts) Resolves this Litigation ................................................................................. 9

    C. The Trust's Argument that the RSL Is Limited to the "Activities" on Table 1 Is Contrary to the Policy Language, the Trust's Own Testimony and Its Own Course of Performance ...................................................................... 12

    D. Endorsement 3 Does Not Render the Known Lead in Mountain Lake "Unknown" ................................................................................................................ 14

    E. The Trust's Miscellaneous Arguments Are Inapposite......................................... 15

III. CONCLUSION................................................................................................................ 15

-i-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Hanford Nucl. Res. Lit. v. DuPont*,
    534 F.3d 986 (9th Cir. 2008) ................................................................................... 3

*Miniace v. Pac. Mar. Ass'n*,
    2006 U.S. Dist. LEXIS 13726 (N.D. Cal. 2006) ..................................................... 5

*National Fire Ins. Co. v. Martinelli*,
    2008 U.S. Dist. LEXIS 52911 (E.D. Cal. 2008) ..................................................... 6

## STATE CASES

*AIU Ins. Co. v. Superior Court*,
    51 Cal. 3d 807 (1990) ............................................................................................. 6

*Banco Do Brasil v. Latian*,
    234 Cal. App. 3d 973 (1991) ................................................................................ 10

*Cold Creek Compost, Inc. v. State Farm*,
    156 Cal. App. 4th 1469 (2007) ............................................................................... 6

*Fireman's Fund Ins. Co. v. Fibreboard Corp.*,
    182 Cal. App. 3d 462 (1968) .................................................................................. 7

*Fireman's Fund Ins. Co. v. Superior Court*,
    65 Cal. App. 4th 1205 (1997) ................................................................................. 6

*Garcia v. Truck Ins. Exch.*,
    36 Cal. 3d 426 (1984) ......................................................................................... 6-7

*Great Western Drywall, Inc. v. Interstate Fire & Cas. Co.*,
    161 Cal. App. 4th 1033 (2008) ............................................................................. 12

*In Re Tobacco Cases I*,
    186 Cal. App. 4th 42 (2010) ................................................................................... 8

*Ortega Rock Quarry v. Golden Eagle Ins. Corp.*,
    141 Cal. App. 4th 969 (2006) ................................................................................. 6

## STATE STATUTES

Cal. Civ. Code § 1641 ................................................................................................... 12

Cal. Civ. Code § 2332 ..................................................................................................... 5

Cal. Civ. Proc. Code § 1858 ........................................................................................... 5

SQUIRE, SANDERS &
DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

-ii-
STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

## I.   INTRODUCTION

Faced with its inability to meet head-on the plain policy language and overwhelming evidence of underwriting negotiations demonstrating that known pollution events are not covered by the REEL Policy, and overwhelming evidence that it knew about the lead pollution in Mountain Lake before the policies began, the Trust first argues that a "Pollution Event" is a Pollution Event only when it rises to an "actionable level." Yet this defies (1) the express policy language, (2) the underwriting negotiations, (3) its own insurance expert's opinions, (4) its own separate environmental expert's opinions and (5) established case law.

The REEL Policy itself defines "Pollution Event" to include the discharge of "contaminants" or "pollutants." That definition does not require that the contaminants rise to some "cleanup level" and the law does not allow that term to be written into the definition. Moreover, the lay definition of the term — in the very dictionary cited by the Trust — does not suggest any such requirement. Using the Trust's own definition, pollution exists if the lake was made "impure" or "unclean" by lead contamination. And other REEL Policy terms confirm that a Pollution Event exists if the contaminant is above "naturally occurring" levels. Lest there were any doubt that lead was known to be in the lake before the REEL Policy began, Table 1 confirms it — Table 1 is titled "Known Pollution Events" and expressly lists Mountain Lake.

Second, the established case law construing the same terms (contaminant and pollutant) confirms that they do not need to rise to a cleanup or "actionable" level. Third, the parties understood while negotiating the REEL Policy that a Pollution Event was not tied to any particular concentration or standard. Fourth, the Trust's own insurance expert concedes that Pollution Events can exist below some "actionable" level. Thus, this motion turns on a simple issue of law that the Court can and should decide on summary judgment — pollution means pollution.

Against this, the Trust urges that several statements made, years after the policies began and in the context of unrelated claims, somehow change that clear language, case law and the parties' understanding. But before even getting to any such "course of performance," the Court would have to accept that the definition of Pollution Event is ambiguous or otherwise reasonably

SQUIRE, SANDERS &
DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California  94111

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

susceptible to the Trust's current interpretation, and that those unrelated statements were made before any dispute arose. Neither condition exists. Finally, even the Trust's own expert confirms that these other claims cannot be analogized to Mountain Lake.[1]

And even if a Pollution Event only exists when contamination rises to an "actionable level," the Trust was aware of that, too. Indeed, its own environmental expert testified that it was "clear" the Trust knew it would have to further investigate and "characterize" the sediments (Declaration of Ethan A. Miller in Support of Reply ("Miller Decl. 2"), Ex. 58 at 114:9-115:6 and 122:12 (Kavanaugh Depo.)) and that remediation includes characterization of a site (*id.* at 155:11-17). And this expert testified that the 1998 data indicated the potential that the lead would have to be cleaned up. *Id.* at 95:3-6. Perhaps most significantly, this notion that the Trust did not "know" it would have to remediate the lead is a red herring; the Trust was ***already planning to do so***, as its environmental expert conceded:

> Q: Okay. So they were going to be remediating whatever problem there was in the context of the dredging. Isn't that right?
>
> A: Yes. (*Id.* at 86:25-87:12.)[2]

The Trust then urges that Steadfast only now acknowledges RSL coverage for this claim, yet in doing so ignores Endorsement 10 — sought by the Trust seven years ago. The Trust's only response to Endorsement 10 is that it somehow unilaterally "reserved" its right to reject that very endorsement. Aside from the fact that such a purported "reservation" to reject an endorsement

---

[1] He also could not state that Steadfast acted unreasonably in the overall claims picture. Miller Decl. 2, Ex. 57 at 214:19-25 (McVeigh Depo.).

[2] The Trust's actions should be placed in context. In the mid-1990s the Trust developed an Enhancement Plan for Mountain Lake. That plan included a general cleaning up of the lake, planting new plants, removing invasive plaints and, most importantly, dredging the lake to increase depth from 10 feet to its native 30 feet. The Trust was well aware by 1998 that the top two feet of sediment was contaminated with lead. So it commissioned a variety of studies to determine whether the sediments were contaminated enough to require disposal in a hazardous waste landfill. To do so, the Trust directed its environmental contractors to take "composite" vertical samples of the entire 18 feet of sediment (not just the top two feet) so that the results would be "homogenized" — the heavily contaminated top layers would be mixed with the uncontaminated lower levels so the results would show low enough levels of lead that the dredging spoils would not have to be taken to a costly hazardous waste facility. Miller Decl. 2, Ex. 63. Thus, the Trust's argument that it did not know the sediments would have to be cleaned up misses the point; the Trust was already planning to dredge Mountain Lake and the question was simply whether the pollution was bad enough that it would require disposal in a hazardous waste facility. (And, as it happened, those fears were exactly right.)

-2-

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

the Trust itself requested is nonsensical, that reservation appears nowhere in the subsequent endorsement and thus runs afoul of the Policy's integration clause — as well as its own expert's opinion on that "reservation." RSL Endorsement 10 — which was expressly sought by the Trust and incorporated into the Policy — establishes RSL coverage for this claim and (by itself) ought to be the end of this litigation.

Finally, the Trust argues that the RSL Policy does not apply to this claim because the scope of work is limited to the specific activities on Table 1, cannot be expanded and those activities do not cover the current government-required activities. Yet even if Steadfast must establish RSL coverage to defeat REEL coverage (and it need not), the Trust's argument is inapposite because (1) the RSL Policy specifically provides that Steadfast *will* cover newly required activities to address the pollution addressed on Table 1, (2) the Trust itself demanded as much when negotiating the policy, (3) the argument requires assuming that lead in the lake sediment is a different Pollution Event than lead in the surface water, (4) the Trust's own "course of conduct" has consistently sought RSL coverage for expanded activities and (5) the Trust's own expert agrees:

> Q: So isn't it true that where the regulatory agency is requiring a change in the scope of work, that that change is not excluded under this [RSL] policy?
> A: That's right.
> Q: And that means it's covered under the policy; right?
> A: That's right.

Miller Decl. 2, Ex. 57 at 134:7-14 (McVeigh Depo.). Consistent with RSL Condition VII.A. (second paragraph), Exclusion I and Endorsement 10, he goes on to conclude that any new government requirement to excavate lead in Mountain Lake would be covered under the RSL. *Id.* at 155:22-156:8. This expert testimony is an admission of a party opponent. *Hanford Nucl. Res. Lit. v. DuPont*, 534 F.3d 986, 1016 (9th Cir. 2008).

In sum, the Trust cannot avoid its own historic knowledge of lead in Mountain Lake and create a triable issue of fact by ignoring (1) the plain meaning of the policy language, (2) judicial construction of that language, (3) its own clear understanding of that language during policy negotiation, (4) its own lay and experts' testimony and (5) its own course of conduct. The Trust's

-3-

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

gambit to distract the Court from these consistent facts cannot succeed.

## II. DISCUSSION

### A. The Trust's Effort to Re-write the Definition of "Pollution Event" Cannot Overcome the Fundamental Fact that It Unequivocally Knew about the Pollution before the Policies Began

The Trust ignores the fundamental purpose of these two policies: The REEL Policy applies to unknown contamination and the RSL Policy applies to cost overruns for ***known*** contamination. Try as it might, the Trust cannot sow confusion to overcome this fundamental fact.

#### 1. The Policy Language and Pre-Policy Understanding Are Clear.

While it never directly addresses the issue, the Trust appears to concede that it knew that Mountain Lake was polluted before the policies began.[3] And because pre-policy knowledge of pollution is the critical distinction between the policies, the Trust understands that it must find some other argument. So it urges that regardless of whether it knew Mountain Lake was polluted with lead, it did not know it was "all that" polluted — that it was "bad" pollution. This argument, however, flies in the face of the policy language, the parties' underwriting intent and the wealth of contrary evidence, including the testimony of its own experts.

First, the evidence is simply overwhelming that the Trust, its partners, its consultants and the entire lake community knew the lake was heavily polluted. Miller Decl., *passim*. The Trust's partner, GGNPA, knew that Mountain Lake was "absolutely" polluted.[4] *Id.* at ¶ 27. And the

---

[3] Surprisingly, the Trust cites the testimony of Brian Ullensvang for the proposition that the NPS did not know about any lead in Mountain Lake (Opp. at 16:22-24) and Archbald (GGNPA) for the proposition that it did not know the "extent" of lead in the Lake. (*Id.* at 18:18-19:9.) It is surprising enough that Archbald would have testified to this, but yet more surprising that the Trust would actually have emphasized this. Archbald testified that he "absolutely" knew Mountain Lake was contaminated and he testified that he wrote the handwritten note that he was "very concerned" about the sediment results showing incredibly high levels of lead in the sediments and that those results should not be "distributed or discussed with anyone." Miller Decl. [Dkt. 157], at ¶¶ 16, 27 and Exs. 17 and 18 at 86:20-22, 118:20-119:7, 120:10-21 and 167:13-168:10. So the Trust is left to argue that he might not have been talking about Mountain Lake. Not so. First, the note is on a page "bookended" by pages expressly related to Mountain Lake, in the NPS/Trust files produced by "USA" sequential Bates numbers. Second, when Archbald testified about this, he never suggested this related to anything but Mountain Lake. Most importantly, the critical indented paragraph is virtually word-for-word the language appearing in the 1998 EKI report expressly describing lead in the sediment of Mountain Lake. Thus, for the Trust to even suggest (Opp. at 18:1) that this note did not refer to Mountain Lake is little short of disingenuous (if not desperate).

[4] The Trust apparently tries to distance itself from the actions and knowledge of Archbald, the

-4-

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

GGNPA (and NPS) officers expressly anticipated "remediation of toxic contamination in Mountain Lake" in 1997.[5]  In its Opposition, the Trust simply ignores all of this evidence.

Second, the conclusion that the pollution must rise to a level requiring "cleanup" before it is a "Pollution Event" is nonsensical and contrary to the express policy language.  Steadfast largely agrees with the Trust's statements at pages 12:17-13:12 of its Opposition.  "Pollution Event" is a defined term in the policy.  It is defined to include a "contaminant."  ***There is no requirement in this definition that the contaminant rise to a level requiring cleanup; a "pollutant" is a pollutant and a "contaminant" is a "contaminant."***  The Trust asks the Court to do that which it cannot — insert into the definition of Pollution Event that which has been omitted (i.e., "at actionable levels").  Cal. Civ. Proc. Code § 1858.  Moreover, the policy itself addresses — and rejects — the Trust's argument (Opp. at 20:9-16) as it expressly excludes coverage for substances "***naturally occurring***" (Exclusion M); any substance that is not "naturally occurring" necessarily is pollution, regardless of its "level."

Steadfast agrees that these terms are interpreted in their ordinary and popular sense.  What is the ordinary and popular sense of "pollutant" and "contaminant?"  Something that makes something else "impure or unclean."  That is the definition of "contaminate" (in verb form) in the very dictionary cited by the Trust (Ex. USA-124).  That source cites as a synonym, "To make ***dirty or impure***."  Is the Trust really contending that it did not know prior to policy inception in 1999 that Mountain Lake was made "dirty" or "unclean" or "impure" by lead?

After apparently asserting that the term should be interpreted according to its plain meaning (Opp. at 12:17-23), the Trust then suggests a "technical" meaning of the term.

---

GGNPA and the NPS.  Opp. at 17:24-18:17, n.7.  The Trust ignores the extensive evidence of the interrelationship between the three entities at page 10, Note 7 of Steadfast's opening memorandum.  Even if GGNPA were not the "kind of partner contemplated by the Policy" (and no such distinction appears) the Trust is charged with GGNPA's knowledge under agency law.  Cal. Civ. Code § 2332; *Miniace v. Pac. Mar. Ass'n*, 2006 U.S. Dist. LEXIS 13726 (N.D. Cal. 2006).  (The Cooperative Agreement for the Restoration of Mountain Lake establishes the agency relationship as to Mountain Lake cleanup.)  Moreover, the Policy precludes coverage if ***any*** insured knew of the contamination, and NPS is an insured.  In any event, the Trust cannot dispute that ***it*** received, among other things, the EKI sediment report in 1998 indicating extensive lead pollution in the lake.  Miller Decl. [Dkt. 157], ¶¶ 6-34.

[5]   Miller Decl. 2, Ex. 59 (at USA0157292).

-5-

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California  94111

1 Regardless, there still must be some evidence that the parties used the term in that "technical" sense. *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 823 (1990). The Trust offers no such evidence. And finally, even that definition (something that is "harmful") is exactly what the Trust knew prior to the policy period. *Passim*.

In an effort to prevent this Court from interpreting the plain meaning of Pollution Event as a matter of law, the Trust then appears to suggest that the term may be ambiguous and should be construed against Steadfast. First, the term is not ambiguous, as set forth above and by the Trust's own apparent concession. Moreover, to be a "pollutant" (as that term is defined in insurance policies using virtually identical language) a substance "***need not be 'toxic or particularly harmful'*** . . . ." *Cold Creek Compost, Inc. v. State Farm*, 156 Cal. App. 4th 1469, 1482 (2007) *cited by National Fire Ins. Co. v. Martinelli*, 2008 U.S. Dist. LEXIS 52911 (E.D. Cal. 2008) (regarding overflow of saltwater/brine); *Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 141 Cal. App. 4th 969, 981 (2006) (dirt and rocks discharge into creek constituted pollutants). Needless to say, there is no "cleanup" or "actionable" level of dirt or rocks in a creek or odors from compost, yet they are still pollution. Thus, this notion that it has to rise to some "actionable level" — or even that it has to be "harmful" — is baseless; courts cannot strain to create an ambiguity or apply a tortured policy term definition. *Fireman's Fund Ins. Co. v. Superior Court*, 65 Cal. App. 4th 1205, 1212-13 (1997).

Moreover, these policies were jointly drafted by extremely sophisticated Trust counsel. Miller Decl. [Dkt. 157], at ¶¶ 38-42. Indeed, ***Mr. Bloom drafted at least one-half of the definition of Pollution Event as it appears in the Policy***. Miller Decl. 2, Ex. 62 at B011320. If he thought he needed to clarify in its definition that a Pollution Event required actionable levels (particularly in the face of Steadfast's contrary representation during policy negotiation (*infra*)), he certainly could have done so. That he did not is consistent with his testimony that he did not believe it required any such level. Opening Brief, n.15. The Trust had every opportunity to define the term as it would have liked, if it in fact understood the term to mean something else. The Trust was no "babe in the woods" to be taken advantage of by an overreaching insurer. The doctrine of "*contra proferentum*" has no applicability here. *Garcia v. Truck Ins. Exch.*, 36 Cal.

-6-

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

3d 426, 438 (1984); *Fireman's Fund Ins. Co. v. Fibreboard Corp.*, 182 Cal. App. 3d 462, 467-8 (1968).

Third, the Trust's argument is also directly contrary to the parties' understanding prior to entering into the policy. As Steadfast stated in Note 15 in its opening brief, six months before the policy began, and while extensively negotiating the terms of the policy, Steadfast wrote to the Trust:

> ***The definition of a Pollution Event is not tied to any specific concentration or standard.*** For example, if stained soil with a petroleum odor is encountered in the process of excavating a sewer line, discovery of a pollution event has occurred. Miller Decl. [Dkt. 157], at ¶ 48, Ex. 52 at 5 of 10.

The record is devoid of any evidence that the Trust disagreed with this. If the Trust disagreed, it was incumbent upon the Trust to tell Steadfast so, not to wait until after the policies began and then try to shoe-horn known contamination into the "unknown pollution" (REEL) policy by arguing that it did not know the pollution was "bad."[6]

Fourth, the Trust's own insurance expert witness agrees that this pre-policy understanding — and Bloom's agreement with it — "adversely" affected the Trust's position that "Pollution Event" was tied to an actionable level. Miller Decl. 2, Ex. 57 at 186:19-187:24 (McVeigh Depo.). Finally, and perhaps most significantly, that Trust expert repeatedly acknowledged that a Pollution Event *can* exist below actionable levels. *Id.* at 100:23-101:2, 115:5-25, 120:16-20 and 122:14-18. Specifically:

> Q: So you could have a Pollution Event that doesn't require some type of action on the part of the policyholder, right, because the government's not requiring cleanup?
>
> A: That's correct. (*Id.* at 122:14-18.)

Perhaps most damning for the Trust on this point is its own environmental expert, who testified that the Trust "clearly" knew before the policy began that it would need to further characterize the lead (yet did not do so), and also that remediation includes site characterization and sampling. Miller Decl. 2, Ex. 58 at 155:11-156:7 (Kavanaugh Depo.). Thus, the Trust's own

---

[6] In any event, the Trust and its partners *knew* before the policy began that the pollution *did* rise to a level requiring cleanup. E.g., Miller Decl., Ex. 11 at 5; Ex. 17 at USA0266410; Ex. 36 at 11; and *passim*.

-7-
STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

witnesses contradict its current argument that a "Pollution Event" exists only if the Trust knew it would have to clean up the lead and that it did not know as much.[7]

### 2. The Post-Policy "Course of Performance" Argument Fails.

Now faced with the undeniable plain meaning of the term, the undeniable evidence that *when negotiating the policy* the parties intended the term not to require actual cleanup, and its own expert testimony, the Trust resorts to the argument that years after the policy was placed, in adjusting unrelated claims based on entirely different facts, Steadfast suggested a different interpretation. Such a "course of performance" argument fails for a variety of reasons.

"Course of performance" is applied only (1) if the language is "reasonably susceptible" to the interpretation suggested (and this is not) and (2) to *pre-dispute* conduct (and all of the instances cited by the Trust were well after the Policy interpretation dispute began).[8] *In Re Tobacco Cases I*, 186 Cal. App. 4th 42, 52 (2010). Where a defined term is not reasonably susceptible to the alternate meaning, "course of performance" is inapplicable. *Id.* For all of the reasons discussed above, inserting "at or above actionable levels" is not a reasonable interpretation of plain, established language.

Regardless, none of the unrelated claims can be analogized to Mountain Lake. For instance, at LAIR, there were four different pollution events, none of which was scheduled on Table 1, so REEL coverage was not dependent on whether contamination other than lead-based paint in soil was previously above or below actionable levels. Declaration of Jonathan Lee in Opposition ("Lee Decl."), Exs. USA-47, 48, 51, 52; *see also* Miller Decl. 2, Ex. 60 at 10-21. Likewise, the Merchant Road site was not known to exist prior to policy inception, was not scheduled on Table 1 to the RSL policy and was not required to be cleaned up by governmental authority. Lee Decl., Exs. USA-57, 59, 61. There was no REEL coverage because governmental

---

[7] Likewise, Steadfast's expert witness also confirms that the Trust knew that cleanup likely would be required. Miller Decl. 2, Ex. 61 at pgs. 12-13 and 16 (Paustenbach Report).

[8] The dispute was crystallized no later than December 2001 after Zurich notified the Trust that its August 8, 2001 claims for Mountain Lake would not be covered by the REEL Policy (Lee Decl., USA-Ex. 34). The allegedly inconsistent statements were not made until at least 2005: July 2006 (LAIR and Richardson Slip), August 2007 (Bldg. 937) and August 2008 (Merchant Road).

-8-
STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

authority was not requiring cleanup, as necessary to trigger Coverage A of the REEL Policy. At Richardson Slip, the Trust excavated soil contaminated with lead and disposed of it before even tendering a claim to Steadfast, such that the source of the lead could not be determined. *Id.*, Exs. USA-53, 55, 56. Steadfast afforded the Trust the benefit of the doubt and approved coverage under the REEL Policy. Finally, at Building 937, the Trust neglects to state that at the time Zurich's consultant drafted the referenced memo, the Trust had informed him incorrectly that PCE had never been detected previously at Building 937. Upon subsequently learning that historical PCE detections at Building 937 went back to at least 1984, and that the Trust knew this, Zurich correctly determined this was an RSL claim. *Id.*, Exs. USA-78-81.

Perhaps most significantly, the Trust's own insurance expert conceded that Steadfast's adjusting of these claims cannot be analogized to Mountain Lake. As to the LAIR claim:

> Q: [H]ow does this claim compare whatsoever to Mountain Lake . . . ?
>
> A: It doesn't. (Miller Decl. 2, Ex. 57 at 107:19-21 (McVeigh Depo.).

*See also*, *id.* at 195:17-196:3, 198:12-17 (as to Merchant Road) and 139:19-147:22 (as to Richardson Slip).[9]

### B. The Trust's Repeated Appeals to Steadfast's "New" Acknowledgment of RSL Coverage for Mountain Lake Is Nonsensical; Endorsement 10 — which Grants RSL Coverage for Mountain Lake — Was Requested by the Trust (and Agreed to By Steadfast) *in 2003*, and (Even Absent All Other Facts) Resolves this Litigation

The Trust repeatedly urges that Steadfast has just now accepted coverage for Mountain Lake under the RSL. Nothing could be further from the truth. The Trust ignores Endorsement 10, agreed to in 2003. ***Endorsement 10 ought to be the end of this litigation.***[10]

In 2001 the Trust tendered this claim under the REEL policy. Then, in December 2002, the Trust sent Steadfast a letter specifically asking for an endorsement confirming that coverage would be provided under the RSL. Lee Decl., Ex. USA-36 at Attachment 1, p. 1. The Trust even

---

[9] Finally, the Trust repeatedly relies on Exhibit USA-65 to conclude that conditions do not constitute a Pollution Event if they are not at "actionable levels." (Opp. at 17:13; 20:15). In fact, nothing in the cited letter states as much.

[10] Indeed, the fact that Steadfast made its coverage position known to the Trust in 2001 and both parties subsequently agreed to Endorsement 10 in 2003 strongly suggests the Trust's lawsuit is time-barred in any event. Steadfast will so assert in the event this case proceeds to trial.

-9-

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

went so far as to request how the endorsement would read. Steadfast promptly agreed, issuing Endorsement 10 on May 14, 2003. Miller Decl. [Dkt. 157], Ex. 2 at 62. Thus, the RSL Policy has been amended to specifically provide coverage for the very claim the Trust now argues is covered under the other policy.[11]

In the face of Endorsement 10 (and despite all of the above facts about known lead in Mountain Lake) how could the Trust have even filed this litigation? It could not. But it did nonetheless. Its argument is that despite asking for Endorsement 10, and agreeing to amend the Policy accordingly, it "reserved" its right to contend that the very endorsement it requested does not apply. The Trust's argument is not supportable.

If the parties intended that the Trust could unilaterally decide when, at some indeterminate time in the future — and despite the clear wording of Endorsement 10 — it would argue that the RSL Policy did NOT cover Mountain Lake, *that "reservation" must have been placed in the Endorsement* (or at least somewhere in the policy). Neither Endorsement 10 nor any other policy provision reflects this purported "reservation." Moreover, the policy expressly states that "[t]he terms of this Policy shall not be waived or changed except by endorsement issued to form a part of this Policy." Miller Decl. [Dkt. 157], Ex. 2 at P. 21 (RSL Policy, Section VII.G.). The "reservation" directly contradicts Endorsement 10 and runs afoul of this integration clause. *Banco Do Brasil v. Latian*, 234 Cal. App. 3d 973, 1001 (1991).[12] Moreover, the Trust's own expert agrees that Endorsement 10 establishes RSL coverage for Mountain Lake (Miller Decl. 2, Ex. 57 at 153:11-18, 160:19-161:1 (McVeigh Depo.)) and that *the Trust cannot unilaterally decide that it no longer wants RSL coverage*. *Id.* at 162:8-19.

---

[11] Endorsement 10 is only one of more than **10 other** RSL endorsements whereby the parties agreed to expand the scope of work where the government required expanded activities. Endorsements 8 through 22.

[12] The Trust contends that Steadfast agreed that the Trust's reporting of costs under the RSL "did not affect the Trust's claim for REEL coverage." Opp. at 22:18. The referenced letter is not an acceptance of any "reservation" in Endorsement 10, but simply, as Steadfast stated, an acknowledgment that Steadfast would not use the post-Complaint, on-going submittal of costs under the RSL as further proof that the Trust accepted RSL coverage. It was, as Steadfast stated, simply "to avoid the need for Steadfast to deny these costs and the Trust having to resubmit these costs specifically for review under the RSL Policy." And even after being apprised of this "reservation" (Miller Decl. 2, Ex. 57 at 157:2-7 (McVeigh Depo.)), *the Trust's expert agreed that it had no bearing on his opinion*. *Id.* at 223:7-10.

-10-
STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

1  The fatal contract uncertainty inherent in the Trust's argument — that it can unilaterally decide after-the-fact which policy applies — is not merely academic. From the outset of the litigation, the Trust has been intentionally equivocal as to the policy under which it seeks coverage for the Mountain Lake claim. The Trust's complaint itself appears to seek coverage for this claim under *both* policies. RJN [Dkt. 154], Ex. 3 at 5. Then, in deposition, the Trust's Assistant General Counsel responsible for tendering these claims did everything she could to avoid stating which policy the Trust seeks coverage under for this claim. Miller Decl. [Dkt. 157], Ex. 6 at 166:16-172:2 and 182:18-195:15 (Anderson Depo.). Over the course of these 15 pages, Ms. Anderson repeatedly avoided answering whether the Trust was seeking coverage under the RSL Policy for Mountain Lake. Moreover, in its current Opposition, the Trust contends,

> Zurich should have assured the Trust of *RSL* coverage . . . Opp. at 23:5-6 (emphasis added).

Why the gamesmanship? If the Trust itself is seeking coverage for Mountain Lake under the RSL Policy, how is Steadfast's acknowledgment of coverage under that Policy improper?

Again, *which policy does the Trust contend covers this claim*? Perhaps the problem is that the Trust itself is not convinced of its own arguments:

> I think that minds can differ on whether or not coverage for Mountain Lake is more proper under the REEL policy versus the RSL Policy. Miller Decl. [Dkt. 157], Ex. 6 at 312:23-25 (Anderson Depo.).

In the face of this, the Trust urges that Steadfast itself has equivocated about RSL coverage. In truth, what Steadfast has repeatedly stated is that the RSL Policy covers Mountain Lake *assuming the Trust itself is liable*. The Trust then argues that by virtue of having a copy of the Consent Agreement Steadfast "knew" that the Trust was liable. Opp. at 4:1-10. What the Trust omits is that it repeatedly said it was ultimately *not* liable, regardless of the Consent Agreement. The Trust first pointed its finger at the Army and then argued that *it was CalTrans' responsibility*. RJN [Dkt. 154], Ex. 1. Indeed, the *Trust went so far as to SUE CalTrans for the cleanup (and that litigation continues apace in this Courthouse)*. Is it any wonder that Steadfast needs to confirm that the Trust was liable? "Liability" is the cornerstone of this Real Estate *Liability* ("REEL") policy. *See* Coverage Parts A and B. Apparently because it did not want to

-11-
STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

admit liability while trying to recover from the Army and CalTrans for the same loss, the Trust was coy with Steadfast. And yet the Trust accuses *Steadfast* of "whipsawing."

### C. The Trust's Argument that the RSL Is Limited to the "Activities" on Table 1 Is Contrary to the Policy Language, the Trust's Own Testimony and Its Own Course of Performance

The Trust argues that any activity other than that expressly mentioned in Table 1 is somehow not covered under the RSL Policy because the policy was underwritten to specified "activities." Yet this ignores not only Exclusion I to the RSL Policy, but also Section VII, Condition A. Miller Decl. [Dkt. 157], Ex. 2 at P. 16 and 19. The second paragraph of Condition A states that the Trust must provide Steadfast advance notice of changes in the scope of work, including "a description of materials or areas requiring remediation not anticipated in the Scope of Work." *Id.* at 19. If the RSL Scope of Work is not to be expanded to cover new activities, this requirement would be meaningless. All policy language must be given effect. Cal. Civ. Code § 1641; *Great Western Drywall, Inc. v. Interstate Fire & Cas. Co.*, 161 Cal. App. 4th 1033, 1042 (2008).

More importantly, even the Trust's own expert concludes that the RSL Policy covers required changes in the scope of work in Table 1, and that the government is requiring such a change at Mountain Lake. Miller Decl. 2, Ex. 57 at 134:7–135:7 (McVeigh Depo.). ***And he even opines that that would be covered under the RSL.*** *Id.* at 155:22–156:8.

Further, the Trust's argument that the Scope of Work is limited to the precise wording in Table 1 is not consistent with the Trust's own interpretation. The Trust's Assistant General Counsel testified that required changes in the scope of work include situations in which the original "activity" was to monitor a landfill and it was later (during the policy period) determined that the landfill had to be excavated:

> A: If we had a landfill and the scheduled activity for the landfill is a cap and later on the regulator said, to protect human health and the environment, we are now stating that you have to remove the landfill, that would be a required change in the scope of work required by a regulatory agency.
>
> Q: That would be covered by the RSL policy?
>
> A: Yes. (Miller Decl. [Dkt. 157], Ex. 6 at 216:20-217:4 (Anderson Depo.).)

-12-
STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

1  When then asked where that extension of the scheduled activity appears in the policy,
2  Ms. Anderson replied: "***That concept is in Exclusion I.***" *Id.* at 217:11. Exactly Steadfast's
3  point. And the Trust concedes that Exclusion I originated with the Trust. Miller Decl. 2, Ex. 57
4  at 225:15-226:15 (McVeigh Depo.).

5  That is precisely what happened at Mountain Lake; if a change from monitoring to
6  excavation of a landfill is a required change in the scope of work covered under the RSL, then so,
7  too, is a change from monitoring to dredging of sediment. And in fact this is what happened at
8  the Nike Swale site. Miller Decl. [Dkt. 157], Ex. 6 at 294:2-297:12) (Anderson Depo.). This is
9  why, contrary to the Trust's urging (Opp. at 21:24-28), Steadfast's statement that the RSL is
10 written to scopes of work is correct and not inconsistent: As Ms. Anderson confirmed,
11 Exclusion I (as well as Condition VII.A. and Bloom's numerous pre-policy demands) makes clear
12 that the RSL scope of work is amended where the government requires a greater cleanup of the
13 identified pollution.

14 Similarly, the Trust urges that Steadfast has been inconsistent by repeatedly stating in
15 other claims that to be covered under the RSL, costs must be for tasks within the activities of the
16 scope of work. E.g., Opp. at 4:11-18. Such a statement does ***not*** indicate that where the
17 government requires more to be done, the scope of work (and necessarily, the activities) is not
18 expanded. Indeed, on numerous occasions that is precisely what the Trust sought and Steadfast
19 covered under the RSL — activities outside the original scope of work. For instance, we have
20 already discussed the Nike Swale site, in which the RSL Table 1 activity was listed as "collect
21 sediment samples and monitor seep surface water" and yet when the government required
22 excavation of soil, both parties agreed the expanded work would be covered under the RSL.
23 Likewise, at Baker Beach Disturbed Area 3A, Fill Site 6A and Landfill 10, the activities
24 expanded from monitoring and/or capping to excavating contaminated soil and yet both parties
25 agreed these properly remained RSL claims. Declaration of John Catts in Support of Reply
26 ("Catts Decl. 2"), ¶¶ 3-7. Such expansion of the scope of work is the entire purpose of
27 a "Remediation *Stop-Loss*" ("RSL") — or "cost-overrun" — policy.
28 The Trust then appears to cite to Mr. Bloom's testimony as proof that the "flexibility" he

-13-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

asked for was for scheduled activities, not a "new activity." Opp. at 22:3-8. The problem with this, aside from the fact that it directly contradicts what Mr. Bloom wrote in 1998 and 1999 to the Trust (Miller Decl. [Dkt. 157], at ¶¶ 44-45 and Exs. 48 and 49) and contradicts Exclusion I and Conditions VII.A., and contradicts its own witnesses' testimony, is that Bloom's testimony itself is incredibly vague on this point. Bloom could not even recall whether his memo meant to tell Steadfast that where excavation is now required, that would still be an RSL claim. *Id.* at Ex. 7 at 133:4-17. In fact, Bloom conceded that a change in the scope of work for Mountain Lake could well be an RSL claim. *Id.* at 128:19-129:4. And yet the Trust relies on this testimony to establish that Mr. Bloom's intent was to limit RSL coverage to the existing scheduled activities.[13]

### D. Endorsement 3 Does Not Render the Known Lead in Mountain Lake "Unknown"

Endorsement 3 confirms that the pollution addressed in Table 1 is known. The Trust argues that Endorsement 3 deems Mountain Lake pollution "unknown," yet the Trust does not state how it is that the pollution of Mountain Lake is not listed in REEL Table 1. In fact, REEL Table 1 — titled "KNOWN POLLUTION EVENTS" — expressly includes Mountain Lake and therefore excludes coverage for it. The Trust goes on (Opp. at 20:4-8) to suggest that while lead in the water of Mountain Lake was deemed known, somehow the lead in the sediment was deemed "unknown." Quite simply, that is nonsense. The Trust concedes that the lead in Mountain Lake came from discharge from Park Presidio Boulevard. RJN, at Ex. 1 (Caltrans Complaint). How it could be that the lead in the surface water is different pollution from the lead in the sediment defies common sense. At its most elementary, how did the lead get into the lake sediment, if not through the lake water? Finally, the Trust's own environmental expert agrees

---

[13] The Trust also argues that the policies are not mutually exclusive in their scope of coverage. Opp. at 21:10. The Trust ignores the last sentence of Endorsement 3, upon which it relies so heavily:

> Notwithstanding the foregoing, if any Pollution Event is provided under the [RSL] Policy, coverage under this [REEL] Policy is excluded. (Miller Decl. [Dkt. 157], Ex. 1 at P. 39.)

Against this, the Trust argues that the Policy on this critical point was "re-written" by one e-mail, again on a claim not here at issue and on fundamentally different facts. The fact that Steadfast's claims adjuster opined that the claim could be covered under either policy logically does NOT conclude that it could be covered at the same time under ***both***, but simply what it said—it could fall under either policy.

-14-

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

1   with Steadfast's (perhaps axiomatic) conclusion that the lead in the water cannot be disassociated

2   from the lead in the sediment. Miller Decl. 2, Ex. 58 at 109:23-111:16; 176:6-11 (Kavanaugh).

3       **E.**    **The Trust's Miscellaneous Arguments Are Inapposite**

4       The balance of the Trust's brief is a collection of arguments beginning with the assertion

5   that "the jury should be permitted to hear the evidence of Zurich's misconduct."[14] Even assuming

6   there were anything to the Trust's argument, this motion involves coverage for Mountain Lake,

7   not Building 937, Baker Beach, Richardson Slip or Merchant Road. How Steadfast treated, for

8   instance, the subrogation provision at Baker Beach has nothing to do with the Mountain Lake

9   claim — the subject of this motion.

10  **III.**    **CONCLUSION**

11      Lead in Mountain Lake was known pollution. No amount of after-the-fact policy

12  re-writing can change that, nor can appeal to after-the-fact statements that the Trust itself

13  concedes are not analogous. The Court's role is to interpret the policy as written, not to insert

14  words omitted or omit words included. The definitions of Pollution Event, Exclusion M,

15  Exclusion A, Endorsement 3, Table 1 and Coverage Parts A and B of the REEL, and

16  Endorsement 10, Conditions VII.A. and G. and Exclusion I to the RSL are clear that the known

17  Mountain Lake pollution cannot be transformed into unknown pollution and that the RSL Policy

18  covers expanded ("cost overrun") activities for the same pollution. And even the relevant

19  extrinsic evidence — including the pre-policy negotiations, the Trust's own lay and expert

20  testimony and its own conduct — reinforces that plain meaning. If a contracting party were not

21  held to the bargain struck here, it is not possible to fathom a circumstance where it would be.

22  This motion should be granted.

23  Dated: November 30, 2010        Squire, Sanders & Dempsey L.L.P.

24                                By:    */s/ Ethan A. Miller*

25                                        Ethan A. Miller

---

[14] Yet the Trust's own insurance expert cannot opine that Steadfast acted unreasonably. McVeigh Depo. at 190:24-191:9. *See also*, *supra*, n.1.

-15-

STEADFAST INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT - Case No. CV08-5005-MMC

SQUIRE, SANDERS & DEMPSEY L.L.P.
275 Battery Street, Suite 2600
San Francisco, California 94111